IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.

No. 4:20-MJ-488

ERIC PRESCOTT KAY (01)

Affidavit in Support of Criminal Complaint

I, Geoffrey Lindenberg, a Special Agent employed by the United States Drug Enforcement Administration, being duly sworn, depose and state as follows:

1. I have been a Special Agent with the Drug Enforcement Administration (DEA) since 2001, and I have been assigned to the Fort Worth District Office of the DEA since 2019. Before my current assignment, I was assigned to the DEA San Diego Field Division starting in 2002. From 2010 to 2019, I was assigned to the United States Marshals Service Pacific Southwest Regional Fugitive Task Force in San Diego, California. I have previously investigated violations of Title 21, United States Code, Section 841(a)(1); Title 21, United States Code, Section 846; Title 21, United States Code, Section 848; Title 21, United States Code, Section 843(b); and Title 18, United States Code, Section 1956. Through my training, education, and experience, I have become familiar with federal narcotics violations.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 3061.

3. This affidavit is made for the limited purposes of establishing probable cause

Criminal Complaint - Page 1

that **Eric Prescott Kay** has committed an offense in violation of Title 21 United States Code, Section 846, by knowingly and intentionally combining, conspiring, confederating, and agreeing with others to engage in conduct in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), namely to possess with intent to distribute and to distribute a mixture and substance containing a detectable amount of Fentanyl, a schedule II controlled substance.

4. The information contained in this affidavit is based on my personal knowledge and experience, my personal participation in this investigation, and information obtained from other law enforcement officers and/or agents involved in this investigation.

5. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that a violation of 21 U.S.C. § 846 has been committed by **Eric Prescott Kay.**

## FACTS AND CIRCUMSTANCES

6. Beginning in or before 2017, the exact date being unknown, and continuing thereafter until in or around July 2019, in the Northern District of Texas, and elsewhere, defendant **Eric Prescott Kay (Kay)**, and others, did knowingly and intentionally combine, conspire, confederate, and agree to commit the following offense against the United States, to wit: distribution of Fentanyl, a Schedule II Controlled Substance.

7. On July 1, 2019, the Southlake Police Department received a 911 call in reference to a body located at the Hilton Dallas/Southlake Town Square (Hilton), a hotel located in Southlake, Texas. Police officers from the Southlake Police Department

responded to the Hilton. Once at the hotel, responding officers were advised that a body had been found in room number 469. As the investigation progressed, Southlake investigators were able to identify the victim as T.S.

8. It was determined by the Tarrant County Medical Examiner that T.S. died from "mixed ethanol, fentanyl and oxycodone intoxication with terminal aspiration of gastric content." It was later determined that but for the fentanyl in T.S.'s system, T.S. would not have died.

9. During a search of T.S.'s hotel room after T.S.'s death, Southlake investigators identified and seized evidence, including several pills that appeared to be prescription pills and a cell phone. The pills were various colors and had various markings, including one bill pill, five pink pills, and several white pills that were determined to be anti-inflammatories. Southlake investigators also collected a white residue from the hotel room floor.

10. Southlake police took the blue and pink pills that had been seized as well as the white residue that was collected to the Tarrant County Medical Examiner's office for analysis.

11. The Tarrant County Medical Examiner analyzed the pills and later confirmed that the blue pill and the white residue from the floor of the hotel room were positive for fentanyl.

12. The blue pill that was positive for fentanyl was imprinted with M/30. From my training and experience, I know that the blue pill imprinted with M/30 that tested

positive for fentanyl had the appearance of a legitimate prescription 30 milligram oxycodone tablet. I also know that the presence of fentanyl in this blue pill with the M/30 marking indicates that the pill was counterfeit.

13. The five pink pills Southlake investigators recovered were determined to be legitimately manufactured, did not contain fentanyl, and had the markings of 5 milligram oxycodone pills. During the course of the investigation, I learned that **Kay** was not the source of these pink pills found in T.S.'s room.

