IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:20-CR-269-Y |
| ERIC PRESCOTT KAY | |

## GOVERNMENT'S MOTIONS IN LIMINE

The government respectfully submits the following motions in limine. The government requests that the Court direct the defendants, the defendants' attorneys, and all witnesses for the defendants not to mention, refer to, interrogate concerning, or bring to the attention of the jury in any manner, directly, indirectly, or through argument or the questioning of any witness, any of the matters identified below without first approaching the bench and obtaining a ruling on the subject's admissibility.

## MOTIONS IN LIMINE

1. **Any evidence, argument, or testimony that Dr. Marc Krouse, medical examiner, made mistakes in other autopsy reports and any evidence that Dr. Krouse has been referred to the Dallas County District Attorney's Office for investigation.**

### Background

On July 1, 2019, shortly after 2:00 p.m., T.S. was found unresponsive in his hotel room at the Hilton Hotel in Southlake, Texas. Shortly thereafter, T.S. was pronounced dead and was later transported to the Tarrant County Medical Examiner's Office (TCME) in Fort Worth, Texas. On July 2, 2019, beginning at approximately 11:10 a.m., Marc A. Krouse, M.D. began performing an autopsy on T.S. During the course of the autopsy,

Government's Motions in Limine – Page 1

blood and urine samples were taken by TCME technician Jaso Gaines. Those samples were properly stored and provided to the TCME toxicology department, led by Dr. Robert Johnson. Toxicology tests were then conducted on those samples. Those toxicology tests revealed that a mixture of ethanol, fentanyl, and oxycodone were present in T.S.'s blood at the time of death.

Based on Dr. Krouse's autopsy and the results of the toxicology tests, Dr. Krouse determined that the cause of death for T.S. was "mixed ethanol, fentanyl and oxycodone intoxication with terminal aspiration of gastric contents." Dr. Krouse determined that the manner of death was "accident." The autopsy report further reflected that this particular case was reviewed by staff in conference. Dr. Krouse's observations and the photographs taken during the autopsy were included in his written report, which he signed. The report was completed on August 28, 2019.

Over a year later, in September of 2020, Dr. Krouse performed an autopsy on another individual. Dr. Krouse determined that the cause of death was "Gunshot Wound of Abdomen," and the manner of death was "Homicide." *See* Tarrant County Medical Examiner's Audit Report at 81.[1] A routine administrative review of that autopsy revealed that Dr. Krouse had determined a wound near the victim's navel was a surgical stab wound. The review concluded that this wound was actually a second gunshot wound. The administrative review revealed other concerns, and, as a result, the body was

---

[1] A copy of the Tarrant County Medical Examiner's Audit Report has been provided to counsel for the defendant. A copy of that report will be provided to the Court under separate cover.

Government's Motions in Limine – Page 2

exhumed and a second autopsy was performed. The second autopsy determined that the additional wound was a second gunshot wound, but that it was not a fatal gunshot wound. Ultimately, the second autopsy confirmed that the cause of death and manner of death determined by Dr. Krouse were correct.

As a result of this review and the findings in the second autopsy, a decision was made to conduct a comprehensive audit of Dr. Krouse's autopsies performed in criminal cases from the period of January 1, 2020, through November 9, 2020. On November 9, 2020, Dr. Krouse was suspended from performing jurisdictional homicides at the TCME Office. The comprehensive audit involved forty-one autopsies performed by Dr. Krouse in 2020. The audit found only two material mistakes were made in all the audited cases, and in only one did the mistake affect the manner of death and cause of death.[2] And in that case, Dr. Krouse did not perform an autopsy; rather, he only performed an inspection. The audit found other mistakes in some of the autopsies, such as failing to confirm identification by fingerprint, failing to order MedStar records, etc., but none of those mistakes were deemed material. More importantly, none of the mistakes identified in the audit related to toxicology.

---

[2] In the only case in which any mistakes were determined to have affected the manner and cause of death, Dr. Krouse found the cause of death was "Complications of Paraplegia due to Remote Gunshot Wound." TCME Audit Report at 31. Dr. Krouse ruled the manner of death was homicide. *Id*. Dr. Krouse performed an inspection only in this case. The audit found that an autopsy should have been performed. In this case, the decedent was shot in 1990, which rendered him a paraplegic for thirty years, until his death. The bullet was never removed. The decedent suffered from a myriad of health problems, including problems with his bowel and urinary tract. The audit found that in a case ruled as a homicide, "best practices" require that complications resulting from paraplegia be further investigated before ruling that a complication due to paraplegia be ruled as the cause of death. Because of the decedent's other co-morbidities, the cause of death and manner of death were changed to "undetermined." *Id*. at 31-32.

## Discussion

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." *See* Fed. R. Evid. 404(b)(1). In this case, attempts by the defense to introduce specific mistakes that Dr. Krouse made on other occasions would be prohibited by the rules of evidence. Further, the details of the audit are not relevant to the case before this court. T.S.'s cause and manner of death relied primarily upon the toxicology results. Those tests were not performed by Dr. Krouse. Rather Dr. Krouse utilized those results in making his determination on the cause of death. None of the cases contained in the audit involved determinations of cause or manner of death based on toxicology. As a result, the details of the audit are not factually similar and are not relevant to this case under Federal Rule of Evidence 401, as they have no "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

The results of the TCME Audit Report go only to Dr. Krouse's qualifications and would only be relevant with respect to a determination of whether Dr. Krouse is qualified as an expert under Federal Rule of Evidence 702. Any questioning of Dr. Krouse with respect to a mistake made on another autopsy should only be asked in a hearing outside the presence of the jury in order for the Court to determine whether Dr. Krouse can provide expert testimony in this case. Should the defense challenge Dr. Krouse's qualifications and should the Court determine Dr. Krouse is not qualified to testify as an

expert, Dr. Krouse's testimony would be limited to authentication of the autopsy report of T.S., which he prepared.

Even if the Court were to determine that questions, argument, evidence, or testimony about the contents of the TCME Audit Report or other autopsies performed by Dr. Krouse were relevant, they are inadmissible under Federal Rule of Evidence 403 and 608(b) because such evidence's probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury or wasting time and constitutes improper impeachment.  Efforts to question Dr. Krouse or any other witness about the results of the audit or the details of other specific cases or autopsies not at issue in this case would result in a mini trial of Dr. Krouse and would confuse and distract the jury from the issues in this case: whether the defendant conspired to distribute controlled substances and whether the defendant distributed the controlled substance that resulted in T.S.'s death. *See United States v. Naidoo*, 995 F.3d 367, 375 (5th Cir. 2021) (recognizing the broad discretion afforded the district court in excluding evidence under FRE 403 when such evidence risks causing jury confusion); *Zahn v. Solano*, 4:10-CV-864-Y, 2015 WL 13632437, at *1 (N.D. Tex. 2015) (granting a motion in limine in the civil context preventing a party from bringing up any other incidents, complaints, or lawsuits that involve conduct other than the conduct that formed the basis of the lawsuit because such evidence is irrelevant and could mislead the jury).  Further, such questions, statements, or evidence do not go to the witness's character for truthfulness and are therefore improper impeachment.

Finally, any statements, argument, inference, or evidence that Dr. Krouse or TCME has been referred to the Dallas County District Attorney's Office for investigation is not relevant and is inadmissible. Such evidence also constitutes improper impeachment under Federal Rule of Evidence 608(b). *See United States v. Hodnett*, 537 F.2d 828, 829 (5th Cir. 1976) (finding impeachment on the basis of mere accusation or arrest is not permissible) (citing *United States v. Garcia*, 531 F.2d 1303, 1306 (5th Cir. 1976)); *United States v. Hughes*, 658 F.2d 317, 320 (5th Cir. 1981) (finding evidence of arrests or investigations for impeachment is not admissible). Even if an arrest had been made, such questioning or evidence would be improper impeachment and inadmissible under Federal Rules of Evidence 608 and 609. *Id.*

The defendant is **opposed** to the relief sought.

2. **Any reference to what sentence of imprisonment the defendant might receive, the risk of incarceration the defendant faces, the conditions in prison, or the impact any sentence may have upon the defendant's family, if convicted.**

References to the sentence that might be imposed should the defendant be convicted of the offenses charged, the conditions the defendant might face in prison if he is convicted and sentenced to a term of imprisonment, and the impact that any sentence may have on his family are expressly inadmissible and irrelevant, and would be unfairly prejudicial. It is well established that a jury may not, in reaching its verdict, consider any possible sentence that might be imposed following conviction. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) (citing *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This principle "is a reflection of the basic division of labor in our legal system between judge

and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict." *Id*. at 579. Any mention of a statutory mandatory minimum or what affect a sentence of imprisonment might have on the defendant or his family is improper.

The defendant **agrees** to this motion.

3.   **Any attempt to impeach a witness based on an agent's report of that witness's interview.**

Agent reports or memorandum of interviews, i.e., DEA-6s, are not statements of the person interviewed; instead, they are an agent's summary. The reports are not a statement within the meaning of the Jencks Act. 18 U.S.C. § 3500. Thus, where the witness is not an agent that authored the report, the Court should preclude the defense from introducing the contents of the report to impeach witnesses during cross-examination, publishing the contents of the report to the jury, or otherwise suggesting to the jury that the reports are statements of witnesses, who did not write or adopt them. Any other result would subvert the Supreme Court's decision in *Palermo v. United States*, which held that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness's own rather than the product of the investigator's selections, interpretations, and interpolations." 360 U.S. 343, 350 (1959).

The defendant opposes this motion to the extent it is necessary to question the witness about what he or she may have told an agent, in order to properly impeach the

witness under Federal Rule of Evidence 613(b).  The defendant agrees that the report itself is not proper extrinsic evidence of impeachment under Rule 612(b).

4. **Any statement, question, or argument suggesting what the defendant would testify to or say, unless and until the defendant waives his Fifth Amendment privilege and testifies at trial.**

"Where an accused party waives his Constitutional privilege of silence, takes the stand in his own behalf and makes his own statement, it is clear that the prosecution has a right to cross-examine upon such statement with the same latitude as would be exercised in the case of an ordinary witness, as to the circumstances connecting him to the alleged crime." *Fitzpatrick v. U.S.*, 178 U.S. 304, 315 (1900).  Accordingly, defense counsel should not be permitted to "testify" for his client through statements, questions, argument, or otherwise, while, at the same time shielding his client from the risks of cross-examination.  That possibility is particularly acute in this case where the evidence establishes that the defendant went to T.S.'s room shortly after arriving at the Hilton hotel and did not return to his own hotel room until approximately 8:25 a.m. on the morning of July 1, 2019, indicating that the defendant in fact remained in T.S.'s room all night.  Any evidence that the defendant propped his door open when he went to T.S.'s room late on the night of June 30, 2019, and therefore did not have to use his hotel-issued key card to access his room when he returned to his room would have to come from the defendant himself.  It is also insufficient for defense counsel to inform only the Court that his client will take the stand.  If the defendant changed his mind, the Court could not, consistent with the Fifth Amendment, force the defendant to testify.

The defendant is **opposed** to the relief sought.

5.   **Any evidence or argument about the defendant's prior good acts or his lack of criminal history.**

Evidence that a defendant lacks a criminal history has been held impermissible under Rule 405(a) of the Federal Rules of Evidence. *See Gov't of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985). In *Grant*, the defendant "attempted to testify that he had never been arrested or charged with a crime." *Id*. at 510. The trial court excluded this testimony as improper character evidence and refused to give a character evidence charge. *Id*. On appeal, the circuit court noted that "testimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a)." *Id*. at 512. "In addition, this kind of testimony is generally less probative of good character than general reputation or opinion evidence, for one's good reputation presumably reflects not only the absence of specific bad acts, but also one's good acts and general public conduct. Indeed . . . a clever criminal, after all, may never be caught." *Id.* (citing *Michelson v. United States*, 335 U.S. 469, 482 (1948)). Likewise, the Fifth Circuit has held that evidence of good acts is irrelevant to a defendant's criminal intent. *United States v. Moreno*, 904 F.2d 251, 259 (5th Cir. 1990). Accordingly, the Court should exclude evidence of the defendant's lack of criminal history and any evidence of his alleged good works as irrelevant, unduly prejudicial, and in violation of Rule 405(a).

The defendant is **opposed** to the relief sought.

6.  **Any allegations against the government related to violations of discovery or *Brady* obligations.**

Any attempt by the defendants to argue that the government violated any discovery orders or *Brady* obligations is irrelevant. Fed. R. Evid. 401, 402. Any allegation is completely unfounded and would only serve to prejudice the jury. Allegations or disputes relating to discovery abuse or failure to provide exculpatory or *Brady* material to the defense should be addressed with the Court outside the presence of the jury.

The defendant **agrees** to this motion.

7.  **Any claims that the defendant is not guilty because the government did not indict others who participated in the conspiracy.**

Whether the government has charged any individual other than the defendant is irrelevant to this case, and any questions or arguments with respect to whether others have been charged should be prohibited. *United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. 2001) (upholding the granting of government's motion in limine to prevent defense counsel from comparing defendant's conduct with that of other uncharged or immunized witnesses); *United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution"); *United States v. Briggs*, 514 F.2d 794, 802-04 (5th Cir. 1975) (holding grand jury naming unindicted co-conspirators in indictment without right to defend in court violated due process rights); *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998) (noting the decision to prosecute one person and not

another is proper exercise of executive discretion with which courts are reticent to interfere); *United States v. Jeong*, 624 F.3d 706, 713 (5th Cir. 2010) ("the decision to prosecute is particularly ill-suited to judicial review" and the United States government "retains broad discretion as to whom to prosecute") (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)).  Any statements to that effect are only meant to prejudice the jury; therefore, the statements offer no probative value. Fed. R. Evid. 403.

The defendant is **opposed** to the relief sought.

8. **Any mention of or reference to T.S.'s use of marijuana or other controlled substances other than drug use that led to the specific event in this case.**

Any argument or testimony that T.S., the decedent, used marijuana or another controlled substance not charged in this indictment is irrelevant.  Fed. R. Evid. 401, 402.  The decedent's prior use of any controlled substance other than that at issue in this case would only serve to tarnish the decedent's reputation or put the victim on trial in an attempt to nullify the jury, which is improper.  *See United States v. Thompson*, No. 99-41007, 2001 WL 498430, at *16 (5th Cir. Apr. 9, 2001) (categorically rejecting the notion that "jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent").

The defendant is **opposed** to the relief sought.

9. **Any testimony related to Eric Kay's character other reputation or opinion testimony.**

The Federal Rules of Evidence provide that if evidence of a person's character or a specific character trait is admissible, it can be proven by testimony of an opinion of the person or about the reputation of the person.  Fed. R. Evid. 405.  Anything mentioned

outside of the confines of this rule is irrelevant to the issues that Fed. R. Evid. 405 addresses. Fed. R. Evid. 401, 402.

The government asks that it be allowed to voir dire the character witnesses outside the presence of the jury to make sure that all testimony is related to character evidence and does not discuss any irrelevant issues.

The defendant **agrees** to this motion consistent with Federal Rule of Evidence 405.

## CONCLUSION

The government respectfully asks this Court to grant these Motions in Limine.

Respectfully submitted,

PRERAK SHAH
Acting United States Attorney

*s/ Lindsey Beran*
LINDSEY BERAN
Assistant United States Attorney
Texas State Bar No. 24051767
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Lindsey.Beran@usdoj.gov

*s/ Errin Martin*
ERRIN MARTIN
Assistant United States Attorney
Texas State Bar No. 24032572
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Errin.Martin@usdoj.gov

>*s/ Jonathan Bradshaw*
>Jonathan Bradshaw
>Assistant United States Attorney
>Colorado Bar No. 43838
>1100 Commerce Street, Third Floor
>Dallas, Texas 75242
>Telephone: (214) 659-8600
>jonathan.bradshaw@usdoj.gov

### Certificate of Conference

On August 20, 2021, I conferenced with Reagan Wynne, attorney for Eric Kay. Mr. Wynne's positions on the motions in limine are set out in the body of the motion.

>*s/ Errin Martin*
>Errin Martin
>Assistant United States Attorney

### Certificate of Service

On August 20, 2021, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court, providing electronic notice of this document to opposing counsel of record.

>*s/ Errin Martin*
>Errin Martin
>Assistant United States Attorney