IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.                                                    No.    4:20-CR-269-Y

ERIC PRESCOTT KAY

**GOVERNMENT'S MOTION TO COMPEL PRODUCTION OF
MATERIALS AND INFORMATION DEMANDED BY SUBPOENA**

Respectfully submitted,

PRERAK SHAH
Acting United States Attorney

*s/   Lindsey Beran*
LINDSEY BERAN
Assistant United States Attorney
Texas State Bar No. 24051767
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Lindsey.Beran@usdoj.gov

*s/   Errin Martin*
ERRIN MARTIN
Assistant United States Attorney
Texas State Bar No. 24032572
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Errin.Martin@usdoj.gov

_s/ Jonathan Bradshaw_
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
E-mail: jonathan.bradshaw@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................iii

GOVERNMENT'S MOTION TO COMPEL PRODUCTION OF MATERIALS AND INFORMATION DEMANDED BY SUBPOENA .........................................................1

1.    The United States subpoenas the Angels to produce documents at the trial of Eric Kay. ...................................................................................2

2.    The Angels stall before ultimately refusing to comply with the subpoena...3

ARGUMENT AND AUTHORITIES ...............................................................6

1.    The government can easily carry its burden under Rule 17. ........................6

2.    The Angels have misplaced their reliance on the attorney-client privilege, which the Angels have likely waived in any event. .....................................7

    A.    To the extent that the Angels assert the attorney-client privilege, this Court should find that the Angels waived it........................................8

        i.    The Angels waived privilege by sharing the contents of their investigation with numerous third parties. .............................8

        ii.    The Angels have waived privilege by publicly leveraging the investigation's conclusions as a sword. ...............................12

    B.    The Angels cannot shield under the attorney-client privilege information obtained before the Angels were even a client to a yet-to-hired attorney. ...........................................................................15

3.    The Angels have likewise misplaced their reliance on the work-product doctrine. ...................................................................................17

CONCLUSION ...........................................................................................19

CERTIFICATE OF CONFERENCE ...............................................................21

CERTIFICATE OF SERVICE.........................................................................21

ii

## TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*Adams v. Memorial Herman*, 973 F.3d 343 (5th Cir. 2020) ....................................7, 8, 18

*Doe 1 v. Baylor Univ.*, 320 F.R.D. 430 (W.D. Tex. Aug. 11, 2017)................................ 13

*Electro Sci. Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539 (N.D. Cal. 1997) .......... 14

*Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719 (5th Cir. 1985) .................. 16

*In re Target Tech. Co. LLC*, 208 F. App'x 825 (Fed. Cir. 2006) ..................................... 13

*Nance v. Thompson Med. Co.*, 173 F.R.D. 178 (E.D. Tex. 1997)....................................... 9

*Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999)................................................... 8, 10

*S.E.C. v. Brady*, 238 F.R.D. 429 (N.D. Tex. Oct. 16, 2006) ........................................ 9, 10

*United States v. Arditti*, 955 F.2d 331 (5th Cir. 1992) ......................................................... 6

*United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982) ......................................7, 8, 9

*United States v. Nixon*, 418 U.S. 683 (1974)................................................................ 6, 7

*United States v. Paulus*, 952 F.3d 717 (6th Cir. 2020)....................................................... 11

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ........................................................ 7, 17

*Willy v. Admin. Rev. Bd.*, 423 F.3d 483 (5th Cir. 2005)................................................... 12

**Federal Statutes and Rules**

Fed. R. Evid. 613 .................................................................................................................7

## GOVERNMENT'S MOTION TO COMPEL PRODUCTION OF
## MATERIALS AND INFORMATION DEMANDED BY SUBPOENA

The United States served Angels Baseball, LP, with a subpoena pursuant to Federal Rule of Criminal Procedure 17(c).   The subpoena made clear what the Angels were to produce and when, and it gave the organization weeks to comply.   The Angels refuse to do so.

First, the Angels misframed the government's subpoena, claiming—errantly and despite its plain language—that it sought only the fruits of their internal investigation into the death of T.S., not—as it did—all information in the Angels's possession about illegal drug-dealing in their organization.   Next, the Angels relied on that erroneous construction as a basis to claim that every single responsive document was cloaked in the attorney client privilege, protected by the work-product doctrine, and not subject to subpoena under Rule 17.   And the Angels "requested" that the subpoena be withdrawn entirely.   Only after the government made clear its intent to enforce the lawful subpoena did the Angels produce a skeletal privilege log and two documents.   But that production (a) proved baseless their initial assertions of total privilege, (b) still fell far short of what the subpoena demanded, and (c) revealed that the Angels had probably waived their attorney-client privilege, even as to their internal investigation, by sharing information about it with several third parties.   In addition to those waivers, the Angels waived privilege again by discussing the investigation, its topics, and its conclusions in a press release.

Because the Angels have failed to fully comply with a lawful court order (or sought to quash it), the government now moves this Court to compel the Angels to

comply with the subpoena.   Specifically, the government requests an order requiring that the Angels produce "any and all documents, records, reports, and information made, commissioned, or obtained by Angels Baseball, LP regarding the distribution of drugs by any Angels Baseball, LP employees or contractors or otherwise within the organization." And the government requests that this Court order the Angels to comply *before* Eric Kay's trial, which is set for October 4, 2021.   More specifically, the government respectfully requests that the Court order compliance no later than Monday, August 30, 2021.   The Court should so order for the reasons that follow.

1.   **The United States subpoenas the Angels to produce documents at the trial of Eric Kay.**

T.S. pitched for the Angels.   On the afternoon of July 1, 2019, T.S. was found dead in a hotel room in Southlake, Texas.   T.S. died from overdosing on a mix of drugs, including fentanyl; but for the fentanyl, however, he would have survived.   A federal grand jury later returned an indictment against Eric Kay for providing that fentanyl to T.S.   (*See* Dkt. No. 12 (charging Kay with conspiracy to possess a controlled substance and distribution of a controlled substance resulting in death and serious bodily injury).)

More than five months after T.S. was found dead, the Angels retained a law firm, Bird Marella, "to provide legal advice regarding all legal matters, including any potential litigation, related to the death of [T.S.]"   (Appendix 8.)   Bird Marella went on to conduct an internal investigation, in which the firm "review[ed] certain documents" and "interview[ed] certain current and *former* Angels employees."   (Appendix 8 (emphasis added).)   Bird Marella then provided its conclusions to the Angels.   (Appendix 8.) The Angels, in turn, released to the press a statement about the internal investigation's

2

topics and its conclusions.   *See* https://www.mlb.com/amp/press-release/press-release-angels-statement-x3235.html.   Meanwhile, the United States prepared for its criminal trial against Kay.

With Kay's trial set to begin on August 16, 2021, (*see* Dkt. No. 23), the United States served a subpoena on Angels, LP.   The subpoena was issued pursuant to Federal Rule of Criminal Procedure 17(c) and commanded the Custodian of Records for Angels Baseball, LP, to produce the following: "Any and all documents, records, reports, and information made, commissioned, or obtained by Angels Baseball, LP regarding the distribution of drugs by any Angels Baseball, LP employees or contractors or otherwise within the organization."   (Appendix 2.)   The subpoena was clear as to when the Angels were required to comply—no later than August 16, 2021 at 1:30 p.m. (Appendix 2.)   And the subpoena was clear as to what the Angels were commanded to produce—*any* and *all* documents, records, reports, and information the Angels had made or obtained regarding the distribution of drugs by their employees or contractors. (Appendix 2.)

**2.      The Angels stall before ultimately refusing to comply with the subpoena**.

The Angels agreed to accept email service of the subpoena, and the subpoena was properly served on July 27, 2021.   (Appendix 1.)

Almost immediately, the Angels began to stall.   On a call on July 28, 2021, counsel for the Angels (Bird Marella), explained that the Angels first wanted to provide the government with the "benefits" of the Angels's "legal analysis" regarding the

subpoena.   A lawyer for Bird Marella indicated that she could do so by that Friday (July 30), but was later forced to postpone providing her analysis due to an illness.

About a week later, Bird Marella—on behalf of the Angels—sent the government a letter requesting that the United States withdraw its subpoena.   (*See* Appendix 7-17.) That letter errantly framed the scope of the government's subpoena—claiming that it compelled "all records of any internal investigation conducted by" Bird Marella into "the death of [T.S.], or related to [H.V.]"[1]   (Appendix 7.)   And the letter claimed that all of the records responsive to that request were shielded from discovery by the attorney-client privilege, the work-product doctrine, and not discoverable under Rule 17 in any event. (Appendix 17.)

The government wrote the Angels to correct their demonstrated errors of fact. (Appendix 15-17.)   The government explained that: (1) the subpoena was to the Angels, not Bird Marella; and (2) while documents produced by the internal investigation into the death of T.S. and/or related to H.V. may indeed be responsive to the subpoena, the subpoena commanded additional classes of documents—documents in the Angels's possession about illegal drug distribution within the organization, whether those documents were created before, during, or after the internal investigation.   And the government made clear that Bird Marella had misframed the subpoena's scope by placing non-existent limitations on the documents it compelled.   (*Compare* Appendix 7 ("[W]e understand the subpoena to be requesting all records of any internal investigation

---

[1] The Angels had earlier disclosed to the government the existence of an anonymous complaint about a then-employee mailed to the Angels on or about October 23, 2019, and received by the Angels on or about October 25, 2019.

conducted by our firm on behalf of the Angels"), *with* Appendix 15-16 ("While you have indicated this request would encompass documents related to the internal investigation, *we note it would also encompass any other documents related to drug distribution within the Angels organization*, including any internal information that was gathered or communicated by or within the Angels organization itself.") (emphasis added).)    The letter concluded by confirming that the government would not withdraw the subpoena.

In response, the Angels asked for additional time to comply with the subpoena and/or produce a privilege log.   The government extended the deadline to Wednesday, August 18, 2021.   At the end of that day on August 18, 2021, the Angels produced two things.   First, the Angels produced two declarations.   Because both were apparently compiled as part of the internal investigation, that production belied the Angels's initial assertion of privilege over every document related thereto.    Second, the Angels produced a privilege log.   It was skeletal and apparently missing entries.   For example, the log was silent as to any discussions—about T.S.—between the Angels and the Commissioner of Major League Baseball, and as detailed below the government has learned that the Angels and Commissioner's Office have communicated on this topic. In the course of that production, the Angels reiterated their position that all records responsive to this subpoena—except the two declarations—are protected by the attorney-client privilege and work product doctrine.

The Angels have failed to comply with a lawful order.   Therefore, the government now moves this Court to compel the Angels to do so.

## <u>ARGUMENT AND AUTHORITIES</u>

### Governing Law

The United States requested—and this Court issued—the subpoena pursuant to

Federal Rule of Criminal Procedure 17(c).   Such a subpoena "may be quashed if [the

production of documents] would be unreasonable or oppressive, but not otherwise."

*United States v. Nixon*, 418 U.S. 683, 698-99 (1974) (internal quotation marks omitted).

This Court has broad discretion to enforce a pretrial subpoena, and its decision will not be

overturned unless it is arbitrary or lacks manifest record support.   *See id.* at 702.

### 1.     The government can easily carry its burden under Rule 17.

The party that seeks to gain access to materials under Rule 17 must show only that

the subpoenaed documents are relevant, admissible, and requested with adequate

specificity.[2]   *United States v. Arditti*, 955 F.2d 331, 345-46 (5th Cir. 1992) (discussing

*United States v. Nixon*, 418 U.S. 683 (1974)).

The requested documents are admissible.   Either party may call as a fact witness

a person with knowledge of Kay's history of abusing opioids and dealing drugs and/or

Kay's actions after T.S.'s death—and to what he or she said on those topics in response

---

[2] In its letter setting out its legal analysis, Bird Marella argued that the subpoena was "improper" because it sought information that was inadmissible at trial under the Federal Rules of Evidence.   While there is no merit to any argument about admissibility, Bird Marella likely focused their objection there because the subpoena seeks specific, relevant evidence.   The United States is proceeding to trial against Kay for delivering the fentanyl that killed Angels's pitcher T.S. and for joining a conspiracy to traffic drugs. Documents or electronically stored information in the Angels's possession that discuss Kay's history as an abuser of opioids, Kay delivering drugs to members of the Angels's organization, including T.S., and Kay's actions in the days and weeks that followed T.S.'s death are relevant.   Similarly, documents or electronically-stored information in the Angels's possession discussing people other than Kay unlawfully distributing drugs to players or others in the organization would almost certainly prove relevant to Kay's defense.   And the facts that underly the conclusions of the Angels's internal investigation into T.S.'s overdose death will be the same facts that are at the heart of this criminal case.

to the Angels's internal investigation.   And either party may call as a trial witness a

declarant who told investigators that someone *other than* Kay was dealing drugs to

Angels's players or employees.   Moreover, at a minimum, either party could impeach

trial witnesses with any inconsistent statements he or she made during the course of the

Angels's internal investigation.   *See* Fed. R. Evid. 613; *see also Nixon*, 418 U.S. at 701-

02 (explaining that prior statements can be subject to a subpoena under Rule 17 where

those statements can be used for impeachment).

     In sum, the United States has discharged its burden to specifically identify

documents and information that is relevant and admissible.

**2.**     **The Angels have misplaced their reliance on the attorney-client privilege,**
         **which the Angels have likely waived in any event.**

     The attorney-client privilege protects both "the giving of professional advice to

those who can act on it" and "the giving of information to the lawyer to enable him to

give sound and informed advice."   *Upjohn Co. v. United States*, 449 U.S. 383, 389

(1981).   The privilege extends to corporations and to people.   *Adams v. Memorial

Herman*, 973 F.3d 343, 349 (5th Cir. 2020).   "Communication between employees and

the corporation's attorney is privileged if it is made 'at the direction of corporate

superiors in order to secure legal advice from counsel' concerning 'matters within the

scope of the employees' corporate duties."   *Id.* (quoting *Upjohn*, 449 U.S. at 389).

     But there are important limitations on the privilege.   First, "the attorney-client

privilege may not be tossed as a blanket over an undifferentiated group of documents."

*United States v. El Paso Co.*, 682 F.2d 530, 538-39 (5th Cir. 1982).   Second, "[t]he

attorney-client privilege only protects disclosure of communications; it does not protect

7

disclosure of the underlying facts." *Adams*, 973 F.3d at 349.   And third, the privilege

can be waived.   *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207-08 (5th Cir. 1999).   As

noted, the Angels "requested" that the government withdraw its trial subpoena, claiming

that every single responsive document was protected by the attorney client privilege.

Not so, because the Angels have likely waived their privilege claim, and it is overbroad

in any event.

> **A.   To the extent that the Angels assert the attorney-client privilege, this Court should find that the Angels waived it.**

The Angels have broadly claimed that the attorney-client privilege protects any

and all information responsive to the government's subpoena.   The government explains

below why their claim of privilege is overly broad to the point of unpersuasive and defies

common sense.   But even if the privilege did extend to every single document that the

Angels seek to shield, it is no hurdle to compliance with the government's subpoena.

That is because the Angels have likely waived it.

> **i.   The Angels waived privilege by sharing the contents of their investigation with numerous third parties.**

It is Hornbook law that the privilege may be waived.   *See El Paso*, 682 F.2d at

538-39.   "When relayed to a third party that is not rendering legal services on the

client's behalf, a communication is no longer confidential and thus it falls outside of the

reaches of the privilege."   *Nguyen*, 197 F.3d at 207-08.   Here, the Angels's own

privilege log reflects at least two instances on which this Court might find a waiver.

First, a lawyer from Bird Marella sent an email to Marie Garvey at

mtg@garveygroup.com providing an "update" on Bird Marella's internal investigation of

the death of T.S.    (Appendix 23.)    A simple internet search reveals that Ms. Garvey is

neither a lawyer nor apparently an employee of the Angels organization.    Rather, Ms.

Garvey is the lead strategist on media communications and corporate relations for a

communications-strategy firm called the Garvey group.    *See* https://garvgroup.com/.

Even if Ms. Garvey was never provided with a formal report or copies of the memoranda

reflecting witness interviews, a discussion of the subject matter may constitute a waiver.[3]

*See S.E.C. v. Brady*, 238 F.R.D. 429, 439-440 (N.D. Tex. Oct. 16, 2006) ("Even

disclosure of privileged information directly to a client's independent auditor, accountant,

or tax analyst destroys confidentiality.")    The Fifth Circuit has declined to create an

"accountant-client communications privilege," *see El Paso*, 682 F.2d at 538-39, and the

government is aware of no authority extending the attorney-client privilege to a "media-

relations communications privilege."    *But see Nance v. Thompson Med. Co.*, 173 F.R.D.

178, 182-83 (E.D. Tex. 1997) (finding that the corporation waived its attorney-client

privilege when it copied documents to "a public relations firm acting as a consultant to

the defendant corporation.").

---

[3] It appears that the organization shared more than "update" with Ms. Garvey.   As laid out more fully
below, Ms. Garvey later released to the press a statement on behalf of the Angels.   The statement was
about the internal investigation—including its focus and bottom-line conclusions.   That statement,
moreover, was widely reportedly in the media.   *See, e.g.*,
https://www.espn.com/mlb/story/_/id/31731359/pitcher-tyler-skaggs-family-files-suits-angels-former-
employees ("The Angels released a statement, saying the lawsuits 'are entirely without merit and the
allegations are baseless and irresponsible,' and that they would 'vigorously defend' in court.   'In 2019,
Angels Baseball hired a former federal prosecutor to conduct an independent investigation to
comprehensively understand the circumstances that led to [T.S.'s] tragic death,' the statement read.   'The
investigation confirmed that the Organization did not know that [T.S.] was using opioids, nor was anyone
in management aware or informed of any employee providing opioids to any player.'").

With another third party, Chip Carey, the Angels apparently shared even more. Their privilege log notes that Bird Marella sent two emails to Chip Carey (at chipsonit@gmail.com) providing legal analysis and attaching memorandums. (Appendix 23.)   To the extent that Mr. Carey is third-party—i.e., not a part of the Angels organization—this Court should find the privilege waived.[4]   *See S.E.C. v. Brady*, 238 F.R.D. at 439-440; *see also Nguyen*, 197 F.3d at 208 ("Disclosure of any significant portion of a confidential communication waives the privilege as to the whole.") (cleaned up).

In addition, the Officer of the Commissioner of Major League Baseball has acknowledged having prior communications with the Angels on the subject of T.S.'s death.[5]   And finally, the Angels met and "conferred" with Kay's defense lawyer, Michael Molfetta, who is purportedly willing to stipulate that the reports are not *Brady* material if the government never possesses them.   (Appendix 24-25 ("Relevant to that letter, we have now had the opportunity to meet and confer with Eric Kay's trial counsel, Michael Molfetta, as I believe we would be required to do pursuant to Local Criminal Rule 47.1(a), to ascertain his view with regard to whether the documents sought by your subpoena would constitute *Brady* material.   Mr. Molfetta advised that he would stipulate that records of Bird Marella's internal investigation that have never been disclosed to the

---

[4] At a minimum, the 2021 Angels Media Guide does not note Chip Carey as an executive or other staff member of the Angels organization.   *See* http://www.angelsmediaguide.com/.

[5] To be sure, the Office of the Commissioner has denied receiving reports or "documents" produced during the Angels's internal investigation.   In a recent call with the government, counsel for the Commissioner's Office stated that her client would not answer questions about the content of those communications unless compelled to do so.   She further stated that the Office of the Commissioner would refuse to provide the name of a person with knowledge of those communications or discussions unless compelled to do so by the Court.

government and are not in the government's possession are not within the scope of the government's *Brady* obligations.").)    A lawyer at Bird Marella represented to the government that this "conference" occurred pursuant to this Court's Local Rule 47.1(a), which requires parties to motions to conference on those affected by motions.    That is so even though Bird Marella did not confer with the government regarding the same motion—let alone filed any such motion necessitating that conference.

Irrespective of Bird Marella's representations that Mr. Molfetta has agreed that such information does not constitute *Brady* material, Kay may be able to challenge any conviction(s) on appeal on the basis that his rights under due process were violated if the Court prevented Kay from discovering materially exculpatory information.    *See United States v. Paulus*, 952 F.3d 717, 722-28 (6th Cir. 2020).    In *Paulus*, for example, the district court barred the government from disclosing to the defendant evidence that a third-party claimed was protected by privilege.    *Id.* at 722.    On appeal, the Sixth Circuit reversed the defendant's conviction because he was denied access to materially exculpatory evidence—a Constitutional violation.    *Id.* at 728 ("We do sympathize with the prosecution, because we recognize that the government believed it had an obligation to disclose the Shields Letter to Paulus and did not do so solely because of the district court's order.    But irrespective of the good faith or bad faith of the prosecution, the failure to disclose favorable, material evidence to the defense violates due process."). (cleaned up).    While Bird Marella and Mr. Molfetta may agree that the government has no obligation to disclose evidence never in its possession, the due process concerns that

11

animated the decision in *Paulus* are implicated here, where a third-party has claimed privilege over evidence that may have proved exculpatory at Kay's trial.

In any event, to the extent that the Angels communicated the content of those reports to Ms. Garvey, Mr. Carey, the Commissioner (or some person in the Commissioner's Office), or to Mr. Molfetta, they have almost certainly waived their claim of attorney-client privilege over them.

ii.  **The Angels have waived privilege by publicly leveraging the investigation's conclusions as a sword.**

There is a second basis on which to find waiver: The Angels used a press release about the internal investigation as a public-relations sword.   "[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege."   *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005).

Here, the Angels used as a sword the internal investigation's findings and conclusions.   The sword took the form of a statement, which the organization released to the press and which was widely cited in the media.[6]   Specifically, the press release revealed: (1) "[i]n 2019, Angels Baseball hired a former federal prosecutor to conduct an independent investigation to comprehensively understand the circumstances that led to [T.S.'s] tragic death;" (2) "[t]he investigation confirmed that the Organization did not know that [T.S.] was using opioids;" and (3) the investigation further confirmed that no

---

[6] *See* https://www.mlb.com/amp/press-release/press-release-angels-statement-x3235.html.

one in the Angels's "management [was] aware or informed of any employee providing opioids to any player."[7]

That statement lifted the lid off the existence of the investigation and its findings and conclusions.  "The exact contents of the communications need not be revealed to constitute waiver."  *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 440 (W.D. Tex. Aug. 11, 2017); *see also id.* (collecting cases).  The Angels's press release leaves no doubt about the subject of the communications between the Angels and Bird Marella.  It reveals the type of information the Angels provided to Bird Marella, and it reveals the content of Bird Marella's communications to the Angels.  Therefore, the organization waived its attorney-client privilege with regards to the internal investigation's (1) scope, (2) conclusions about T.S.'s use of opioids, and (3) conclusions about former employees (like Kay) providing opioids to players.  "It is enough that the [Angels] selectively disclosed confidential attorney-client communications publicly to warrant a finding that it waived the attorney-client privilege with respect to those communications as a whole." *Id.*

Caselaw supports this conclusion.  For example, in *In re Target*, Target (a technology company) put in a sales letter the following statement: "I also asked my patent attorney to conduct a search in the U.S. patent literature, and no potential infringement was found."  *In re Target Tech. Co. LLC*, 208 F. App'x 825, 825-26 (Fed. Cir. 2006).  By disclosing that information publicly, the district court found, Target had

---

[7] *See* https://spectrumlocalnews.com/tx/south-texas-el-paso/news/2021/06/30/skaggs--family-files-lawsuits-in-texas--california-for-negligence.

waived its attorney-client privilege.   *Id.* at 826.   Target tried to have the district court reversed by mandamus, but the United States Court of Appeals for the Federal Circuit found no error.   Even though Target's disclosure did not reveal the contents of its communication, it revealed the lawyer's conclusion—and that was enough to waive the privilege.   *Id.* at 827 (affirming the district court's conclusion of "waiver based on an extrajudicial disclosure that revealed the attorney's conclusion, but did not reveal the details of the privileged communication").

And where an organization releases a press release that voluntarily discloses a substantive component of a communication from an organization's lawyer to the organization, the organization has waived the privilege.   *Electro Sci. Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997) (finding waiver where a "News Release" disclosed "the bottom line of the lawyer's opinion, his conclusion, [and] the ultimate outcome of his legal reasoning.").   That is exactly what happened here. Following Bird Marella's internal investigation, the lawyers conducting it told their client that the investigation had found that the Angels did not know that T.S. was using opioids, nor was anyone in management aware or informed of any employee providing opioids to any player.   The Angels then released the content of that communication in a press release.   *See* https://www.mlb.com/amp/press-release/press-release-angels-statement-x3235.html ("In 2019, Angels Baseball hired a former federal prosecutor to conduct an independent investigation to comprehensively understand the circumstances that led to [T.S.'s] tragic death.   The investigation confirmed that the Organization did not know that Tyler was using opioids, nor was anyone in management aware or informed of any

14

employee providing opioids to any player."). The Angels thereby waived their claim of privilege.

In sum, by publicly releasing a statement revealing the topics of the communications between the Angels and its outside counsel, the Angels waived their privilege on those subjects.

**B.      The Angels cannot shield under the attorney-client privilege information obtained before the Angels were even a client to a yet-to-hired attorney.**

Even if the Angels organization never waived privilege (it did), the privilege does not extend to all of the documents responsive to the government's subpoena. The government's subpoena commanded the Angels's production of all documents that relate to unlawful drug distribution within the organization. The subpoena would thus include documents or information in the Angels's possession that were created before the organization ever thought to conduct an internal investigation into T.S.'s death. If the Angels attempt to throw the blanket of attorney-client privilege over all of that information, this Court should reject that approach.

T.S. was found dead on July 1, 2019. Per their privilege log, the Angels first communicated with outside counsel about that death nearly 90 days later—on September 24, 2019. (Appendix 18.) And they did not engage Bird Marella to conduct its internal investigation into T.S.'s death until "on or about December 2019." (Appendix 8.) But the Angels have refused to produce any documents—even those created after T.S. died but before the organization began its internal investigation. The Angels have done so by misframing the scope of subpoena, claiming that it seeks only information

15

about the internal investigation and strategically reading out its request for documents or information made or obtained before Bird Marella was even engaged.[8]

Put simply, it strains credulity to accept any assertion that the Angels's organization has not a single document, record, or report for months after of one of its pitchers overdosed and died on a trip taken by the team; for months after Kay confessed to another Angels employee that he was in T.S.'s room late on June 30, 2019, and witnessed T.S. ingesting drugs; and for weeks after learning about allegations of drug distribution by employee(s) within the organization. That is especially so given the significant media spotlight that shone on the death—and on the Angels—in the days, weeks, and months that followed T.S.'s death.[9]  In the extremely likely event that such records or documents do exist, they are responsive to the United States's trial subpoena. They cannot—by definition—be protected by a privilege that had yet to come into existence when they were made or obtained.  *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985) (explaining the privilege and making clear that the "burden of demonstrating the applicability of the privilege rests on the party who invokes it").  And the Angels cannot protect them by claiming that they somehow later

---

[8] The government cured any misconception about the subpoena's scope in its August 13, 2021, letter to the Angels.  That letter expressly corrected any misunderstanding that the subpoena was limited to documents generated in Bird Marella's internal investigation.  (Appendix at 15-16 ("The subpoena requests documents, records, reports, and information related to drug distribution by any Angels employees or contractors.  We did not limit it to information surrounding [T.S.]'s death or the information received regarding [H.V.]'s drug distribution.").)  Rather, as the letter—consistent with the subpoena's plain language—explained, the subpoena commanded documents, records, reports, and information related to drug distribution by any Angels employees or contractors.

[9] For example, ESPN published a story on August 30, 2019, reporting that a medical examiner had concluded T.S. had fentanyl, oxycodone, and alcohol in his system when he died.  The report further noted that "an unnamed Angels employee was tied to an ongoing investigation by the Southlake Police Department."  *See* https://www.espn.com/mlb/story/_/id/27501379/coroner-opioids-alcohol-skaggs-system.

became privileged.   Indeed, even "[d]ocuments and materials developed by a lawyer for use in or in anticipation of litigation are not protected by the attorney client privilege." *Id.*

Finally, the government reiterates that the Angels cannot cloak underlying *facts* in attorney-client privilege.   A fact does not become privileged just because it is communicated to an organization's attorney.   *Upjohn*, 449 U.S. at 395-96.   Thus, for example, the Angels cannot cast the privilege over the documents that Bird Marella reviewed as part of its internal investigation.   (Appendix 11 (explaining that Bird Marella reviewed "certain documents" as it conducted its internal investigation).)   The existence of those documents, and the facts contained in them, are not privileged.   And because Bird Marella reviewed them in its internal investigation into the death of T.S., they are almost certainly responsive to the government's subpoena, which commands the production of same.

Accordingly, pursuant to the subpoena, the government requests that this Court compel the Angels to produce any document or record made or obtained by the Angels regarding drug distribution within the Angels's organization.   At a minimum, this Court should compel the Angels to produce those records *in camera* for the Court's inspection, so that the Court can review the materials, redact mental impressions and provide the underlying facts and responsive portions of the documents to the United States and Kay.

**3.      The Angels have likewise misplaced their reliance on the work-product doctrine.**

Bird Marella, on behalf of the Angels, has (1) made clear that the firm reviewed "certain documents" as it undertook its investigation and (2) taken the indefensible

17

position that every responsive document—including the documents that the firm

reviewed—is somehow protected by the work-product doctrine.    (Appendix at 11.)

Not so.

Though the work-product doctrine is distinct from and broader than the attorney-

client privilege, neither doctrine shields from review the "underlying facts."   *Adams*,

973 F.3d at 350.    Here, by the Angels own admission, Bird Marella reviewed "certain

documents" as it undertook an investigation into T.S.'s death.    Because Bird Marella did

not create those documents, they cannot be called Bird Marella's work product.    And

given that those documents were germane to Bird Marella's investigation into the death

of T.S., they are most certainly responsive to the government's subpoena.    This Court

should compel, at a minimum, the Angels to produce those documents in response.

There are almost certainly more documents.    Indeed, the Angels have taken the

extreme position that every single document responsive to the subpoena is protected by

the work-product doctrine.    The Angels have sought to shroud in the work-product

doctrine any documents, reports, or records of communication made or obtained (even

before and) after T.S. died but *before* it engaged outside counsel to prepare for litigation.

Given that those documents are nothing more than facts—not a lawyer's "research,

analysis of legal theories, mental impressions, notes, and memoranda of witnesses'

statements" deserving of protection "from an opposing counsel's inquiries," *Adams*, 973

F.3d at 349—they cannot be shielded by the work-product doctrine.

Finally, the government notes that it has repeatedly offered the Angels the chance

of complying with its subpoena while also preserving any legitimate protection of its

18

attorney work product.    For specific example, the government has requested that the Angels: (1) at least provide the names of the witnesses who it interviewed as part of its internal investigation into T.S.'s death; (2) provide those documents that are responsive to the subpoena but contain no work product; (3) scrub any potential work product and then comply with the government's subpoena; (4) provide the documents to a filter team within the United States Attorney's Office; and/or (5) provide the documents directly to this Court for it to review.    The Angels's response has been to misframe the scope of the government's subpoena, produce only a skeletal—and partial[10]—privilege log, and to claim that every, single responsive document is protected by the work-product doctrine. As a result, this Court should compel the Angels to comply with the subpoena.

## <u>CONCLUSION</u>

This government respectfully moves this Court for an order compelling the Angels to comply fully with the government's subpoena.    Given the length of time that the Angels have been aware of this subpoena and their decision to protract efforts to obtain the information it compels, the government respectfully requests that the Court order compliance no later than Monday, August 30, 2021, and enter an order expediting any related briefing.

Alternatively, to the extent the Court wishes to review *in camera* any responsive document purportedly protected by either privilege, the government respectfully moves the Court to order production no later than Monday, August 30, 2021.    Finally, to the

---

[10] For example, as noted above, the Office of the Commissioner for Major League Baseball recently admitted that the Commissioner had discussions with the Angels regarding the death of T.S.   The Angels omitted any such conversation or communications from its privilege log.

extent that the Court determines that a hearing is necessary to resolve any issues of fact,

the government respectfully requests a hearing as soon as practicable.

Respectfully submitted,

PRERAK SHAH
Acting United States Attorney


*s/   Lindsey Beran*
LINDSEY BERAN
Assistant United States Attorney
Texas State Bar No. 24051767
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Lindsey.Beran@usdoj.gov

*s/   Errin Martin*
ERRIN MARTIN
Assistant United States Attorney
Texas State Bar No. 24032572
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Errin.Martin@usdoj.gov

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
E-mail: jonathan.bradshaw@usdoj.gov

20

## **CERTIFICATE OF CONFERENCE**

I certify that on August 23, 2021, I conferred with Ariel A, Neuman, counsel for the Angels, who noted that the Angels were opposed to this motion.

## **CERTIFICATE OF SERVICE**

I certify that on August 23, 2021, I filed this notice with the clerk of court for the U.S. District Court, Northern District of Texas through the electronic filing system which will generate service to all counsel of record.

_s/ Jonathan Bradshaw_
Jonathan Bradshaw
Assistant United States Attorney

21