IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**FILED**

**September 7, 2021**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

UNITED STATES OF AMERICA

v.

ERIC KAY

CRIMINAL NO. 4:20-CR-269-Y

## GOVERNMENT'S SUPPLEMENTAL AND AMENDED DESIGNATION OF WITNESSES PURSUANT TO FEDERAL RULE OF EVIDENCE 702

The United States of America, by and through its counsel, respectfully notifies the Court and the defendants of its Supplemental and Amended Designation of Witnesses pursuant to the Federal Rules of Evidence.[1]   The United States does not believe that all of the following categories are "experts" in that many issues are covered under Federal Rule of Evidence 701, which governs opinion testimony of lay witnesses.   Out of an abundance of caution, however, the United States provides the following notice of witnesses providing testimony that may fall under Federal Rule of Evidence 702:

### I.     Chemists/Toxicologists/Drug Recognition Experts

Forensic chemists and forensic toxicologists will be called to testify as potential expert witnesses.   Each of the chemists will testify that he or she took an unknown substance and identified it using tests and techniques relied on by other experts in the same field.   Each of the toxicologists will testify that he or she took a human sample—blood or

---

[1] The government filed its initial designation of witness on January 15, 2021 (Dkt. 21) ("Initial Designations").

**Government's Supplemental and**
**Amended Expert Designation — Page  2**

urine—and analyzed it to determine the presence of any drugs, both legal and illegal, and alcohol and utilized tests and techniques relied on by other experts in the same field.    Each chemist or toxicologist is a college graduate in a scientific field and has received advance training in relevant areas and topics.    Each chemist and toxicologist have formed opinions based on his or her experience and training regarding tests and analyses performed in the investigation of this matter as follows:

    A.    <u>Jonathan Bishop, Forensic Chemist, Tarrant County Office of Chief Medical Examiner and Forensic Laboratories.</u>

Mr. Bishop is a Forensic Chemist for the Tarrant County Medical Examiner's Office.    He will testify he analyzed powder residue from two samples collected on July 1, 2019 from the hotel room where the body of T.S. was found and concluded that at least one powder residue contained fentanyl.    He will also testify that he tested a sample of a blue tablet with imprint "M/30" that was seized on July 1, 2019 and concluded that it contained fentanyl.    He will further testify he tested a sample of a pink tablet with imprint "K56" seized on July 1, 2019 and concluded that it contained oxycodone.    Mr. Bishop will testify as to the steps taken in his analytical process and in reaching his conclusions. Mr. Bishop's Statement of Qualifications was attached to the Initial Designations as Exhibit 1.

B.      Robert Johnson, Ph.D, F-ABFT, Chief Toxicologist, Tarrant County Medical Examiner's Office.

Dr. Johnson is the Chief Toxicologist for the Tarrant County Medical Examiner's Office.   Dr. Johnson has been the Chief Toxicologist since 2011, and in that role he supervises the day-to-day operation of the Toxicology Division including the Toxicology, Drug Chemistry, and Breath Alcohol Calibration laboratories.   Dr. Johnson received his Bachelor of Science in Biochemistry and a Masters of Science and Ph.D in Analytical Chemistry all from University of Oklahoma.

In his role as the Chief Toxicologist, Dr. Johnson performed the administrative review for the Certificates of Analyses from the TCME Forensic Chemistry Laboratory, and he signed and certified the Forensic Toxicology Results conduct as part of the autopsy of T.S.   As the Administrative Reviewer of the Certificates of Analyses from the TCME Forensic Chemistry Laboratory, Dr. Johnson will testify that he conducted an administrative review of the case file and the data inputted into the case file.   As the individual who signed the Forensic Toxicology Results, Dr. Johnson will testify that he certified the forensic toxicology reports for the forensic toxicology screening performed as part of the autopsy of T.S. and the steps that were undertaken to reach those conclusions. He will further testify regarding the results of the toxicology report, including: (1) Ethanol – blood 0.122 g/dl, vitreous 0.140 g/dL and urine 0.161 g/dL; (2) Fentanyl – blood 3.8 ng/mL; and (3) Oxycodone – blood 38 ng/mL.   Dr. Johnson may testify regarding the different samples obtained and tested during the autopsy of T.S., including from what areas

of the body the samples were taken and the distinctions between the types of blood samples. He will also testify regarding whether other controlled substances were screened for in the toxicology screening and the results of the screening for any additional controlled substances.   Dr. Johnson's Curriculum Vitae was attached to the Initial Designations as Exhibit 2.

C.   Kathryn Scott, Forensic Toxicologist, Tarrant County Medical Examiner's Office.

Ms. Scott was a Forensic Toxicologist for the Tarrant County Medical Examiner's Office.   She will testify that she conducted certain parts of the forensic toxicology screening performed as part of the autopsy of T.S. and the steps that were undertaken as a result.   She will further testify regarding the steps she took related to her testing and the results of those screening, including the presence of ethanol in T.S.'s blood and urine samples taken as part of T.S.'s autopsy and any other screenings she performed as part of the autopsy.   Ms. Scott's Statement of Qualifications was attached to the Initial Designations as Exhibit 3.

D.   Leanne Hazard, Forensic Toxicologist, Tarrant County Medical Examiner's Office.

Ms. Hazard is a Forensic Toxicologist for the Tarrant County Medical Examiner's Office.   She will testify that she conducted certain parts of the forensic toxicology screening performed as part of the autopsy of T.S. and the steps that were undertaken as a result.   She will further testify regarding the steps she took related to her testing and the

results of those screening, including the presence of oxymorphone, oxycodone, and fentanyl in T.S.'s blood and urine samples taken as part of T.S.'s autopsy and any other screenings she performed as part of the autopsy.    Ms. Hazard's Statement of Qualifications was attached to the Initial Designations as Exhibit 4.

       E.    <u>Connie Lewis, Senior Forensic Toxicologist, Tarrant County Medical Examiner's Office.</u>

Ms. Lewis is a Forensic Toxicologist for the Tarrant County Medical Examiner's Office.    She will testify that she conducted the base forensic toxicology screening performed as part of the autopsy of T.S. and the steps taken in that screening.    She will further testify regarding the results of the screening, including whether controlled and/or non-controlled substances were identified in T.S.'s blood and urine samples taken as part of T.S.'s autopsy and steps taken after the screening(s) she performed as part of the autopsy. Ms. Lewis's Statement of Qualifications was attached to the Initial Designations as Exhibit 5.

       F.    <u>Michelle O'Neal, Senior Forensic Chemist, Tarrant County Medical Examiner's Office.</u>

Ms. O'Neal is a Senior Forensic Chemist for the Tarrant County Medical Examiner's Office.    She will testify that she was the drug chemistry tech reviewer for the testing and conclusions on the Certificate of Analyses signed by Johnathan Bishop and Dr. Robert Johnson on July 26, 2019, regarding the testing of the blue and pink tablets seized from T.S.'s hotel room on July 1, 2019.    Ms. O'Neal will testify as to the steps she took

in her review process and that she followed the quality control processes for the laboratory. She may also testify as to the findings on the Certificate of Analyses.   Ms. O'Neal has previously testified as an expert in federal and state courts and her Curriculum Vitae was attached to the Initial Designations as Exhibit 6.

> G.   John Harris, Senior Forensic Chemist, Tarrant County Medical Examiner's Office.

Mr. Harris is a Senior Forensic Chemist for the Tarrant County Medical Examiner's Office.   He will testify that he was the drug chemistry tech reviewer for the testing and conclusions on the Certificate of Analyses signed by Johnathan Bishop and Dr. Robert Johnson on August 13, 2019, regarding the testing of the white powdery residue seized from T.S.'s hotel room on July 1, 2019.   Mr. Harris will testify as to the steps he took in his review process and that he followed the quality control processes for the laboratory. He may also testify as to the findings on the Certificate of Analyses.   Mr. Harris's Curriculum Vitae was attached to the Initial Designations as Exhibit 7.

> H.   Beryl Landry, Forensic Toxicologist, Tarrant County Medical Examiner's Office.

Ms. Landry is a Forensic Toxicologist for the Tarrant County Medical Examiner's Office.   She will testify that she conducted the ELISA toxicology screening performed as part of the autopsy of T.S. and the steps taken in that screening.   She will further testify regarding what the ELISA screening is and the results of the ELISA screening conducted as part of T.S.'s autopsy and what occurs after she conducts the ELISA screening.   Ms.

**Government's Supplemental and**
**Amended Expert Designation — Page  7**

Landry's Statement of Qualifications and/or Curriculum Vitae will be produced to defense counsel.

I.    <u>Cheryl Wheeler, Forensic Toxicologist, Tarrant County Medical Examiner's Office.</u>

Ms. Wheeler is a Senior Toxicologist for the Tarrant County Medical Examiner's Office.   She will testify that she was the tech reviewer for the case folder in Toxicology for the toxicology reports and screening performed as part of T.S.'s autopsy.   Ms. Wheeler will testify as to the steps she took in his review process and that she followed the quality control processes for the laboratory.   She may also testify as to the findings on the Forensic Toxicology Results.   Ms. Wheeler's Statement of Qualifications was attached to the Initial Designations as Exhibit 8.

J.    <u>Angela DeTulleo, Senior Forensic Chemist, Drug Enforcement Administration, South Central Laboratory.</u>

Ms. DeTulleo is a Senior Forensic Chemist for DEA who will testify that she analyzed powder residue found on several exhibits provided to the DEA South Central Laboratory in January 2020.   The residue powder was found on exhibits obtained from the office of the defendant Eric Kay, including a commingled razor blade holder, razor blade and sleeve, and a small, metal cylinder with a screw cap.   Ms. DeTulleo will testify regarding both the substances that she conclusively identified as being contained in the residue as well as all trace substances and indicators found in the residue.   Ms. DeTulleo will also testify that she tested the remaining two pink tablets and fragments of a remaining

**Government's Supplemental and**
**Amended Expert Designation — Page 8**

pink tablet with imprint "K56" seized on July 1, 2019 and concluded that they contained oxycodone.   If called, the government anticipates she will testify consistently with the results of her chemical analysis report as well as her case report and any accompanying data.   Ms. DeTulleo will testify as to the steps taken in her analytical process and in reaching her conclusions, including that she followed all standard of processes and procedures.   Ms. DeTulleo has testified as an expert witness in other federal and state criminal trials and her Curriculum Vitae was attached to the Initial Designations as Exhibit 9.

> K.  John W. McIllroy, Senior Forensic Chemist, Drug Enforcement Administration, South Central Laboratory.

Mr. McIlroy is a Senior Forensic Chemist for DEA who will testify he reviewed and approved an analysis performed by Angela DeTulleo of powder residue from the razor blade exhibit provided to the DEA South Central Laboratory in January 2020.   The powder was obtained from packaging that contained a commingled razor blade holder, razor blade, and sleeve.   If called, Mr. McIlroy will testify as to the steps taken in his review and approval process and that all steps followed standard processes and procedures. Mr. McIlroy has testified as an expert witness in other federal and state criminal trials and his Curriculum Vitae was attached to the Initial Designations as Exhibit 10.

L.    Logan Jamison, Forensic Chemist, Drug Enforcement Administration, South Central and Mid-Atlantic Laboratories.

Mr. Jamison is a Forensic Chemist for DEA who will testify he reviewed and approved an analysis performed by Angela DeTulleo of powder residue from the sunglass case exhibit provided to the DEA South Central Laboratory in January 2020.   The powder was obtained from a sunglass case.   If called, Mr. Jamison will testify as to the steps taken in his review and approval process and that all steps followed standard processes and procedures.   Mr. Jamison's Curriculum Vitae was attached to the Initial Designations as Exhibit 11.

M.    Michael Morley, Supervisory Forensic Chemist, Drug Enforcement Administration, South Central Laboratory.

Mr. Morley is a Supervisory Chemist for DEA who will testify he reviewed and approved an analysis performed by Angela DeTulleo of powder residue from the small, metal cylinder with a screw cap exhibit provided to the DEA South Central Laboratory in January 2020.   Mr. Morley may also testify that he is a supervisor within the South Central Laboratory and the policies and procedures utilized within the laboratory.   If called, Mr. Morley may also testify as to the steps taken in his review and approval process and that all steps followed standard processes and procedures.   Mr. Morley has testified as an expert witness in other federal and state criminal trials and his Curriculum Vitae was attached to the Initial Designations as Exhibit 12.

N.    Quality Control Analyst Mohan Aruva, KVK-Tech, Inc.

The government anticipates calling Mohan Aruva, who was a Quality Control Analyst at KVK-Tech, Inc.'s Quality Control Laboratory, to testify regarding an analysis performed on pink, round tablets, with "K56" on them that were seized from T.S.'s hotel room on July 1, 2019.   KVK-Tech, Inc. is a developer, manufacturer, and marketer of FDA-approved pharmaceuticals, including pharmaceutical products that contain oxycodone.   Mr. Aruva will testify that the provided tablets were analyzed for Description, Content Uniformity, and physical characteristics and that the description, identification, physical attributes, and content uniformity of the provided tablet match that of a commercially approved lot manufactured by KVK-Tech, Inc. that was used as a control.   Based on the test results and analysis, Mr. Aruva will testify that the tablets found at the crime scene are not counterfeit and contain oxycodone hydrochloride.   Finally, Mr. Aruva will testify about the steps taken and materials reviewed in conducting the analysis and the review process involved in approving the results.

O.    John Menon, KVK-Tech, Inc.

The government anticipates calling John Menon, who reviewed the work performed by Mohan Aruva in KVK-Tech, Inc.'s Quality Control Laboratory to testify regarding an analysis performed on pink, round tablets, with "K56" on them that were seized from T.S.'s hotel room on July 1, 2019.   KVK-Tech, Inc. is a developer, manufacturer, and marketer of FDA-approved pharmaceuticals, including pharmaceutical products that contain

oxycodone.    Mr. Menon will testify that the provided tablets were analyzed for Description, Content Uniformity, and physical characteristics and that the description, identification, physical attributes, and content uniformity of the provided tablet match that of a commercially-approved lot manufactured by KVK-Tech, Inc. that was used as a control.    Mr. Menon will testify regarding the review process for the analysis performed. Mr. Menon's Curriculum Vitae was previously produced.

P.    Vishnuvardhana Polisetti, KVK-Tech, Inc.

The government anticipates calling Vishnuvardhana Polisetti, who approved the work performed by Mohan Aruva in KVK-Tech, Inc.'s Quality Control Laboratory to testify regarding an analysis performed on pink, round tablets, with "K56" on them that were seized from T.S.'s hotel room on July 1, 2019.    KVK-Tech, Inc. is a developer, manufacturer, and marketer of FDA-approved pharmaceuticals, including pharmaceutical products that contain oxycodone.    Vishnuvardhana Polisetti will testify that the provided tablets were analyzed for description, content uniformity, and physical characteristics and that the description, identification, physical attributes, and content uniformity of the provided tablet match that of a commercially-approved lot manufactured by KVK-Tech, Inc. that was used as a control.    Vishnuvardhana Polisetti will further testify regarding the approval process for the analysis performed.    Vishnuvardhana Polisetti's Curriculum Vitae was previously produced.

Q.      William Walker, Senior Latent Print Examiner.

Mr. Walker is a Senior Latent Print Examiner for the Tarrant County Medical Examiner and Forensic Laboratories.   If called, he will testify that he examined Hilton hotel room key cards and a "Bic" brand, white colored, hollowed out plastic tube that were seized from the hotel room of T.S. after his death on July 1, 2019 and analyzed them for the presence of any usable and identifiable fingerprint ridge characteristics.   He will further testify that while he could identify faint, fragmentary impressions on items, they were of no value due to the insufficient clarity and ridge characteristics.   Mr. Walker will testify as to the steps he took in his review process and that he followed the quality control processes for the laboratory.   Mr. Walker's Statement of Qualifications and/or Curriculum Vitae will be produced to defense counsel.

R.      Susan R. Howe, Crime Laboratory Director.

Ms. Susan R. Howe is the Crime Laboratory Director for the Tarrant County Medical Examiner and Forensic Laboratories.   If called, she will testify that she reviewed the fingerprint analysis of Hilton hotel room key cards and a "Bic" brand, white colored, hollowed out plastic tube that were seized from the hotel room of T.S. after his death on July 1, 2019.   If called, Ms. Howe will testify as to the steps taken in her review and approval process and that all steps followed standard processes and procedures.   Ms. Howe's Statement of Qualifications and/or Curriculum Vitae will be produced to defense counsel.

## II.      Drug Distribution Expert

A.      <u>Susannah Herkert, Senior Director at Guidepost Solutions.</u>

As detailed more fully in her Curriculum Vitae, Ms. Herkert is a nationally recognized expert in pharmaceutical diversion and compliance.   Ms. Herkert worked for the Drug Enforcement Administration in multiple Tactical Diversion Squads for 12 years and then worked at the DEA Office of Training in Quantico, Virginia for an additional two years as the first Unit Chief for the Diversion Specialized Training Unit.   Throughout her career with DEA, Ms. Herkert was the lead investigator on numerous cases involving the illicit distribution of pharmaceutical controlled substances and specialized in doctor "pill mill" cases.

Ms. Herkert will testify about the methods employed by individuals engaged in the illegal distribution of controlled substances, the monetary value of illegally diverted controlled substances, "tools of the trade" used by individuals involved in the illegal use and distribution of controlled substances, the manner and methods by which individuals obtain and use controlled substances as well as indicators that an individual may be illegally obtaining and using controlled substances.   Ms. Herkert has testified as an expert witness in other federal criminal trials and her Curriculum Vitae was attached to the Initial Designations as Exhibit 13.

III.    **Cell Phone Analysis Experts**

    A.    <u>Mark W. Sedwick, Special Agent, FBI</u>.

Special Agent Sedwick has been with the FBI since December 1998.    As a Special Agent, he has worked on cases involving illegal narcotics, gangs, violent crime, counter-terrorism, and public corruption.    Special Agent Sedwick has also served on the SWAT team since 2001.    Prior to his work with the FBI, Special Agent Sedwick was an officer in the United States Marine Corps.    Since August 2014, Special Agent Sedwick has been the primary agent for purposes of cellular analysis within the Dallas Division of the FBI. As detailed in the attached CV, Special Agent Sedwick has extensive experience concerning the analysis of cellular telephones and records associated with such devices.

In preparation for his testimony, Special Agent Sedwick will have reviewed cell phone records obtained from the cellular telephone and/or cellular telephone service provider and/or Apple, Inc., with a specific emphasis on GPS coordinates.    Special Agent Sedwick is expected to testify, among other things, regarding:

- His education and professional background, specifically his experience conducting analysis of cellular devices.

- His review of extractions from cellular telephone provider records, including but not limited to GPS coordinates, call detail records, and text records, obtained for certain phone numbers, including but not limited to phone numbers 714-234-3916, 714-591-6020, 714-381-5308, 310-560-4389, and 714-805-2912.

Special Agent Sedwick has testified as an expert witness in other federal criminal trials and his curriculum vitae was attached to the Initial Designations as Exhibit 14.

B.     <u>Stefan Hare, Network Intrusion Forensic Analyst, United States Secret Service.</u>

Mr. Hare has been a network intrusion forensic analyst for the United States Secret Service (USSS) since March 2020.   Before working for USSS, Mr. Hare worked in law enforcement for the El Paso County Sheriff's Office, including as a Cyber Crimes Detective/Digital Forensic Examiner.   He has a Bachelor of Science in Criminal Justice Administration from Colorado State University (Global Campus) as well as hundreds of hours of training and certifications in examining mobile devices.

Mr. Hare is expected to testify regarding the examination of mobile devices, including the steps taken to examine a mobile device.   These steps include but are not limited to the acquisition of the data from the mobile device and preparing the data for analysis.   All steps involve the use of certain programs, which Mr. Hare regularly utilizes in his work as an analyst.   Mr. Hare might also testify as to the generally-accepted steps to ensure the integrity of the acquisition of cell phone data and the steps taken subsequent to the acquisition to prepare the data for analysis.

Mr. Hare may also offer testimony on the acquisition of data received from cell phone, network, and internet providers, such as Apple.   He may testify as to how that data is received from Apple in raw format and how it is accessed and transferred into a usable format that may be analyzed and reviewed.   Mr. Hare has testified as an expert witness in several state criminal trials and his Curriculum Vitae was attached to the Initial Designations as Exhibit 15.

C.    Dan Ogden, Supervisory Digital Investigative Analyst, Department of Justice Criminal Division, CCIPS Cyber Crime Lab.

Mr. Ogden is a supervisory digital investigative analyst with the DOJ Criminal Division CCIPS Cyber Crime Lab, where he has worked for almost five years.   Before working for DOJ, Mr. Ogden worked in law enforcement for the Brevard County Sheriff's Office, assigned to the federal task force investigating internet crimes against children and computer crimes, doing investigations and computer forensics.   He has a master's degree from the University of Central Florida in digital forensics and a graduate certificate in computer forensics from the University of Central Florida as well as several hundred training hours in investigations related to mobile devices, mobile device forensics, acquiring and analyzing data.

Mr. Ogden is expected to testify to the examination of mobile devices, including the steps taken to examine a mobile device.   These steps include but are not limited to the acquisition of the data from the mobile device and the analysis of the data.   All steps involve the use of certain programs, which Mr. Ogden regularly utilizes in his work as an analyst.   Mr. Ogden might also testify as to the generally accepted steps to ensure the integrity of the acquisition of cell phone data and the steps taken subsequent to the acquisition to analyze the data.

Mr. Ogden may also offer testimony on the acquisition and analysis of data received from cell phone, network, and internet providers, such as Apple.   He may testify as to how that data is received from Apple in raw format and how it is accessed and transferred

into a usable format that may be analyzed and reviewed.    Finally, he may offer testimony as to the data that was found on certain cell phone devices and provided by Apple upon his analysis of the data after it was acquired.    Mr. Ogden has testified as an expert witness in other federal criminal trials and his Curriculum Vitae was attached to the Initial Designations as Exhibit 16.

      D.    <u>David Roose, EnCE, ACE, CCO, CCPA.</u>

Mr. Roose has been a Group Supervisor with the Digital Evidence Laboratory for the Drug Enforcement Administration since September 2020.    Before that time, he was a Senior Digital Forensic Examiner for the Digital Evidence Laboratory, SFL9, with the Drug Enforcement Administration.    Before his work for the DEA, Mr. Roose worked as a digital forensic analyst for three years and before that worked a police officer and detective for 15 years.    Mr. Roose has at least 15 certifications in various areas of forensic analyses and has attended myriad trainings on law enforcement and forensic analyses techniques.

Mr. Roose is expected to testify as to the acquisition and analysis of data received from cell phone, network, and internet providers, such as Apple.    He may testify as to how that data is received from Apple in raw format and how it is accessed and transferred into a usable format that may be analyzed and reviewed.    Mr. Roose may testify that the steps taken to access and transfer the data received may involve the use of certain programs, which he regularly utilizes in his work as an analyst.    He may also testify as to the

generally-accepted policies and procedures utilized to ensure the integrity of the acquisition and download of raw data provided by Apple and the steps taken subsequent to the acquisition of the data.    Mr. Roose has testified as an expert witness in state criminal trials and his Curriculum Vitae will be produced to defense counsel.

## III.    Medical Experts

### A.    Dr. Stacey L. Hail, MD, FACMT, Emergency Medicine Physician, Board Certified Medical Toxicologist.

Dr. Hail is an Emergency Physician, Medical Toxicologist, and is employed as an Attending Physician for Parkland Memorial Hospital in Dallas, Texas.    She is certified by the American Board of Emergency Medicine and the American Board of Medical Toxicology.    She is also an Associate Professor at the University of Texas Southwestern Medical Center in Dallas, Texas.    Dr. Hail is an expert in recognizing the signs and symptoms of intoxication from prescription medications, alcohol, and illicit substances, and determining what role such substances factored into a patient's need for emergency medical treatment and/or death.

The government anticipates Dr. Hail will testify regarding the medical file and evidence review she performed regarding the alleged victim, T.S., in this matter, the methodology she used, and her findings and conclusions, all of which are contained in a written report.    Based upon her experience and training, Dr. Hail will testify as to the cause of death of T.S.    Upon the entry of a Protective Order in this matter, the government will produce to defendant Dr. Hail's written report that was created in this matter, which

**Government's Supplemental and
Amended Expert Designation — Page  19**

further details the information Dr. Hail reviewed and examined in reaching her conclusions and the conclusions and information she will testify to in this matter.   The government anticipates that Dr. Hail will provide testimony at trial that is consistent with the facts and opinions contained in her report.

Dr. Hail's medical opinion as to the cause of T.S.'s death, as laid out more fully in her report, is based not only on her education and her training, but on her experience as an Emergency Medicine physician at one of the country's busiest emergency departments. Dr. Hail has been qualified and testified on numerous occasions as an expert in the field of Medical Toxicology in state and federal courts and her Curriculum Vitae was attached to the Initial Designations as Exhibit 17.

B.   Dr. Mark A. Krouse, M.D., Former Deputy Chief Medical Examiner, Tarrant County Medical Examiner's Office.

Dr. Mark Krouse, M.D., was a Deputy Medical Examiner for the Tarrant County Medical Examiner's Office (TCME) and performed the autopsy examination on T.S. after his body was delivered to the TCME on July 1, 2019.   Dr. Krouse will testify regarding the findings made while conducting the autopsy of T.S.   These findings include that the body showed normal development and no signs of trauma or foul play and that the postmortem toxicology demonstrated the existence of ethanol, fentanyl, and oxycodone. More specifically, the toxicology report revealed the following levels in blood samples from the femoral vein source: (1) Ethanol – blood 0.22 g/dl, vitreous 0.140 g/dL and urine 0.161 g/dL; (2) Fentanyl – blood 3.8 ng/mL; and (3) Oxycodone – blood 38 ng/mL.   The

government anticipates that Dr. Krouse may testify as to the steps taken in conducting the autopsy examination and may testify to the findings made in his autopsy report.   Dr. Krouse's Curriculum Vitae was attached to the Initial Designations as Exhibit 18.

C.   Jaso Gaines, Autopsy Technician.

Jaso Gaines assisted Dr. Krouse in his autopsy examination of T.S., including in taking human specimens, such as urine and blood samples for analysis.   Mr. Gaines will testify that in taking such steps and in assisting in the autopsy, he followed the standard protocols and procedures utilized by autopsy technicians and within the Tarrant County Medical Examiner's Office.   While the government does not believe the testimony of Mr. Gaines would constitute expert testimony under Federal Rule of Evidence 702, but rather is strictly factual in nature, out of an abundance of caution it is informing defendant and the Court of this potential testimony.

E.   Richard Luceri, MD, FAHA, FACC.

Richard Luceri is a Medical Doctor specializing in a subspecialty of Cardiology called electrophysiology, the study of cardiac arrhythmias, including sudden cardiac arrest and death.   He is a Fellow of the American Heart Association and a Fellow of the American College of Cardiology.   He practiced for 25 years as a cardiologist in this specialty as a faculty member at the University of Miami, followed by private practice based in the Ft. Lauderdale, Florida area and serving other locations in both Broward and Palm Beach counties.   Dr. Luceri is an expert in recognizing the signs and symptoms of

**Government's Supplemental and**
**Amended Expert Designation — Page  21**

ailments, injuries, and deaths involving cardiac events and in determining how cardiac events factored into a patient's emergency medical treatment and possible subsequent death.

The government anticipates Dr. Luceri will testify regarding the medical file and evidence review he performed regarding the alleged victim, T.S., in this matter, the methodology he used, and his findings and conclusions.   Based upon his experience and training, Dr. Luceri will testify as to whether a cardiac-initiated cardiac event played any role in the death of T.S.   Dr. Luceri will testify that based upon a review of T.S.'s past medical records, including testing and annual physicals that T.S. received, there was no evidence of serious or life-threatening cardiac issues or problems in T.S.'s medical history. Dr. Luceri will further testify that there was no indication from the autopsy records and accompanying materials, including the photographs, investigative report, and analysis of specimens, that T.S.'s death was caused by a cardiac-initiated cardiac event or that a cardiac-initiated cardiac event or issue played a part in T.S.'s death.   Dr. Luceri may also testify that cardiac events are not a leading cause of death in healthy individuals in T.S.'s age group.

Dr. Luceri's medical opinion is based not only on his education and training, but also on his experience as a cardiologist and his work in similar cases involving unexpected deaths caused or not caused by cardiac events.   Dr. Luceri has been qualified and testified

on numerous occasions as an expert in the field of Cardiology in state and federal courts and his Curriculum Vitae has been previously produced to defense counsel.

      F.    <u>Dr. Richard Fries, Deputy Chief Medical Examiner, Tarrant County Medical Examiner's Office, or other qualified expert.</u>

Dr. Richard Fries is the Deputy Chief Medical Examiner at the Tarrant County Medical Examiner's Office.   Dr. Fries graduated with honors from the University of Texas at Dallas with a B.S. in Biology and received his degree in osteopathic medicine from the University of North Texas Health Science Center-Texas College of Osteopathic Medicine in 2008.   Dr. Fries then completed his residency in Anatomic and Clinical Pathology at the Medical College of Virginia Hospitals at Virginia Commonwealth University in Richmond, VA.   Dr. Fries completed a fellowship in Forensic Pathology at the Tarrant County Medical Examiner's Office in 2013 and is board certified in Anatomic, Clinical, and Forensic Pathology.   Dr. Fries is a member of the American Academy of Forensic Sciences (AAFS) and the National Association of Medical Examiners.

If called, Dr. Fries may testify regarding the autopsy performed by Dr. Krouse on T.S. and may testifying regarding the findings made by the Tarrant County Medical Examiner's Office and/or critical case review team.   Dr. Fries may also testify regarding any review of T.S.'s autopsy prior to the release of the Autopsy Report.   The government anticipates that Dr. Fries will testify as to the steps taken by Dr. Krouse and whether they were consistent with the standard policies and methodology used by medical examiner's

in conducting autopsies for initially unknown causes of death.   Dr. Fries's Curriculum

Vitae will be produced to defense counsel.

      The government reserves the right to modify or supplement this Notice and will do

so as necessary and as circumstances warrant, and with appropriate leave from this Court.


                  Respectfully submitted,

                  PRERAK SHAH
                  ACTING UNITED STATES ATTORNEY

                  */s Lindsey Beran*
                  LINDSEY BERAN
                  Assistant United States Attorney
                  Texas Bar No. 24051767
                  ERRIN MARTIN
                  Assistant United States Attorney
                  Texas Bar No. 24032572
                  JONATHAN BRADSHAW
                  Assistant United States Attorney
                  Colorado Bar No. 43838
                  1100 Commerce Street, Third Floor
                  Dallas, Texas 75242-1699
                  Telephone: 214.659.8600
                  Facsimile: 214.659.8812