IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.                                                   No.     4:20-CR-269-Y

ERIC PRESCOTT KAY

**ANGELS BASEBALL LP'S OPPOSITION TO GOVERNMENT'S MOTION TO COMPEL
PRODUCTION OF MATERIALS AND INFORMATION DEMANDED BY SUBPOENA**

Ariel A. Neuman
*Admitted Pro Hac Vice*
aneuman@birdmarella.com
Nicole R. Van Dyk
*Admitted Pro Hac Vice*
nvandyk@birdmarella.com
Oliver Rocos
*Admitted Pro Hac Vice*
orocos@birdmarella.com
Naomi S. Solomon
*Admitted Pro Hac Vice*
nsolomon@birdmarella.com
**BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG & RHOW,
P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

John H. Cayce
State Bar No. 04035650
john.cayce@kellyhart.com
Ryan M. Roper
State Bar No. 24098347
ryan.roper@kellyhart.com
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

Philip H. Hilder
State Bar No. 09620050
philip@hilderlaw.com
Q. Tate Williams
State Bar No. 24013760
tate@hilderlaw.com
Stephanie K. McGuire
State Bar No. 11100520
stephanie@hilderlaw.com
**HILDER & ASSOCIATES, P.C.**
819 Lovett Blvd.
Houston, Texas 77006
Telephone: (713) 655-9111
Facsimile: (713) 655-9112

**ATTORNEYS FOR ANGELS BASEBALL, LP**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ................................................................................2

    A.    Angels Baseball's Extensive Cooperation With The Government........................2

        1.    Angels Baseball Immediately Cooperated With The Government's Investigation When It Began. ......................................................................2

        2.    Angels Baseball Promptly and Voluntarily Advised The Government When It Received Information Regarding H.V. .....................3

        3.    Angels Baseball Continues To Cooperate To The Present Day. ................4

    B.    Angels Baseball Retained Bird Marella To Conduct An Internal Investigation.........................................................................................................4

    C.    The Government Subpoenaed Records Of Bird Marella's Investigation And Angels Baseball Properly Responded With A Privilege Log. ........................6

III. THE SUBPOENA IS UNENFORCEABLE UNDER RULE 17 .............................7

    A.    There Are No Additional, Relevant, Non-Privileged Documents to Produce. ...........................................................................................................8

    B.    The Information Sought Is Inadmissible................................................................9

    C.    The Subpoena Lacks Specificity..........................................................................10

    D.    The Documents Sought In The Subpoena Are Not *Brady* Material. .....................12

IV. ANGELS BASEBALL PROPERLY WITHHELD ATTORNEY-CLIENT PRIVILEGED AND WORK PRODUCT PROTECTED DOCUMENTS ......................13

    A.    The Attorney-Client Privilege Protects Documents Containing Attorney-Client Communications From Disclosure............................................................13

        1.    Angels Baseball Did Not Waive Attorney-Client Privilege By Disclosing Information To Ms. Garvey, Mr. Carey, Or MLB..................15

        2.    Angels Baseball Did Not Waive Privilege By Its Public Denial Of Liability....................................................................................................19

    B.    The Documents Sought Are Protected From Disclosure By The Work Product Protection Doctrine................................................................................23

    C.    Work Product Protection Was Not Waived. .........................................................25

V. CONCLUSION...................................................................................................25

CERTIFICATE OF SERVICE ..................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Airlines, Inc. v. Travelport Ltd.*,
    2012 WL 12884822 (N.D. Tex. July 6, 2012) ..........................................................18

*Aspex Eyewear Inc v. E'Lite Optik, Inc.*,
    2002 WL 1592606 (N.D. Tex. July 17, 2002) ..............................................................20, 23

*In re Auclair*,
    961 F.2d 65 (5th Cir. 1992) ......................................................................................18

*Bowman Dairy Co. v. United States*,
    341 U.S. 214 (1951)..................................................................................................10

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
    658 F.2d 1355 (9th Cir. 1981) ................................................................................14

*Doe 1 v. Baylor University*,
    320 F.R.D. 430 (W.D. Tex. 2017) ..........................................................................22, 25

*Dunn v. State Farm Fire & Cas. Co.*,
    927 F.2d 869 (5th Cir. 1991) ..................................................................................23

*Electro Scientific Ind., Inc. v. General Scanning*,
    175 F.R.D. 539 (N.D. Cal. 1997)............................................................................21, 23

*Fisher v. Halliburton*,
    2009 U.S. Dist. 2009................................................................................................14

*In re Grand Jury Proceedings*,
    43 F.3d 966 ..............................................................................................................9

*In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*,
    926 F.2d 1423 (5th Cir. 1991) ................................................................................14

*In re Grand Jury Subpoenas*,
    265 F.Supp.2d 321 (S.D.N.Y. 2003)........................................................................17

*Hodges, Grant & Kaufman v. U.S. Gov., Dep't of the Treasury, I.R.S.*,
    768 F.2d 719 (5th Cir. 1985) ..................................................................................19

*K-Tech, Inc. v. Vita-Mix Corp.*,
    2009 WL 2436694 (D. Utah, Aug. 7, 2009) ............................................................21

*Lights Out Holdings, LLC v. Nike, Inc.*,
  2015 WL 11254687 (S.D. Cal. May 28, 2015).......................................................25

*Nat. W. Life Ins. Co. v. W. Nat. Life Ins. Co.*,
  2010 WL 5174366 (W.D. Tex. Dec. 13, 2010) ...............................................20, 22

*Pasadena Ref. Sys., Inc. v. U.S.*,
  2011 WL 1938133 (N.D. Tex. Apr. 26, 2011) .......................................................16

*S.E.C. v. Brady*,
  238 F.R.D. 429 (N.D. Tex. 2006) .....................................................12, 23, 24, 25

*Shields v. Sturm, Ruger & Co.*,
  864 F.2d 379 (5th Cir. 1989) .................................................................................25

*Stardock Sys. v. Reiche*,
  2018 WL 6259536 (N.D. Cal. 2018) ...............................................................16, 17

*Strickler v. Greene*,
  527 U.S. 263 (1999)...............................................................................................12

*In re Target Tech. Co. LLC*,
  208 F. App'x 825 (Fed. Cir. 2006) ........................................................................21

*U.S. v. Carter*,
  15 F.R.D. 367 (D.D.C. 1954)................................................................................10

*U.S. v. Mobil Corp.*,
  149 F.R.D. 533 (N.D. Tex. 1993) .........................................................................18

*United States v. Arditti*,
  955 F.2d 331 (5th Cir. 1992) ...................................................................................8

*United States v. Barnett*,
  727 Fed. Appx. 712 (2d Cir. 2018)........................................................................12

*United States v. Frank*,
  23 F.R.D. 145 (D.D.C. 1959)................................................................................10

*United States v. Gas Pipe, Inc.*,
  2018 WL 5262361 (N.D. Tex Jun. 18, 2018) ...............................................8, 10, 12

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961)..................................................................................16

*United States v. Nixon*,
  418 U.S. 683 ........................................................................................................8, 9

---

**ANGELS BASEBALL LP'S OPPOSITION TO GOVERNMENT'S MOTION TO COMPEL**     **PAGE iii**

*United States v. Nobles*,
    422 U.S. 225 (1975)......................................................................................................23

*United States v. Noriega*,
    764 F. Supp. 1480 (S.D. Fla. 1991) ...........................................................................11

*United States v. Paulus*,
    952 F.3d 717 (6th Cir. 2020) ......................................................................................12

*United States v. Pipkins*,
    528 F.2d 559 (5th Cir. 1976) ................................................................................13, 16

*United States v. Reed*,
    726 F.2d 570 (9th Cir. 1984) ..................................................................................9, 11

*United States v. Robinson*,
    121 F.3d 971 (5th Cir. 1997) ...............................................................................14, 20

*United States v. Skilling*,
    2006 WL 1006622 (S.D. Tex. April 13, 2006) ...........................................................9

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)....................................................................................5, 13, 14, 24

*UTStarcom, Inc. v. Starent Networks Corp.*,
    2005 WL 8177860 (N.D. Cal. Mar. 17, 2005)...........................................................20

*Willy v. Admin. Rev. Bd.*,
    423 F.3d 483 (5th Cir. 2005) ...............................................................................21, 22

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
    2016 WL 8677303 (W.D. Tex. Dec. 30, 2016) .........................................................20

*Zenith Electronics Corp. v. Exzec, Inc.*,
    1997 WL 798908 (N.D. Ill. Dec. 24, 1997)..........................................................20, 21

**Other Authorities**

Fed. Rule of Crim. Proc., Rule 16.........................................................................................8

Fed. Rule of Crim. Proc., Rule 17...................................................................7, 8, 10, 11, 12

Fed. Rule of Crim. Proc., Rule 17(c) ...........................................................................6, 8, 10

Fed. Rule Crim. Proc., Rule 17(c)(1).....................................................................................8

Fed. Rule of Evid. 403 .........................................................................................................10

Fed. Rule of Evid. 502(d) ......................................................................................................7

Fed. Rule of Evid. 602 .................................................................................................................10

Fed. Rule of Evid. 802 .................................................................................................................10

# I. INTRODUCTION

Angels Baseball, L.P. has cooperated with the government's investigation from the beginning. It has not withheld from the government a single document it is aware of related to alleged drug distribution by T.S., Eric Kay, or anyone else, other than those reflected on its privilege log—namely, its attorneys' work product and attorney-client privileged communications regarding those matters. Angels Baseball has not waived either privilege and thus properly withheld those documents.

The government's investigation led it to charge Eric Kay with allegedly distributing drugs to T.S. and thereby causing his death. In a recent filing, the government has further alleged that T.S. and Kay together at times arranged for the distribution of drugs to others. As alleged by the government, these were private transactions between private individuals, and there is nothing in the government's filings to suggest that anyone else at Angels Baseball was involved. Nor does Angels Baseball know of any individuals beyond those alleged by the government being aware of or involved in such alleged distribution.[1]

Contrary to the government's assertion that Angels Baseball has "attempt[ed] to throw the blanket of attorney client privilege over" documents related to "unlawful drug distribution" created prior to any internal investigation by counsel (ECF No. 37, Mot. at 15), Angels Baseball has produced more than 350,000 documents related to Kay and T.S., as well as another former employee for whom the government requested information ("H.V."), has investigated facts at the

---

[1]    The instant subpoena was issued shortly after T.S.'s family filed civil claims against Angels Baseball making baseless allegations of a drug culture in Angels Baseball. Relying on a single media article that has since been refuted by under-oath declarations (which have been produced to the government), T.S.'s family claims that Angels Baseball had prior knowledge of Kay's alleged drug distribution to T.S. Counsel for T.S.'s family publicly stated his intent to seek the records of Angels Baseball's internal investigation. It was only then, at least a year after the government knew of the internal investigation and on the eve of Kay's trial, that the government served the instant subpoena.

---

**ANGELS BASEBALL LP'S OPPOSITION TO GOVERNMENT'S MOTION TO COMPEL**          **PAGE 1**

government's request and reported its findings to the prosecutors, facilitated a search warrant of Kay's office and T.S.'s locker after voluntarily preserving them for months in case the government wanted access, and facilitated the interview of every employee the government has asked to speak with. Whenever the government has requested documents or information, Angels Baseball has provided it. Angels Baseball has even volunteered potentially relevant information when it learned of it. Until the instant dispute, the government appeared appreciative of Angel Baseball's cooperative approach.

The truth is that by the time the subpoena was served, Angels Baseball had already produced all responsive, non-privileged documents related to T.S. and Kay (and also H.V.), except two declarations which have now been produced. Yet now the government asserts without evidence that there "must" be more documents related to drug distribution. The claim is baseless, and the government fails to meet its burden of specifically identifying relevant, admissible documents that would be responsive to the subpoena other that those protected by the attorney-client privilege and work product doctrine.

## II. FACTUAL BACKGROUND

**A.      Angels Baseball's Extensive Cooperation With The Government.**

A brief history of Angels Baseball's cooperation is necessary to correct the record before the Court. The only documents responsive to the subpoena that Angels Baseball ever refused to produce are communications with counsel and counsel's work product, all of which are privileged.

### 1.      Angels Baseball Immediately Cooperated With The Government's Investigation When It Began.

Former Angels pitcher, T.S., died in a hotel room in Southlake, Texas, on July 1, 2019. Nearly two months later, on August 30, 2019, the Tarrant County medical examiner released the results of an autopsy indicating T.S.'s system contained alcohol, fentanyl, and oxycodone.

(Declaration of Nicole R. Van Dyk ("Van Dyk Decl."), Ex. A.)[2]  That same day, T.S.'s family's attorney alleged in a press release that an Angels Baseball employee may have been somehow involved in his death.  (*Id*.)  The government began an investigation, and Angels Baseball cooperated immediately – as it had with the Southlake Police Department's initial work – hiring John H. Cayce from the law firm Kelly Hart & Hallman to facilitate its assistance, in addition to counsel in California.  (*Id*. ¶ 4; Declaration of Alexander Todd Winsberg ("Winsberg Decl.") ¶ 3.)

Over the next three months, Angels Baseball produced to the government almost one million pages of documents related to T.S. and Kay.  (Van Dyk Decl. ¶ 9.)  Those documents included personnel files, medical records, policy manuals, all of Kay's emails and documents from 2016 onward, and an image of Kay's laptop computer.  (*Id*. ¶ 8.)  Based upon the government's public filings, it appears that many of those documents now form the basis for its prosecution.

During the same time period, Angels Baseball also responded to numerous informal requests for information to assist the government in its investigation.  These included conducting an inquiry at the government's request regarding how medications are stored by the medical and training staff at Angel Stadium, how medications are administered, and how prescriptions for players are filled and logged.  (Winsberg Decl. ¶ 4.)  That information, which was shared with the government, confirmed that Angels Baseball does not store or dispense any controlled substances, and reflected no unlawful distribution of drugs whatsoever.

### 2.    Angels Baseball Promptly and Voluntarily Advised The Government When It Received Information Regarding H.V.

Though not charged in this case or even referenced in the indictment or the government's recent 404(b) filing—and thus apparently not related to the government's case—the government

---

[2]    The Van Dyk Declaration and the Declaration of Alexander Todd Winsberg are filed under seal contemporaneously with this opposition.

also requested records related to H.V.  The government is aware of H.V. because Angels Baseball voluntarily disclosed information about that person as soon as it was received.  (Van Dyk Decl. ¶ 10.)  Thereafter, Angels Baseball produced additional records.  (*Id.* ¶¶ 10-11.)

**3.      Angels Baseball Continues To Cooperate To The Present Day.**

In addition to the substantial assistance identified above, Angels Baseball has continued to assist the government's investigation.  In December 2019, for example, Angels Baseball facilitated the government's search of Kay's office and T.S.'s locker, which Angels Baseball had voluntarily maintained for months in the event the government needed access.  (Van Dyk Decl. ¶ 11.)  When Angels Baseball cleaned out Kay's office and found potentially relevant items that the government agents had missed, it immediately informed the government and produced those items.  (*Id.* ¶ 11.)  And, over the years, including in recent weeks, Angels Baseball has facilitated the interview of numerous employees by the U.S. Attorney's Offices in Texas and California (and the Southlake Police Department), both directly and indirectly through those individuals' counsel.  (*Id.* ¶ 12.)

In short, Angels Baseball has cooperated with the government's investigation in every possible way, and has produced hundreds of thousands of non-privileged documents relevant to T.S. and Kay.  The government has in its hands all documents responsive to the instant subpoena that Angels Baseball knows of, other than those that reflect its own counsel's investigation and legal advice.  Any contention to the contrary is simply false.

**B.      Angels Baseball Retained Bird Marella To Conduct An Internal Investigation.**

In late October 2019, ESPN Staff Writer T.J. Quinn published an article alleging that (i) Kay provided drugs to T.S. a few days prior to the Texas road trip on which T.S. died, and (ii) in April 2019, Kay's family informed former Angels Vice-President of Communications Tim

Mead that T.S. asked Kay for drugs.[3]  (Van Dyk Decl., Ex. B.)  Following those allegations, and having already provided the voluminous information noted above to the government, Angels Baseball hired additional counsel to represent it in connection with legal matters related to the death of T.S.  (Winsberg Decl. ¶ 6.)

In or around December 2019, Angels Baseball retained the law firm Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C. ("Bird Marella") to provide legal advice regarding all matters related to T.S.'s death, including any potential litigation.  (Van Dyk Decl. ¶ 2; Winsberg Decl. ¶ 7.)  In order to provide such advice, Bird Marella conducted an internal investigation.  (Van Dyk Decl. ¶ 15.)  Prior to the investigation by Bird Marella, Angels Baseball had not conducted any other investigations with the assistance of counsel or otherwise (aside from the inquiry regarding prescription medications requested by, and shared with the government). (*Id.*; Winsberg Decl. ¶ 4.)

Bird Marella conducted the internal investigation from December 2019 onwards, which included interviewing current and former Angels employees and reviewing certain documents. (Van Dyk Decl. ¶ 16.)  All interviews included an *Upjohn* warning instructing each employee that Bird Marella was conducting an investigation to provide legal advice to Angels Baseball, that the interviews were protected by Angels Baseball's attorney-client privilege, and that they should remain confidential.  (*Id.* ¶ 16.)  No interviews were recorded or transcribed.  (*Id.* ¶ 16.)

Throughout the internal investigation, Bird Marella communicated its legal analysis, mental impressions, and conclusions to Angels Baseball via email, memoranda, and a limited number of text messages.  (Van Dyk Decl. ¶ 17.)  Many of those documents contained counsel's

---

[3]   In connection with the instant subpoena, Angels Baseball produced to the government sworn declarations refuting these allegations.

summaries and impressions of certain evidence or statements from the employee interviews that counsel deemed relevant or important to share.  (*Id.* ¶ 17.)  The communications referencing an investigation of drug distribution have been listed on Angels Baseball's privilege log.  (*Id.* ¶ 17.)

Angels Baseball and Bird Marella have kept all of those communications confidential. Indeed, no documents or communications regarding the investigation have been shared with any third parties, including MLB.  (*Id.* ¶ 35.)  And while the government argues waiver based on communications with Marie Garvey and Chip Carey, as explained below, Ms. Garvey is a consultant Bird Marella retained to facilitate its legal representation of Angels Baseball, and Mr. Carey is the Managing Director of Moreno Companies, LLC, in which capacity he helps to oversee the operations of Moreno Baseball LP and Moreno Baseball Companies, Inc. (together, the "Moreno Entities"), which hold a minority ownership interest in Angels Baseball and are joint clients of Bird Marella together with Angels Baseball.  (Van Dyk Decl. ¶ 34.)

**C.     The Government Subpoenaed Records Of Bird Marella's Investigation And Angels Baseball Properly Responded With A Privilege Log.**

As set forth in the government's motion to compel, on July 27, 2021, the government served a subpoena on Angels Baseball pursuant to Rule 17(c) seeking "[a]ny and all documents, records, reports, and information made, commissioned, or obtained by Angels Baseball, LP regarding the distribution of drugs by any Angels Baseball, LP employees or contractors or otherwise within the organization."  (Mot at 3; ECF No. 38, Appendix at 2.)  While the government now contends its subpoena sought a myriad of records unrelated to the internal investigation, the government neglected to advise the Court in its motion, or attach to its Appendix, the cover letter served with the subpoena that explicitly explained that it was directed only at records of the internal investigation.  (Van Dyk Decl., Ex. E.)  That is consistent with multiple conversations between

counsel for Angels Baseball and the government regarding the scope of the subpoena, *i.e.*, that it sought the records of Angels Baseball's internal investigation. (*Id.*, ¶¶ 18-22.)[4]

It was only after Angels Baseball confirmed its assertion of privilege over the internal investigation documents, after the government ignored for several days counsel's request for an extension to respond to the subpoena, and on the eve of the response deadline, that the government suddenly altered its course, claiming that the subpoena was never limited to those documents and that it "has not, at any point, specifically requested documents that are protected by attorney-client privilege or the work-product doctrine." (*Id.* ¶ 26; Appendix at 16.) The Parties agreed that Angels Baseball would produce a privilege log, which Angels Baseball did by the agreed upon deadline. (Van Dyk ¶ 27; Appendix at 18-23.) Angels Baseball also produced two non-privileged responsive documents created in connection with the investigation, and advised the government that Angels Baseball had already produced, but would not produce again, responsive documents over the course of its two-year cooperation with the government's investigation. (Van Dyk Decl., Ex. F.)

Refusing to meet and confer further or to discuss the entries on the privilege log, the government filed its motion to compel. As set forth below, the motion should be denied.

### III. THE SUBPOENA IS UNENFORCEABLE UNDER RULE 17

Apart from the fact that the subpoenaed records are privileged, which is addressed below, the government's subpoena fails the threshold test for enforceability of a Rule 17 subpoena and should be denied on that basis alone.

---

[4] The letter also references that the Angels asserted privilege over records of the investigation in response to a prior grand jury subpoena. At the time of that subpoena, Angels Baseball proposed and drafted an order pursuant to Fed. R. of Evid. 502(d) that would have allowed production of certain limited information without waiving privilege. (Van Dyk Decl. ¶ 19.) The government never followed up or sought entry of the proposed order from the Court. (*Id.*)

"A Rule 17(c)(1) subpoena is not a discovery device, nor does it provide a means of discovery beyond the discovery provided for in Federal Rule of Criminal Procedure 16." *United States v. Gas Pipe, Inc.*, 2018 WL 5262361, at *1 (N.D. Tex. Jun. 18, 2018). Instead, Rule 17(c) subpoenas "must be a good faith effort . . . to obtain evidence" that would be both admissible and relevant at trial. *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219-20 (1951)). As a result, the subpoenaing party "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *United States v. Nixon*, 418 U.S. 683. The subpoena does not meet any of these requirements.

## A.   There Are No Additional, Relevant, Non-Privileged Documents to Produce.

The government offers two potential bases to support *Nixon's* relevance prong. In a footnote, it claims that responsive documents *might* be relevant because: (i) responsive information that pertains directly to Kay *could* support its prosecution; and (ii) responsive information about individuals other than Kay distributing drugs "*would almost certainly* prove relevant to Kay's defense." (Mot. at 6, fn 2 (emphasis added).) Both fail.

As a threshold matter, Angels Baseball *already produced* all non-privileged and responsive documents it is aware of in its possession. *See supra* at Section II.A.3. In fact, the government has had virtually all responsive Angels Baseball records related to Kay and T.S. for almost two years. *Id.* The government does not identify a single relevant, non-privileged, and unproduced document in Angels Baseball's possession that would be responsive to the subpoena. The assertion that some exist is pure conjecture.

Moreover, the government's speculation about the potential relevance of documents responsive to the subpoena is insufficient to satisfy the requirements of Rule 17. *Arditti*, 955 F.2d at 346 (assertion that information *might* assist a party's defense insufficient to show relevance). In order to establish relevance, the government must present facts supporting a "sufficient

likelihood" that the evidence sought contains relevant information.  *Nixon*, 418 U.S. at 700

(offering sworn testimony that subpoenaed material contained relevant information); *United States*

*v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (subpoena quashed in part due to absence of any

foundation that documents sought in a subpoena contained relevant information).  The government

offers no facts or evidence to support its argument that there exist non-produced, responsive

documents that would be relevant to its prosecution of Kay.  It thus fails to satisfy even the first

prong of *Nixon* and the motion fails on this ground alone.

## B.    The Information Sought Is Inadmissible.

The "[a]dmissibility [prong of *Nixon*] requires a movant to make a sufficient showing that

[the requested material] contains evidence admissible with respect to the offenses charged in the

indictment."  *United States v. Skilling*, 2006 WL 1006622, at *3 (S.D. Tex. April 13, 2006).  As to

this prong, the government only discusses documents created during the internal investigation.

Specifically, the government contends that the documents sought are admissible because "either

party could impeach trial witnesses with any inconsistent statements he or she made during the

course of the Angels' internal investigation."  (Mot. at 7.)  This fundamentally misunderstands

what documents exist and the Federal Rules of Evidence.[5]

The Supreme Court and the Fifth Circuit have cautioned that discovery of "documents . . .

reflect[ing] oral conversations made by third parties to [attorneys] . . . may be had only in a 'rare

situation,' because of the danger that the attorney's version of such conversations is inaccurate and

untrustworthy."  *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (quoting *Hickman*, 329 U.S. 495

---

[5]    It also  belies the government's assertion that Angels Baseball has improperly interpreted the scope of
the subpoena and confirms that the subpoena seeks privileged records: the *only* "admissible" documents
the government references are Bird Marella's memoranda regarding witnesses interviewed during the
privileged internal investigation.

---

at 512); *see also U.S. v. Carter*, 15 F.R.D. 367, 371 (D.D.C. 1954) ("Rule 17(c) does not extend broadly to statements of witnesses, since such statements are not admissible in evidence.")).  Here, the documents regarding Bird Marella's interviews with Angels Baseball employees were created by individuals entirely lacking personal knowledge of the facts set forth therein—*i.e.*, Angels Baseball's outside counsel.  Accordingly, any even potentially relevant statements would be inadmissible under Federal Rule of Evidence 602 for lack of foundation.  Moreover, the documents consist entirely of at least double hearsay, because they comprise attorneys' out-of-court statements regarding the out-of-court statements of other individuals, but also triple or quadruple hearsay where witnesses were recounting the out-of-court statements of others.  As such, the documents would also be inadmissible under Federal Rule of Evidence 802.  Finally, the relevance of attempts to impeach a witness with such memoranda would be substantially outweighed by the dangers of confusion and prejudice inherent in attempting to impeach a witness using an attorney's account of their conversation.  The documents would thus be inadmissible under Federal Rule of Evidence 403 too.

## C.    The Subpoena Lacks Specificity.

The government's subpoena also fails Rule 17's specificity requirement.  Rule 17(c) subpoenas are not discovery devices, but are a way of obtaining specific evidence that is relevant to, and admissible in, a criminal prosecution.  *United States v. Gas Pipe, Inc.*, 2018 WL 5262361, at *1.  Accordingly, Rule 17(c) subpoenas that merely trawl for discovery are improper.  *See, e.g.*, *Bowman Dairy Co. v. U.S.*, 341 U.S. 214, 221 (1951) (noting that a "catch-all" provision in a Rule 17(c) subpoena is "not intended to produce evidentiary materials but is merely a fishing expedition to see what may turn up"); *United States v. Frank*, 23 F.R.D. 145, 147 (D.D.C. 1959) (Rule 17(c) "does not permit blunderbuss inspection of the Government's evidence in an attempt to learn something not known; it is not a discovery provision").  The subpoena here is unquestionably an

unlawful fishing expedition, since it is not directed at specific documents but instead seeks "any and all documents" concerning "any Angels Baseball LP employees or contractors or otherwise within the organization."  Catch-all phrases of that nature that are designed to elicit the production of as much information as possible are "a sure sign that the subpoena is being misused."  *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991); *see also United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (fact that subpoena sought entire files rather than specific documents was suggestive of a "fishing expedition").

The lack of specificity in the subpoena is exemplified by the government's shifting articulation of what would be responsive.  The government first stated that the subpoena sought documents created during the course of the internal investigation.  (Van Dyk. Decl. ¶¶ 18-22, Ex. E.)  It then changed course and said that the subpoena should be read literally to demand "[a]ny and all documents . . . regarding the distribution of drugs by any Angels Baseball LP employees or contractors or otherwise within the organization," but said at the same time that it did not want records of legal distribution of drugs by trainers and medical staff.  (Appendix at 16.)  Now in its Motion, the Government continues to reinterpret the subpoena, initially asserting that it seeks documents concerning drug distribution by Angels Baseball employees and contractors within Angels Baseball Organization (Mot. at 3), then removing the limitation that the distribution have been within Angels Baseball Organization (*id*.), then removing the limitation that the distribution have been by an employee or contractor (*id*. at 4), then limiting the subpoena to unlawful drug distribution (*id*. at 15), and then asserting that any document relating to T.S.'s death is responsive, regardless of whether it concerns drug distribution (*id*. at 17, 18).  If the government knew what it was looking for, it would have asked for it and stuck to its request.  Its failure to do so demonstrates that it is merely hoping to find something useful, which is an improper use of the Rule 17 subpoena.

**D.      The Documents Sought In The Subpoena Are Not *Brady* Material.**

In a final attempt to justify its subpoena, the government claims that responsive documents constitute *Brady* material, and that Kay could challenge a subsequent conviction if it does not obtain that information and disclose it to him.  But "a Rule 17 subpoena is improper where it calls for the production of *Brady*, Jencks Act, or *Giglio* material" because it is not a discovery device.  *Gas Pipe, Inc.*, 2018 WL 5262361 at *2.  Even if Rule 17 *could* be used to obtain such material, *Brady* only requires the prosecutor to produce exculpatory information to the defendant that *is in the possession of the prosecution team*.  *Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'").  *Neither Angels Baseball nor its attorneys are part of the prosecution team.*  Accordingly, the government has no obligation to disclose materials in the possession of Angels Baseball or its attorneys.  *See United States v. Barnett*, 727 Fed. Appx. 712, 714-15 (2d Cir. 2018) (government had no obligation under *Brady* to obtain memoranda of internal investigation done by defendants' employer by asking the employer to waive the attorney-client privilege).[6]  Its reliance on *Brady* does not save its defective subpoena.

In sum, the subpoena is precisely what federal law prohibits: a "fishing expedition" seeking the production of inadmissible documents the government has not shown are relevant to its prosecution.  The subpoena does not comply with Rule 17 and the motion should be denied on that basis alone.

---

[6]      *United States v. Paulus*, 952 F.3d 717 (6th Cir. 2020) is inapposite.  Mot. at 11.  In *Paulus*, the Sixth Circuit concluded that the government had breached *Brady* because the government failed to disclose exculpatory evidence *within the prosecutor's possession*.  Case No. 19-5532, Dkt. No. 35-2 at 2-4.  *Paulus* therefore says nothing about what the result should be here.

## IV. ANGELS BASEBALL PROPERLY WITHHELD ATTORNEY-CLIENT PRIVILEGED AND WORK PRODUCT PROTECTED DOCUMENTS

Angels Baseball is entitled to withhold from production documents subject to attorney-client privilege and work product protection.  Contrary to the government's assertion, Angels Baseball is not now hiding, and has never tried to hide, facts from the government behind the veil of privilege.  (Mot. at 17.)  The government can obtain documents and interview witnesses as it sees fit, as it has done for the past two years.  It cannot, however, use work product from Angels Baseball's counsel to identify the documents it should review or witnesses it should talk to.  The *only* documents Angels Baseball has refused to produce are its communications with counsel and documents constituting attorney work product.  Those documents are withheld on the basis of two well-established doctrines, neither of which has been waived.

### A.    The Attorney-Client Privilege Protects Documents Containing Attorney-Client Communications From Disclosure.

In federal criminal actions, the federal common law of attorney-client privilege applies. *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976).  "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," protecting not only the interests of particular parties but also "promot[ing] broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  "The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."  *Id.* (citation omitted).  Thus, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Id.* at 390 (citation omitted).  To invoke the attorney-client privilege, the party seeking its protection must establish that the information sought is: (1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary

purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding.  *See United States v. Robinson,* 121 F.3d 971, 974 (5th Cir. 1997).

As the Supreme Court held forty years ago, communications from an entity and its employees to its attorneys for the purpose of conducting an internal investigation to facilitate the provision of legal advice are the perfect archetype of attorney-client privilege.[7]  *Upjohn Co.*, 449 U.S. at 394-95.  In *Upjohn*, the IRS served a subpoena on the Upjohn Company seeking records of an internal investigation conducted by counsel, including "memorandums or notes of the interviews conducted . . . with officers and employees of the Upjohn Company and its subsidiaries."  *Id.* at 387-88.  The company refused to produce the requested documents on the basis that they were protected from disclosure by the attorney-client privilege and work product doctrine.  *Id.* at 388.

Rejecting the government's contention that the documents were not privileged, the Supreme Court held that communications between a company's counsel and its employees undertaken in the course of an investigation by counsel for the purpose of rendering legal advice to the company are protected by the attorney-client privilege and "must be protected against compelled disclosure."  *Id*. at 394-95.  Thus, while the government was free to question employees counsel had interviewed, it could not obtain the records of counsel's investigation.  *Id*. at 396.  The Fifth Circuit has since repeatedly affirmed that the government's convenience or suspicions do not justify abrogating the attorney-client privilege.  *See, e.g.*, *In re Grand Jury Subpoena for Attorney*

---

[7]     The same rule applies to communications with former employees about matters that occurred during their employment.  *See, e.g.*, *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 658 F.2d 1355, 1361 FN 7 (9th Cir. 1981) (holding that the rationale in *Upjohn* applied to former employees as well as current employees and that conversations with former employees could be subject to attorney-client privilege); *see also Fisher v. Halliburton*, 2009 U.S. Dist. 2009 WL 483890, at *2 (S.D. Tex. Feb. 25, 2009) (since a former employee's communications with defendant's attorney concerned "events within the scope of his duties while working for defendants," his communications "are protected as privileged").

*Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423, 1432 (5th Cir. 1991) ("At times, this privilege may prevent the Government from obtaining useful information, but this is the price we pay for a system that encourages individuals to seek legal advice and to make full disclosure to the attorney so that the attorney can render informed advice.") (quotation omitted).

In the instant case, it is undisputed that Angels Baseball engaged counsel to conduct an investigation in order to provide legal advice, that Angels Baseball communicated with its attorneys in correspondence and in interviews, and that documents were created that contain and reference those communications. While the *facts* that Angels Baseball communicated to its attorneys are not privileged and may be obtained by the government through its own review of non-privileged documents (which have been produced) and its own interviews of witnesses, the communications themselves and documents reflecting those communications unquestionably are. Each of the communications on the privilege log references a confidential communication between Angels Baseball and its counsel made for the purpose of providing legal advice. (Van Dyk Decl. ¶ 32.) Accordingly, Angels Baseball properly withheld them from production.

### 1. Angels Baseball Did Not Waive Attorney-Client Privilege By Disclosing Information To Ms. Garvey, Mr. Carey, Or MLB.

The government attempts to avoid Angels Baseball's attorney-client privilege by asserting it was waived by disclosure of information to Marie Garvey, Chip Carey, or MLB. (Mot. at 7-10.)[8] Again, the government is wrong.

**Ms. Garvey** was retained as a consultant by Bird Marella to assist in its provision of legal advice to Angels Baseball. (Van Dyk Decl. ¶ 33.) For decades, courts have held that the attorney-

---

[8]   Although the government also refers to Angels Baseball's conversation with Kay's attorney, the government does not appear to suggest that conversation waived privilege. (Mot. at 10-11.) In any event, the conversation did not waive the privilege because no privileged information was conveyed. (Van Dyk Decl. ¶ 24.)

client privilege necessarily extends beyond communications between a client and its attorney to include others assisting the attorney in the provision of legal services:

> [T]he complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others; few lawyers could now practice without the assistance of secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts.  The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, *the privilege must include all the persons who act as the attorney's agents*.

*United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (emphasis added) (citation omitted).  That seminal statement has since been adopted by federal courts across the country, including in the Fifth Circuit, more than four decades ago.  *See, e.g.*, *U.S. v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976) ("In appropriate circumstances the [attorney-client] privilege may bar disclosures made by a client to non-lawyers who . . . had been employed as agents of the attorney.")); *see also Pasadena Ref. Sys., Inc. v. U.S.*, 2011 WL 1938133, at *1 (N.D. Tex. Apr. 26, 2011) (the attorney-client "privilege covers communications not only with lawyers *but also with representatives of lawyers or persons whom lawyers employ to assist in providing legal services*") (emphasis added).  In reliance upon that rule, courts routinely find that an attorney's communications with individuals other than its client do not destroy privilege so long as those individuals assisted the attorney in providing legal advice to their client.  *See, e.g.*, *Pasadena Ref. Sys., Inc. v. U.S.*, 2011 WL 1938133, at *1 (disclosure to accountant did not destroy attorney-client privilege); *Stardock Sys. v. Reiche*, 2018 WL 6259536, at *3 (N.D. Cal. 2018) (privilege not destroyed by disclosure to public relations firm).  The privilege is only waived when information is disclosed to a third person for a reason *other than* the provision of legal advice.  *United States v. Pipkins*, 528 F.2d at 562.

The government's contention that Angels Baseball necessarily waived attorney-client privilege by disclosing information to Ms. Garvey is therefore wrong.  Bird Marella engaged Ms. Garvey to assist it in the provision of legal advice to Angels Baseball due to the extremely high profile of this matter, which it was known would—and inevitably did—attract substantial media attention.  (Van Dyk Decl. ¶ 33.)  The necessity of that assistance is shown by the fact that T.S.'s death has attracted extensive press attention, and in fact this motion alone has spawned extensive media coverage.[9]  That media attention directly impacts the litigation relating to T.S.'s death, and Angels Baseball and its counsel have had to anticipate and handle that media attention appropriately and responsibly in its legal filings and as part of its legal strategy.  Ms. Garvey's assistance in doing so continues to be invaluable.  (*Id.* ¶ 33.)  As Bird Marella's agent who has been and is providing assistance with its provision of legal advice to Angels Baseball, the attorney-client privilege was no more waived by disclosing communications to Ms. Garvey than it was by disclosing them to paralegals and legal assistants at Bird Marella.  *See, e.g.*, *In re Grand Jury Subpoenas*, 265 F.Supp.2d 321, 331 (S.D.N.Y. 2003) (disclosure to public relations firm assisting in provision of legal services did not destroy attorney-client privilege); *Stardock Systems Inc. v. Reiche*, 2018 WL 6259536, at *3 (same).  The government's assertion that it is "aware of no authority extending the attorney-client privilege to a 'media relations communication privilege'" reflects nothing more than a misunderstanding of the law and refusal to meet and confer regarding the facts.  (Mot. at 9.)

---

[9]    Although the civil complaints were filed on June 29, 2021, the press has discussed T.S.'s family's intent to sue Angels Baseball since at least August 2019.  (*See, e.g.*, Van Dyk Decl., Ex. A.)  Since the Government filed its Motion, the *Los Angeles Times*, the *New York Times*, *the Athletic*, and ESPN, among many others, have reported on it.

**Mr. Carey** is a senior employee of an entity with a minority ownership interest in Angels Baseball, and a representative of the Moreno Entities, who are joint clients of Bird Marella as co-defendants in the civil cases filed by T.S.'s family against Angels Baseball.  (Van Dyk Decl. ¶ 34.)  The law is well-established that "corporations related through common ownership or control are treated as one entity for attorney-client privilege purposes."  *American Airlines, Inc. v. Travelport Ltd.*, 2012 WL 12884822, at \*5 (N.D. Tex. July 6, 2012) (citing *Pasadena Refining Sys. Inc. v. United States*, 2011 WL 1938133, at \*2).  Mr. Carey's communications with Angels Baseball's counsel are thus just as protected as communications with Angels Baseball's employees, and disclosing information to him plainly did not waive attorney-client privilege.  *See id.*; *see also U.S. v. Mobil Corp.*, 149 F.R.D. 533, 538 (N.D. Tex. 1993) (attorney-client privilege not broken by sharing information with employees of parent and subsidiary companies).  Moreover, communications with Mr. Carey are privileged as part of Bird Marella's joint representation of Angels Baseball and the Moreno Entities.  *See In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992) (privilege protects communications made among persons "who consult an attorney together as a group *with common interests seeking common representation*") (emphasis added).

Finally as to **MLB**, the government's argument fails at the outset because Angels Baseball did not provide to MLB any communications with Angels Baseball's counsel, or documents related to counsel's internal investigation.  (Mot. at 10, fn. 5; Van Dyk Decl. ¶ 35.)  Angels Baseball did not list any documents provided to MLB on its privilege log because they do not exist.  However, even if such records had been shared, a waiver would not have occurred because Angels Baseball and MLB share a common interest in defending against any legal claims that might be asserted by T.S.'s family, as well as the government investigations that sprung from T.S.'s death.  (Van Dyk Decl. ¶ 36.)  Attorney-client privilege is not waived by disclosing information to those

who share a common legal interest.  *Hodges, Grant & Kaufman v. U.S. Gov., Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985) ("The privilege is not, however, waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication.").  In addition, at times MLB also provides legal advice to the teams; any such communications would be directly protected by the attorney-client privilege.  (Van Dyk Decl. ¶ 36.)  Finally, any communications with MLB about the internal investigation would remain protected work product, which has never been waived by counsel.  (*Id.* ¶ 37.)

### 2.     Angels Baseball Did Not Waive Privilege By Its Public Denial Of Liability.

In a final attempt to access Angels Baseball's privileged information, the government asserts Angels Baseball waived privilege through the public statement that:

> The Angels have been informed that a civil suit has been filed by [T.S.'s] family.
>
> In 2019, Angels Baseball hired a former federal prosecutor to conduct an independent investigation to comprehensively understand the circumstances that led to [T.S.'s] tragic death. The investigation confirmed that the Organization did not know that [T.S.] was using opioids, nor was anyone in management aware or informed of any employee providing opioids to any player.
>
> The lawsuits are entirely without merit and the allegations are baseless and irresponsible. The Angels Organization strongly disagrees with the claims made by [T.S.'s] family and we will vigorously defend these lawsuits in court.

(Mot. at 12; *see also* Van Dyk Decl., Ex. G.[10])  Again, the government is wrong on the law.

In order for a party to waive attorney-client privilege, "the Court must find that: (1) *privileged or confidential communications* were actually disclosed [by the party]. . .; (2) [the party] intended to waive the privilege; and (3) that it would be unfair and inconsistent with the

---

[10]   The statement regarding the 2019 investigation is substantively identical to an earlier statement released by Angels Baseball after Kay was charged.  (Van Dyk Decl. ¶ 38.)

privilege for [the party] to invoke the privilege." *Nat. W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, 2010 WL 5174366, at *6 (W.D. Tex. Dec. 13, 2010) (citing *United States v. Seale,* 600 F.3d 473, 492 (5th Cir.), *cert. denied,* 131 S.Ct. 163 (2010)).  None of those factors are present here.

No "privileged or confidential communications were actually disclosed" by Angels Baseball.  The only thing Angels Baseball said in the statement was that it had hired an attorney to conduct an investigation and that Angels Baseball considered the investigation to have confirmed its belief that the key allegations levelled against it in the press and the civil actions were false.  That statement first relates only the unprivileged *fact* that Angels Baseball had hired an attorney, which did not waive the privilege.  *See, e.g.*, *United States v. Robinson,* 121 F.3d 971, 976 (5th Cir. 1997) ("The fact of representation, or an attempt at securing it, is generally not within the privilege."), *cert. denied,* 522 U.S. 1065 (1998); *see also UTStarcom, Inc. v. Starent Networks Corp.*, 2005 WL 8177860, at *2 (N.D. Cal. Mar. 17, 2005) (a public statement did not waive privilege where it merely related unprivileged exculpatory facts).  The statement then restates only the generalized conclusion that no one in management was aware of opioid use by T.S. or opioid distribution by any employee.  Courts routinely hold that merely restating such generalized conclusions does not waive privilege.  *See, e.g.*, *YETI Coolers, LLC v. RTIC Coolers, LLC*, 2016 WL 8677303, at *3 (W.D. Tex. Dec. 30, 2016) (statement that "[w]e believe and our attorney has confirmed that we are not infringing on YETI patent or trade dress" did not waive privilege over communications with attorney); *Aspex Eyewear Inc. v. E'Lite Optik, Inc.*, 2002 WL 1592606, at *3 (N.D. Tex. July 17, 2002) (statement that attorney had concluded party was not liable did not waive privilege); *Zenith Electronics Corp. v. Exzec, Inc.*, 1997 WL 798908, at *4 (N.D. Ill. Dec. 24, 1997) ("mere restatements of an attorney's conclusion do not disclose a particular attorney-

client communication and therefore does not constitute a waiver").  There is nothing to suggest Angels Baseball intended to waive privilege by its generalized denial.

The government's authorities to the contrary are distinguishable.  (Mot. at 12-14.)  As to *In re Target Tech. Co. LLC*, 208 F. App'x 825, 825-6 (Fed. Cir. 2006), the letters that the court there determined waived attorney-client privilege included *both* the client's request of its attorney *and* the substance of the attorney's response.  *Id.* at *826 (noting that the letter stated "I also asked my patent attorney to conduct a search in the U.S. patent literature, and no potential infringement was found").  Unlike in *Target*, Angels Baseball's statement disclosed neither the substance of Angels Baseball's request to counsel, nor the contents of its attorney's response.  *See also K-Tech, Inc. v. Vita-Mix Corp.*, 2009 WL 2436694, at *2 (D. Utah, Aug. 7, 2009) (distinguishing *Target* and finding that disclosure did not waive attorney-client privilege because it did not disclose attorney-client communications, only that the client had sought legal advice before acting).  Similarly, the court in *Electro Scientific Ind., Inc. v. General Scanning*, 175 F.R.D. 539 (N.D. Cal. 1997) held that a party's statement that "it has been advised by legal counsel that the referenced patents are invalid based on prior patents and publications not cited to the Patent Office" waived privilege because it "voluntarily disclosed an important, substantive component of a *communication* from counsel."  *Id.* at 543.  Specifically, the disclosure revealed a legal theory that defendant's counsel had "advised" it to use to defend itself but that had not been disclosed in its public filings.  *Id.*  Again, unlike in *Electro Scientific*, Angels Baseball's statement did not reveal any legal theory it intends to use, only the unprivileged statement that the factual allegations underpinning the civil actions are unfounded.

Finally, the government's reliance on *Willy v. Admin. Rev. Bd.*, 423 F.3d 483 (5th Cir. 2005) to contend that Angels Baseball waived privilege by using "a press release about the internal

investigation as a public-relations sword" misapplies *Willy* and misunderstands the law. *Willy* did not concern a party's use of privileged information as a sword at all, but simply determined that the attorney-client privilege does not bar a plaintiff attorney from using privileged documents to prosecute a claim against a former employer. 423 F.3d at 500. The true state of the law is that a party will use privilege as a sword, and therefore waive it, if it uses "whatever advice it received from its counsel . . . as evidence in [its] case." *Nat. W. Life Ins. Co.*, 2010 WL 5174366, at *7. The statement here does not include privileged information, but in any event, Angels Baseball did not use its privilege as a sword because it did not use its counsel's advice as evidence.

Even if Angels Baseball had disclosed confidential and privileged information in its statement, it plainly would not be unfair to allow Angels Baseball to continue to assert the privilege now. "[F]airness is the critical consideration when evaluating whether a party has waived the attorney-client privilege," which must be determined in light of the circumstances of each case. *Doe 1 v. Baylor University*, 320 F.R.D. 430, 440 (W.D. Tex. 2017). Waiver would be particularly unfair here because Angels Baseball has facilitated the government's access to all of the same facts made available to its attorneys and that form the basis of the statement; the statement was a response to a civil claim filed against it that attracted substantial press attention but which contained factual allegations Angels Baseball believes to be untrue; and the statement was not intended to, and, in fact, did not, gain Angels Baseball any strategic advantage in any litigation. *See Nat. W. Life Ins. Co.*, 2010 WL 5174366, at *7 (denying waiver in part on the basis it would be unfair to do so given the purpose and content of the statement).

If the privilege could be waived merely by denying factual allegations after engaging counsel, it would be waived with alarming frequency.  That is not the law, nor should it be.[11]

## B.   The Documents Sought Are Protected From Disclosure By The Work Product Protection Doctrine.

The documents sought in the subpoena are also protected from disclosure by the work product protection doctrine.  *See, e.g.*, *S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006) (work product productions remain even if attorney-client privilege has been waived).  "[T]he work product protection is distinct from and broader than the attorney-client privilege."  *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).  It insulates from disclosure documents and tangible things prepared in anticipation of litigation, including "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements."  *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (citing *Upjohn*, 449 U.S. at 400)).  Moreover, courts distinguish between work product that merely relates facts and work product that constitutes an attorney's "mental impressions, conclusions, opinions, or legal theories."  *S.E.C. v. Brady*, 238 F.R.D. at 442.  Whereas facts within work product can be accessed upon a showing of a "substantial need of the materials in the preparation of [their] case" and undue hardship, the latter is subject to an absolute protection.  *Id.*

Just as documents generated in internal investigations are subject to attorney-client privilege, so too are they subject to work product protection.  In the words of the Supreme Court:

---

[11]   Even assuming, arguendo, that Angels Baseball's statement did waive privilege, that waiver would be extremely limited.  A disclosure waives privilege only over those communications directly revealed, not over all attorney-client communications.  *See, e.g.*, *Aspex Eyewear Inc. v. E'Lite Optik, Inc.*, 2002 WL 1592606, at *4 (any waiver due to reference of attorney's advice would be limited to disclosure of communication providing that specific advice); *Electro Scientific Indus., Inc. v. General Scanning, Inc.*, 175 F.R.D. at 543-44 (finding "waiver should be very narrow" and limiting it to specific communications referenced in statement waiving privilege).  Accordingly, any waiver would be limited to a communication to Angels Baseball by its attorneys that there was no evidence that it knew T.S. was using opioids or was aware that any employee was providing opioids to any player.

---

> The notes and memoranda sought by the Government here . . . are work product based on oral statements.   If they reveal communications, they are, in this case, protected by the attorney-client privilege.   To the extent they do not reveal communications, they reveal the attorneys' mental processes in evaluating the communications. . . .   [S]uch work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.

*Upjohn*, 499 U.S. at 688.

As set forth above, all of the remaining documents responsive to the subpoena comprise attorney-client communications and documents created by Angels Baseball's attorneys in order to provide legal advice relating to threatened legal proceedings.   They are therefore subject to work product protection as well as attorney-client privilege.

Nonetheless, the government falsely claims that Angels Baseball has "taken the indefensible position that every responsive document—including the documents that [its attorneys] reviewed—is somehow protected by the work-product doctrine." (Mot. at 18.)  Angels Baseball has done no such thing; it has disclosed non-privileged, responsive documents, including those that its attorneys may have reviewed.  All Angels Baseball has withheld from the government is the identity of precisely which documents counsel reviewed, and which individuals counsel interviewed, because *the documents counsel selected to review, and the people it chose to interview, reflect counsel's strategy and mental impressions*.  That information is protected work-product.  *See, e.g.*, *S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006) ("[D]ocuments, including business records, that were specifically selected and compiled by a party or its representative in preparation for litigation are opinion work product because the mere acknowledgment of their selection would reveal mental impressions concerning the potential litigation.").

C.    **Work Product Protection Was Not Waived.**

In addition to being broader than attorney-client privilege, work product protection is more difficult to waive. Unlike attorney-client privilege, "the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). Instead, the protection is only waived where information "is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of that material." *S.E.C. v. Brady*, 238 F.R.D. at 444. Indeed, even where attorney-client privilege has been waived with respect to certain internal investigation documents, those *exact same documents* may nonetheless be subject to work product protection. 238 F.R.D. at 443; *see also Doe 1 v. Baylor University*, 320 F.R.D. 430. The party asserting waiver bears the burden of proving it. *Shields v. Sturm, Ruger & Co.*, 864 F.2d at 382.

In the instant case, although the government (incorrectly) contends that Angels Baseball waived attorney-client privilege, it has made no effort to discharge its burden that work product protection was waived too. (Mot. at 17-19 (addressing work product protection without asserting it was waived).) Nor could it, as any disclosure of information—be it to MLB, Ms. Garvey, or Mr. Carey—was expected to be kept confidential. *See, e.g.*, *Lights Out Holdings, LLC v. Nike, Inc.*, 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015) (work product protection not waived by disclosing documents to public relations firm where recipient was expected to maintain confidentiality). Accordingly, Angels Baseball is entitled to withhold from production all documents on the basis of the work product protection as well.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Angels Baseball respectfully requests that the Motion to Compel be denied.

Respectfully Submitted,

/s/ Ariel A. Neuman
Ariel A. Neuman
*Admitted Pro Hac Vice*
aneuman@birdmarella.com
Nicole R. Van Dyk
*Admitted Pro Hac Vice*
nvandyk@birdmarella.com
Oliver Rocos
*Admitted Pro Hac Vice*
orocos@birdmarella.com
Naomi S. Solomon
*Admitted Pro Hac Vice*
nsolomon@birdmarella.com
**BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG & RHOW,
P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

/s/ John H. Cayce
John H. Cayce
State Bar No. 04035650
john.cayce@kellyhart.com
Ryan M. Roper
State Bar No. 24098347
ryan.roper@kellyhart.com
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280


Philip H. Hilder
State Bar No. 09620050
philip@hilderlaw.com
Q. Tate Williams
State Bar No. 24013760
tate@hilderlaw.com
Stephanie K. McGuire
State Bar No. 11100520
stephanie@hilderlaw.com
**HILDER & ASSOCIATES, P.C.**
819 Lovett Blvd.
Houston, Texas 77006
Telephone: (713) 655-9111
Facsimile: (713) 655-9112

**ATTORNEYS FOR ANGELS BASEBALL, LP**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 7, 2021, I filed this notice with the clerk of court for the U.S. District Court, Northern District of Texas through the electronic filing system which will generate service to all counsel of record.


*/s/ Ariel A. Neuman*
Ariel A. Neuman