IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | ACTION NO. 4:20-CR-269-Y |
| | § | |
| ERIC PRESCOTT KAY (1) | § | |

<u>SEALED ORDER DENYING MOTION TO COMPEL PRODUCTION</u>

Pending before the Court is the government's Motion to Compel Production of Materials and Information Demanded by Subpoena (doc. 37).  After reviewing the motion, the related briefs, the evidence submitted in support, and the applicable law, the Court concludes that the motion should be and hereby is DENIED.

In this case, defendant Kay is charged with conspiring to possess with the intent to distribute and distributing a controlled substance to "T.S.," a player for Angels Baseball, L.P. ("the Angels"), who subsequently overdosed and died.  In the motion, the government seeks an order compelling the Angels to produce documents in response to a subpoena duces tecum the government previously served on the Angels under Federal Rule of Criminal Procedure 17(c).  The government's subpoena requested that the Angels produce "[a]ny and all documents, records, reports, and information made, commissioned, or obtained by [the Angels] regarding the distribution of drugs by any [of the Angels'] employees or contractors or otherwise within the organiza-tion." (Gov't.'s App. (doc. 46) 2.)

To obtain the production of documents prior to trial under Federal Rule of Criminal procedure 17(c), the burden is on the party seeking such production to show good cause for the requested pretrial production.  *See U.S. v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952);

2 CHARLES ALAN WRIGHT & PETER J. HENNING, FED. PRAC. & PROC. § 275 (3d ed. 2009).  Rule 17 "was not intended to provide a means of discovery for criminal cases [but instead to] expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698-99 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). "In other words, Rule 17(c) is not a discovery tool but offers compulsory process for securing specific, identifiable evidence for trial." *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994).

To establish sufficient cause to obtain materials under the rule, a party must demonstrate that "(1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with specificity." *United States v. Arditti*, 955 F. 2d 331, 345 (5th Cir. 1992) (citing *Nixon*, 418 U.S. at 700).  But

> [t]hese specificity and relevance elements require more than the title of a document and conjecture as to its contents.  In *Nixon*, the Watergate special prosecutor was permitted to obtain audio tapes that the president was trying to retain, because he had shown that "there was sufficient likelihood that each of the tapes contain[ed] conversations relevant to the offenses charged in the indictment." *Id.* He met this burden by offering sworn testimony of participants in the recorded conversations, or by giving reasons that permitted a rational inference of relevance, as well as by making a sufficient preliminary showing of admissibility.

*Arditti*, 955 F.2d at 345-46.  Thus, "*Nixon* mandates that the party requesting the information identify the specific item sought and what the item contains, among other things. [A] subpoena referenc[ing] all records, documents, reports, telephone logs, etc., surrounding [an] investigation" is insufficiently specific and is "evidence of an impermissible fishing expedition." *U.S. v. Morris*, 287 F.3d 985,

991 (10th Cir. 2002); *see also In Re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1302 (4th Cir. 1987) (quashing subpoena seeking videos of sexually explicit conduct by minors or adults; concluding the "specificity of the subpoenas is illusory, since the categories described do not refer to particular tapes"); *United States v. Gas Pipe, Inc.*, 3:14-CR-298-M, 2018 WL 5262361, *2 (N.D. Tex. June 18, 2018) (Horan, Mag. J.) ("A request for entire files as opposed to individual documents is suggestive of a fishing expedition."); *Jackson*, 155 F.R.D. at 668 (concluding that "subpoenas employ[ing] such terms as 'any and all documents' or 'including, but not limited to' . . . are indicia of a fishing expedition"); *United States v. Crossland*, 821 F. Supp. 1123, 1128-29 (E.D. Va. 1993) (subpoena requesting "[a]ny and all documents and records concerning the payment of any moneys by, or on behalf of [the defendant] . . . points persuasively to the conclusion that this trial subpoena is an impermissible 'fishing expedition'"). Indeed, "[t]he specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents [and] prevents the moving party from using the Rule 17(c) subpoena as a license for what the Supreme Court . . . .decried as a 'fishing expedition to see what may turn up.'" *U.S. v. Wittig*, 250 F.R.D. 548, 552 (D. Kansas 2008) (quoting *Bowman*, 341 U.S. at 221). "Conjecture and speculation will not provide the lift to carry a movant over the three hurdles." *Jackson*, 155 F.R.D. at 668.

The Angels responded to the government's subpoena by producing two declarations and a privilege log listing approximately eighty-seven documents it contends are protected by the attorney-client or

work-product privileges or both.  And in support of its response to the government's motion to compel, the Angels produced the declaration of Nicole R. Van Dyk, an attorney with the law firm representing the Angels.  Van Dyk declared, under penalty of perjury, that "by the end of November 2019, [the Angels] had produced to the government approximately 990,000 pages of materials," including "all records related to [defendant] Kay and his communications with [T.S.] and the other player referenced in the government's public filings." (Angels' App. (doc. 59) 4, § 9.)  Van Dyk also declared that aside from what is listed on the privilege log, "all documents known to [the Angels] related to drug distribution were [already] produced [to the government]."  (*Id.* at 13, § 31.)

The government, however, suspects otherwise, noting that the Angels have failed to produce any documents created during the eighty-four days immediately following T.S.'s death. But the government has wholly failed to present anything other than its counsels' speculation that such documents actually exist. When the government's speculation is juxtaposed against the declaration presented by Van Dyk, the government's failure to meet its Rule 17(c) burden is glaring.  The government's motion devotes one scant paragraph to Rule 17's requirements and never specifically addresses the rule's specificity requirement.  (Mot. to Compel (doc. 37) 6-7.)  The government apparently has no idea what specific items it wants from the Angels; indeed, it has no idea whether any items other than those already produced even exist. *See Morris,* 287 F.3d at 991 (noting that "[n]ot only is [the requestor] unable to specify what the items he requests contain, he is also unable to verify whether the requested material

even exists").  The Court is not inclined to give its imprimatur to a government fishing expedition based solely on the speculation of counsel that other unproduced documents must exist.  The Angels have presented evidence demonstrating that, other than the documents withheld as part of its privilege log, all responsive documents have already been produced.  The government has wholly failed to present any evidence tending to suggest otherwise.  And its "any and all" subpoena simply does not identify the evidence it seeks with the specificity required under Rule 17(c).[1]  Consequently, the government's motion to compel is denied on this basis, and the Court need not delve into the parties' arguments regarding the Angels' privilege log.  *See Nixon*, 418 U.S. at 698 ("If we sustained [the Rule 17(c)] challenge, there would be no occasion to reach the claim of privilege asserted with respect to the subpoenaed material.").

SIGNED October 7, 2021.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[1]In its brief, the government suggests that it needs the allegedly withheld evidence from the Angels because that evidence may contain *Brady* material that the government must disclose to defendant Kay.  (Mot. to Compel (doc. 37) 11.)  But the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), "bars the prosecutor from suppressing requested evidence in the government's possession that may be exculpatory to the defendant."  *United States v. Campagnuolo*, 592 F.2d 852, 857 (5th Cir. 1979) (emphasis added).  *Brady* does not require that the government affirmatively seek out exculpatory evidence.  And the case the government cites for its position does not help it, given that in that case, the government already possessed the *Brady* evidence at issue but was ordered by the Court not to disclose it.  (Mot. to Compel (doc. 37) 11 (citing *United States v. Paulus*, 952 F.3d 717, 722-28 (6th Cir. 2020).)  Not only is the alleged additional evidence not currently in the government's possession, the government has merely speculated that any such evidence, assuming it exists, may be  exculpatory.