IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC PRESCOTT KAY | NO. 4:20-CR-269-Y |

### RESPONSE TO DEFENDANT'S MOTION TO CONTINUE TRIAL AND EXTEND PRETRIAL DEADLINES

Defendant Eric Kay has again filed a motion to continue trial and extend pretrial deadlines. (Dkt. 74.) The superseding indictment on which the defendant bases his motion does not expand the conspiracy allegation, as he alleges. Moreover, the allegation contained in the superseding indictment, as well as all of the facts and evidence underlying it, have been known to and in the possession of the defendant for months. The defendant essentially argues to the Court that its theory of defense had been to (1) hope that the Court agreed with the defendant's legal arguments,[1] and (2) spring a "gotcha" theory on the government. Under the Speedy Trial Act, Eric Kay is not entitled to a 30-day continuance, and his motion does not put forth a basis for one. This is especially the case where, as here, the defendant has had all of the relevant evidence, arguments, and positions for months and consideration must be given to family members of the victim (victims themselves). For the reasons cited below, the government submits that the defendant's motion should be denied.

---

[1] Despite the fact that the defendant did not file any motions in limine or motions to exclude or respond to any of the government's pretrial filings.

**Response to Defendant's Motion to Continue – Page 1**

## Procedural Background

A two-count indictment was returned in this case on October 15, 2020. (Dkt. 12.) Count One charged Eric Kay with conspiracy to distribute a controlled substance, specifically identifying fentanyl as a controlled substance being delivered, and Count Two charged Eric Kay with possession with intent to distribute and distribution of a controlled substance, fentanyl, resulting in death. (Dkt. 12.) On November 2, 2021, the grand jury true billed a superseding indictment in this case. The government anticipates that its true-billed superseding indictment will be returned on the afternoon of November 2, 2021. The government notified the defendant of the superseding indictment, however, on October 31, 2021. The true-billed superseding indictment alters Count One, the conspiracy count, to add the following underlined language:

> "…the defendant, Eric Prescott Kay, and others, did knowingly and intentionally combine, conspire, confederate, and agree with others … to possess with the intent to distribute and to distribute a controlled substance, to wit: <u>a mixture or substance containing a detectable amount of oxycodone and</u> a mixture or substance containing a detectable amount of fentanyl, Schedule II controlled substances."

The defendant did not respond to the government until 3:05 pm on November 1, 2021, at which time defense counsel informed the government it would seek yet another continuance.

This trial has been continued several times, and this is the second opposed continuance filed by the defendant. On July 21, 2021, the defendant filed an opposed motion to continue the trial and extend the pretrial deadlines. (Dkt. 27.) As detailed more fully below, in his July 21, 2021 motion, the defendant essentially sought additional time

Response to Defendant's Motion to Continue – Page 2

to review discovery, the bulk of which had been in his possession or available for review since February 2021.[2] The Court partially granted the defendant's motion to continue, scheduling the trial for October 4, 2021. The Court then reset the trial for November 8, 2021, which is the current trial date.

## Factual Background

The government has provided notice to the defendant of the oxycodone distribution based on the discovery it has provided, its filings in this case, and meetings with the defendant and his counsel in which the government presented its theory of the case and anticipated evidence at trial.

First, throughout the case, the government continuously met and fulfilled its discovery obligations, produced discovery in a timely manner, assisted defense counsel in locating information in discovery, and provided multiple copies of certain types of raw data in an effort to ensure the defendant could access all of the relevant discovery in this case. This discovery contains a significant amount of evidence related to the oxycodone distribution of the defendant as well as his sources of supply. The government does not intend to produce, locate, or identify any "new" evidence of an oxycodone distribution. The defendant has had the evidence for months and will not be prejudiced by or with any new or additional evidence.

Moreover, in its second unopposed motion to continue, defense counsel even noted the ease with which they could navigate the discovery. Dkt. 22 at ¶4 ("… the discovery as

---

[2] Counsel for the defendant has asked the government to locate certain records in the discovery and has also made references to having reviewed the discovery.

**Response to Defendant's Motion to Continue – Page 3**

produced by the Government is organized in such a way that specific categories of discovery can be located with comparative ease …"). The government also believes that counsel for the defendant has been making attempts to locate and subpoena witnesses that have information about the defendant's years long oxycodone distribution. These efforts indicate that the defendant has in fact navigated and reviewed the discovery and is aware of and familiar with this evidence and that he has already made efforts to subpoena relevant witnesses.[3]

Notably, the defendant has produced <u>no</u> discovery to the government in this case. The government has made repeated requests for reciprocal discovery in this matter, but has not received any such discovery from the defendant. After several requests, during an August 6, 2021 call, counsel for the defendant stated that he is not in possession of any discovery or materials that that he anticipated using in trial. In other words, the defendant does not have distinct evidence that he has sought out and is intending to introduce at trial—he is relying on the discovery provided to him by the government, which he has had for months. And defendant provided this information—that he was relying on the government's discovery—before the government filed its 404(b) Notice, so it could not have been the basis of any strategic decision by the defendant, as referenced in his Motion.

Second, the court filings in this case have consistently referred to the additional oxycodone allegations in this matter. Indeed, starting with the filing of the complaint on July 30, 2020, the defendant has been on notice of the allegations and evidence against him regarding distribution of oxycodone. (Dkt. 1.) Additionally, on August 20, 2021, the

---

[3] The government is unable to confirm whether witnesses have been subpoenaed and does not have the benefit of the defendant's witness list, which was due on November 1, 2021.

**Response to Defendant's Motion to Continue – Page 4**

government filed its notice of intent to offer Rule 404(b) evidence, which specifically referenced the defendant's distribution of oxycodone several times, putting him on notice of this theory. *See, e.g.,* Dkt. 35 at 2 (" Indeed, beginning in at least 2017, Kay was obtaining and distributing controlled substances, including oxycodone, to Major League Baseball players within the Angels organization."); at 3 ("As detailed more fully below, in 2019, Kay was utilizing OfferUp, an online marketplace, to obtain oxycodone pills," and "The government also anticipates introducing evidence that as far back as 2017, Kay was obtaining oxycodone pills to distribute to Angels players.".)  In that filing, the government also argued that this evidence was <u>intrinsic</u> to the conspiracy, that it was inextricably intertwined with the conspiracy and should not be considered 404(b) evidence.  The notice was filed, as stated by the government, out of an abundance of caution should the Court disagree with the government's position that the evidence was intrinsic.

On July 21, 2021, in the defendant's first opposed motion for continuance, he stated:

> From their review of discovery provided to date, undersigned counsel have identified at least three, if not more, persons who could be argued to be un-indicted co-conspirators in Count One.  For purposes of defending the allegations in Count one, it is necessary for undersigned counsel to thoroughly review and analyze the communications, travel, and financial data contained in numerous Cellebrite, .csv, .xls, and .xlsx files provided in an attempt to put information the Government has identified as relevant into context as well as to search for additional data demonstrating connections, or lack thereof, between the persons who could potentially be part of the alleged conspiracy.

This statement to the Court demonstrates that counsel for the defendant knew the theory of the government's case, had been directed to relevant evidence by the government, had identified other potential coconspirators, and would be spending additional time thoroughly reviewing and analyzing the communications and records the government provided.  This

**Response to Defendant's Motion to Continue – Page 5**

belies any claim that the defendant would be prejudiced by proceeding to trial on November 8, 2021, almost four months later.

Finally, the government has been able to talk to and meet with defense counsel a handful of times. At one of those meetings, on July 22, 2021, the government met with the defendant and local defense counsel.[4] At that meeting, the government walked through the government's evidence and its case against the defendant. In doing so, the government made several references to Kay's source of supply for and distribution of controlled substances, including oxycodone and fentanyl—facts and evidence at the heart of any conspiracy. It specifically outlined the evidence for both the defendant and his counsel that would be used against him at trial related to his distribution of controlled substances and his sources of supply.

Despite all of this, or perhaps because of it, in his motion, the defendant's position seems to be that his trial strategy was as follows: (1) he was put on notice that the government believed this evidence regarding his oxycodone distribution was intrinsic to the conspiracy but he disagreed; (2) he would not respond in writing to the government's 404(b) Notice, laying out its belief that the evidence was intrinsic; (3) he would hope that the Court would agree with him that the evidence was not intrinsic and would only come in, if at all, via Rule 404(b); and (4) the Court's limiting instruction would save him from having to introduce any evidence to dispute the evidence of the defendant's oxycodone distribution. Merely hoping that the Court would agree with him, with knowledge of all relevant evidence, certainly does not warrant a continuance. This is especially true where the defendant was on notice that the government

---

[4] The defendant and local counsel met with the government in person while other counsel participated virtually.

intended to introduce evidence related to distribution of oxycodone and should have been preparing to defend against this evidence, since by his own admission, this had been known to the defendant since July 2021 and was raised in a Court filing by the government in August 2021, at the latest.

## Legal Standard

It is well-settled law that the "government may obtain a superseding indictment against a defendant at any time prior to trial and may select which indictment to proceed under at trial." *United States v. Bryant*, 770 F.2d 1283, 1287 (5th Cir. 1985) (quoting *United States v. Chagra*, 669 F.2d 241, 247-248 (5th Cir. 1982)).  The Speedy Trial Act of 1974 clearly fixes the beginning point for the trial preparation period as the first appearance through counsel and "does not refer to the date of the indictment, much less to the date of any superseding indictment." *United States v. Rojas-Contreras*, 474 U.S. 231, 234 (1985).  In fact, the Speedy Trial Act does not require that the 30-day trial preparation period be restarted upon the filing of a superseding indictment, but rather places broad discretion in the district court to grant a continuance when necessary to allow further preparation. *Id.* at 237.  Such a continuance might be necessary if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* at 236.  "The authority of the District Court to grant an 'ends of justice' continuance should take care of any case in which the Government seeks a superseding indictment which operates to prejudice a defendant." *Id.*  Where the change does not prejudice the defendant, however, a continuance is not necessary. *See id.* at 237. *See also United States v. Todisco*, 667 F.2d 255, 260 (2d Cir. 1981) ("In view of the fact that the charges in the superseding indictment were substantially the same as those in the

original indictment and in view of the fact that substantial discovery had taken place, we hold that the district court did not abuse its discretion in refusing to grant a continuance.")

## Analysis

Under the circumstances of the instant case, a continuance is not appropriate. Defense counsel in this case has taken every opportunity to extend the deadline for this trial. The defendant and his counsel have been aware of the evidence against the defendant for months. They have been aware that the government intended to present evidence of his entire drug distribution conspiracy, including both his oxycodone distribution and his fentanyl distribution. The defendant's motion to continue is just another attempt to cause additional, unwarranted delay.

1. **Because both indictments charge the exact same conspiracy, Kay can show no need for a continuance.**

The superseding indictment's listing of an additional substance (oxycodone) did not alter the government's theory of prosecution, about which Kay has been on notice for many months. The original indictment alleged that Kay knowingly conspired with others, both known and unknown, to violate the narcotics laws of the United States. The superseding indictment charges exactly that same conspiracy. That is, by adding that Kay conspired to possess with intent to distribute and distribute oxycodone (in addition to fentanyl), the indictment does *not* allege a different conspiracy. It adds no additional coconspirators; it adds no additional overt acts. Rather, both indictments charge the same exact conspiracy.

As detailed above, Kay has long been aware of the government's theory as to how he conspired to violate the narcotics laws by virtue of discovery produced in this case, its filings in this case, and its meetings with the defendant and counsel in this case. In support of its

motion, the defendant does not rely on case filings or meetings with the government but rather cites to press releases and public statements as the basis for its prejudice. For example, the defendant did not tell the Court about the in-person meeting with the government on July 22, 2021, where the government walked the defendant step-by-step through the conspiracy it intends to prove at trial. Similarly, while the defendant references the 404(b) Notice, it does not point the Court to all of the statements made in the August filing regarding the oxycodone conspiracy and distribution at issue, such as: (1) "Kay would obtain controlled substances from multiple sources and then distribute them to T.S. and others as well as use them himself;" (2) " as far back as 2017, Kay was obtaining oxycodone pills to distribute to Angels players;" (3) "the oxycodone pills Kay distributed were blue in color, were referred to as 'blue boys' or 'blues' and that blue oxycodone pills would contain markings of M and 30, just as the one found in T.S.'s hotel room." (Dkt. 35 at 3.) Since at least August 20, 2021—and likely long before that—Kay has known that the government intended to prove at trial his conspiracy to distribute oxycodone and fentanyl to major league players, including T.S. Therefore, Kay cannot show that the superseding indictment's reference to oxycodone somehow necessitated yet another motion (Kay's fourth) for a continuance.

      Finally, the government has long since produced the bulk of the evidence that it intends to use to prove Count One. Because Kay has not identified a single additional piece of evidence that he intends to use in his defense, it appears that he intends to rely on the evidence that the government has already produced to him. That same evidence supports the conspiracy charged in both indictments. To be sure, the return of the superseding indictment was not based on any new law enforcement discovery or any new evidence. (Rather, oxycodone was added so as to not confuse the jury, even though the law does not require that Kay knew the

**Response to Defendant's Motion to Continue – Page 9**

type of controlled substance he was conspiring to possess with the intent to distribute). The government will not produce, nor does it need to produce, any new or additional evidence based on the superseding indictment. And to the extent, Kay suddenly claims that he needs additional time to identify evidence related to the long-known theory that Eric Kay conspired to distribute oxycodone, the government offered to discuss the issues with Kay's counsel once they filed and provided their witness and exhibit lists. Counsel did not respond to this offer, nor did they file any witness or exhibit lists.[5] Thus, Kay simply cannot show that he needs a continuance on account of the superseding indictment or that any prejudice would result from proceeding to trial on November 8, 2021.

2. **Because the law does not require that the government prove that Kay conspired to distribute a particular type of controlled substance, the superseding indictment did not expand the government's theory and should have no impact on Kay's defense.**

Count One of the Indictment alleged no drug type or quantity that would trigger a mandatory-minimum sentence or increase Kay's potential maximum penalty. (*See* Dkt. No. 12.) As a result, the government was not required to plead or prove that Kay conspired to traffic in a particular *type* of controlled substance. *United States v. Michaelis*, 860 F. App'x 350, 352 (5th Cir. 2021.) "[D]rug quantity and type are not 'formal' elements of a conspiracy or a possession offense." *Id.* (emphasis added) (citing *United States v. Gamez-Gonzalez*, 319 F.3d 695, 699-700 (5th Cir. 2003).) Rather, to convict Kay on Count One, the well-settled law requires only proof that Kay conspired to violate the narcotics laws of the United States. *United States v. Aguirre-Rivera*, 8 F.4th 405, 410 (5th Cir. 2021). "The essential elements of

---

[5] The government also would not oppose the defendant filing a motion for leave to file an amended exhibit or witness list, identifying any additional exhibits or witnesses to be added based upon the superseding indictment.

Response to Defendant's Motion to Continue – Page 10

a drug conspiracy are (1) an agreement by two or more persons to violate the narcotics laws; (2) a defendant's knowledge of the agreement; and (3) his voluntary participation in the agreement." *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc). Because the indictment did not allege a substance or quantity that would trigger a mandatory minimum, the government need not prove that Kay conspired to distribute a particular type or amount of controlled substance—be it oxycodone or fentanyl—to convict him of a drug conspiracy. *Michaelis*, 860 F. App'x at 352. Thus, Kay cannot explain how the superseding indictment's naming of an additional controlled substance impacted his defensive strategy, where the identity of the controlled substance is irrelevant.

Moreover, it is well-settled law that the government can supersede the indictment up until the trial begins in a criminal case. *See Bryant*, 770 F.2d at 1287. That the defendant's strategy was to hope the government would not seek a superseding indictment that included oxycodone, despite having knowledge of the government's intent to produce evidence of a conspiracy at trial as well as the discovery and evidence related to that conspiracy, was merely a strategy call by the defendant. This does not constitute a lack of notice or of time to prepare.

The defendant relies on one case—*United States v. White*, 569 F.2d 263, 268 (5th Cir. 1978)—to support his position that the addition of oxycodone alters the legal theory of the conspiracy. What the defendant fails to address, however, is that this is not a situation where the government originally indicted Kay for conspiring to deal in one substance but then unearthed evidence that he was in fact only conspiring to deal and dealing in a different substance. *Cf. White*, 569 F.2d at 268. Rather, this is a situation where the government indicted Kay for conspiring to deal in fentanyl, and the evidence will prove that Kay in fact dealt in fentanyl. The evidence will also show that the same conspiracy also involved

oxycodone.  *See United States v. Winship*, 724 F.2d 1116, 1127 (5th Cir. 1984) (setting out the factors for determining whether there is a single conspiracy and explaining that "whether the government may bring separate Section 846 charges does not hinge on whether separate controlled substances were involved.").  The same conspiracy is reflected in both the original and superseding indictments, meaning there is no basis for a continuance

## Conclusion

The defendant will not be prejudiced by the government's superseding indictment.  Eric Kay has been on notice for months, if not longer, of the allegations concerning and evidence of his oxycodone distribution.  In other words, this change does not affect the evidence, the discovery, or the legal theories of the case.  Accordingly, the defendant's motion should be denied.

Respectfully submitted,

CHAD E. MEACHAM
Acting United States Attorney

*s/ Lindsey Beran*
LINDSEY BERAN
Assistant United States Attorney
Texas State Bar No. 24051767
ERRIN MARTIN
Assistant United States Attorney
Texas State Bar No. 24032572
JONATHAN BRADSHAW
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8600