14. Immediately after discovering T.S.'s body, Southlake investigators also interviewed numerous individuals associated with T.S., including **Kay**. During that interview, **Kay** stated that the last time **Kay** had seen T.S. was on a plane travelling from California to Dallas-Fort Worth. **Kay** stated that T.S. had been drinking on the plane. **Kay** then stated that **Kay** also saw T.S. when they were checking into the hotel. **Kay** stated that he was unsure if T.S. was a drug user, except for possibly marijuana.

15. Investigators obtained the list of occupied rooms at the Hilton on the night of June 30, 2019. Investigators found that **Kay** had been checked into room 367. An examination of the key card usage records revealed that the room key for 367 was used to access room 367 at approximately 11:29 p.m. The key card for room number 469 (victim T.S.'s room) was used to access room 469 at approximately 11:38 p.m.

16. The investigative team lawfully obtained a download of T.S.'s cellular telephone. T.S.'s cellular phone contained the following text message exchanges from the

afternoon of June 30, 2019, with telephone number xxx-xxx-3916, which is listed in the phone's contacts as "E.K.":

    E.K.: Hoe [sic] many? (2:35 p.m.)

    T.S.: Just a few like 5 (2:36 p.m.)

    E.K.: Word (2:36 p.m.)

    T.S.: Don't need many (2:36 p.m.)

Later that night, shortly after **Kay** and T.S. accessed rooms 367 and 469, respectively, E.K. and T.S. had the following text exchange, which was also found on T.S.'s cell phone:

    T.S.: 469 (11:47 p.m.)

    T.S.: Come by (11:47 p.m.)

    E.K. K (11:50 p.m.)

Investigators were able to identify the subscriber of telephone number xxx-xxx-3916 as **Kay**.

17. Based on my training and experience, I believe T.S. and **Kay** were discussing drugs, specifically in this case, blue 30 milligram oxycodone pills.

18. Investigators reviewed the location information of the cellular phone assigned to number xxx-xxx-3916, **Kay**'s phone number, and found that the cellular phone was located at the Hilton beginning at approximately 11:15 p.m. on June 30, 2019 through the night and into the afternoon of July 1, 2019.

19. In mid-July 2019, **Kay** told a third party that, contrary to what he told Southlake investigators, **Kay** did see T.S. after arriving at the Hilton on June 30, 2019.

**Kay** told the third party that he (**Kay**) had actually gone to T.S's room on the night of June 30, 2019, after receiving a text message from T.S. to come to T.S.'s room.

20.   During the course of the investigation, I learned that T.S. and **Kay** had a history of narcotic transactions, including several exchanges wherein **Kay** acquired oxycodone pills for T.S. and others from **Kay's** source(s) and distributed these pills to T.S. and others. **Kay** had multiple contacts with some of these source(s) in the days leading up to and surrounding T.S.'s overdose death.

21.   During the course of this investigation, I learned that several individuals who were associated with **Kay** and T.S. knew that **Kay** provided pills to T.S. These individuals confirmed that **Kay** would provide 30 milligram oxycodone pills to T.S. and that at times, **Kay**, T.S., and others would refer to these pills as "blues" or "blue boys" because they were blue in color. I also learned that **Kay** would distribute these pills to T.S. and others in their place of employment and while they were working.

22.   Based on these facts, probable cause exists that beginning in or before 2017, and continuing until in and around July 2019, in the Northern District of Texas, and elsewhere, **Kay** and others, known and unknown, violated 21 U.S.C. § 846 because they knowingly and intentionally combined, conspired, confederated, and agreed to engage in conduct in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), namely to possess with intent to distribute and to distribute a mixture and substance containing a detectable amount of Fentanyl, a schedule II controlled substance.

*[signature]*
Geoffrey Lindenberg, Affiant
Drug Enforcement Administration

Sworn to me, over the telephone or other electronic means, and signed by me pursuant to Fed.R.Crim.P. 4.1 on this ___30th___ day of _July_____ , 2020 at _3:47_____ p.m. in Fort Worth, Texas.

*[signature]*
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE