IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:20–CR–269–Y-1 |
| | § | |
| ERIC PRESCOTT KAY | § | |

**LOS ANGELES TIMES COMMUNICATIONS LLC'S BRIEF IN
SUPPORT OF MOTION TO INTERVENE OR FOR LEAVE TO FILE
AND RESPONSE IN OPPOSITION TO THE
<u>GOVERNMENT'S MOTION TO FILE WITNESS AND EXHIBIT LISTS UNDER SEAL</u>**

Los Angeles Times Communications LLC (the "Los Angeles Times") files this brief (i) in support of its Motion to Intervene or for Leave to File, and (ii) in response to the Government's Motion to File Witness and Exhibit Lists Under Seal.

The public and the press have a right to access criminal proceedings, which is infringed when judicial records are withheld from public view when not necessitated by compelling countervailing interests. Moreover, the Court has cautioned the Government that its "amended witness and exhibit lists to be filed on February 1 will not be sealed absent extremely good cause." [Dkt. 104 at 3]. Despite that, the Government has filed a Motion to Seal its amended witness and exhibit lists with arguments so threadbare that their acceptance would effectively gut the public and the press's First Amendment and common law rights to access judicial records in any case that has attracted media attention—the very cases where such rights are most likely to be exercised.

The Los Angeles Times therefore respectfully requests that the Court (i) grant its Motion to Intervene or for Leave to File, and (ii) deny the Government's Motion to Seal.

**I.   FACTUAL BACKGROUND**

1.   The Los Angeles Times is a 139-year-old, Pulitzer Prize-winning newspaper.

2. The Los Angeles Angels are a professional baseball team that competes in Major League Baseball.

3. In 2019, as his team prepared to play the Texas Rangers, Angels pitcher Tyler Skaggs was found dead in his hotel room. The Tarrant County medical examiner's office confirmed that fentanyl and oxycodone were detected in Skaggs's system at the time of his death.

4. In 2020, Former Angels Communications Director Eric Prescott Kay was charged with conspiracy to distribute fentanyl in connection with Skaggs's fatal opioid overdose.

5. Within a week, the Government issued a press release under the headline, "**Former Angels Employee Charged in Pitcher's Fatal Fentanyl Overdose**." U.S. DEP'T OF JUSTICE (Aug. 7, 2020), https://www.justice.gov/usao-ndtx/pr/former-angels-employee-charged-pitcher-s-fatal-fentanyl-overdose. The Government's press release read:

> Former Angeles Communications Director Eric Prescott Kay, 45, was charged via criminal complaint with conspiracy to distribute a mixture containing detectable amounts of fentanyl. . . .
>
> In an initial interview with law enforcement, Mr. Kay allegedly denied knowing whether Mr. Skaggs was a drug user. He claimed the last time he'd seen Mr. Skaggs was at a hotel check-in on June 30. However, a search of Mr. Skaggs's phone revealed text messages from June 30 suggesting that he had asked Mr. Kay to stop by his room with pills late that evening.
>
> Hotel key card records indicated that Mr. Kay's room, no. 367, was opened at 11:29 p.m., and Mr. Skaggs's room, no. 469, was opened nine minutes later, at 11:38 p.m.
>
> Investigators later learned that, contrary to what he'd told law enforcement the day Mr. Skaggs's body was discovered, Mr. Kay had allegedly admitted to a colleague that he had, in fact, visited Mr. Skaggs's room the night of his death.
>
> In the course of their investigation, the Drug Enforcement Administration determined that Mr. Kay allegedly regularly dealt the blue M/30 pills – dubbed "blue boys" – to Mr. Skaggs and to others, dolling out the pills at the stadium where they worked.

2

*Id.* The Government's press release also quoted a DEA Special Agent in Charge's declaration that, "As with Mr. Kay's arrest, we will continue to identify and investigate those who distribute these drugs to ensure they face justice." *Id.*

6. The Los Angeles Times recently intervened in this case to vindicate the public and the press's First Amendment and common law rights to access judicial records that the Government sought to hide. In denying the Government's Motion to Strike from the record the very documents sought by the Los Angeles Times, the Court cautioned the Government that "in light of the Times's objections, the government's amended witness and exhibit lists to be filed on February 1 will not be sealed absent extremely good cause." [Dkt. 104 at 3].

7. The Government subsequently filed its "Unopposed Motion to File Witness and Exhibit Lists Under Seal," [Dkt. 105], which suffers several defects. First, if the Government had conferred with the Los Angeles Times, as required by Northern District of Texas Local Criminal Rule 47.1(a), it would have correctly labeled its motion as opposed. Second, it misstates the legal standard applicable in the Fifth Circuit when determining whether judicial records should be sealed. Third, and most fundamentally, the Government's arguments for sealing its witness and exhibit lists prove at once too little and too much: They are unmoored to the specifics of this case and, if accepted, would leave hollow the public and the press's First Amendment and common law rights to access judicial records in criminal cases.

## II. Motion to Intervene or for Leave to File

8. The public and the press have a right of access to judicial records and have standing to assert and protect that right in court. *See, e.g.*, *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001) (reversing a district court's denial of a newspaper's motion to intervene).

9.      In fact, the Court has already granted the Los Angeles Times' Motion to Intervene, [Dkt. 104 at 2], which requested permission "to intervene in this case for the limited purpose of seeking the unsealing of judicial records," [Dkt. 89 at 1]. But the Government has previously argued that the scope of the Los Angeles Times' intervention does not extend to filing responses to the Government's own motions. And it would appear the Government maintains that position, as it failed to comply with Northern District of Texas Local Criminal Rule 47.1(a) by conferring with the Los Angeles Times (which is listed as an Interested Party on the Court's docket sheet) prior to filing its nominally "unopposed" motion to seal, [Dkt. 105 at 10].

10.     Thus, to ensure that the substantive merits of this dispute are squarely presented to the Court, the Los Angeles Times filed its Motion to Intervene or for Leave to File a Response in Opposition to the Government's Motion to File Witness and Exhibit Lists Under Seal.

### III.   RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO SEAL

**A.   The Government's Motion to Seal misstates the legal standard applicable to motions to seal judicial records.**

11.     To the extent the Government's Response implies that sealing judicial records is a matter wholly within the discretion of district courts, it misstates the standard applicable here. As the Fifth Circuit recently explained in *Binh Hoa Le v. Exeter Finance Corporation*, two distinct legal standards are applicable when a party seeks to exercise its right to access judicial records:

> The first standard, requiring only "good cause," applies to protective orders sealing documents produced in discovery. The second standard, a stricter balancing test, applies "[o]nce a document is filed on the public record"—when a document "becomes a 'judicial record.'"

990 F.3d 410, 419 (5th Cir. 2021) (Willett, J.) (quoting *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019)).

4

12. Under both standards, the presumption "is that judicial records should not be sealed . . . because the opposite would be unworkable: 'With automatic sealing, the public may never know a document has been filed that might be of interest.'" *Id.* (citation omitted). Moreover, the sealing "of judicial records, including stipulated secrecy, must be justified and weighed against the presumption of openness that can be rebutted only be *compelling countervailing interests* favoring nondisclosure." *Id.* at 421 (emphasis added). And any court order that permits sealing must be "explained at 'a level of detail that will allow for . . . review [by an appellate court].'" *Id.* at 419.

**B. The Government has failed to carry its burden to demonstrate that sealing the judicial records sought by the Los Angeles Times is congruent to the needs of any compelling interests that are countervailing to the public and the press's First Amendment and common law rights.**

13. Under binding Fifth Circuit precedent, the sealing of judicial records requires a "document-by-document inquiry," with "reasons given" and "authorities cited" to provide "assurance that the extent of sealing [i]s congruent to the need [to seal]." *Binh Hoa Le*, 990 F.3d at 420. Here, the Government has failed to assert any arguments in favor of sealing that approximate that standard.

14. For instance, the Government conclusorily asserts that sealing is appropriate because "extensive media attention will have negative effects on the upcoming trial." [Dkt. 105 at 3–4]. The Government puts just as little effort into supporting its contention that "third-party witnesses . . . . *could* [have their testimony] influenced by the media coverage." [*Id.* at 6 (emphasis added)]. And although the Government asserts a "need to obtain just convictions," and that it is important to protect "witnesses from harassment or embarrassment in trial testimony," it points to no specific reason to believe that unsealing the judicial records in question would undermine a just conviction or result in witnesses' "harassment or embarrassment in trial testimony." [*Id.* at

6]. Without substantiation keyed to the specifics of this case, the Government's arguments could be copied and pasted into almost any other federal criminal case that has attracted media attention.

15. The Government's arguments are untethered to any actual specifics of this case that distinguish it from the countless other federal criminal cases that proceed to trial each year under the glare of media scrutiny. In fact, without the Government articulating any distinguishing characteristics of this case, its arguments are obviously belied by its decision to proceed to trial in other cases—many under far brighter media spotlights—without seeking to seal alike information. *See, e.g.*, Gov.'s Witness List 1–2, ECF No. 1924, *United States v. Gregory Colburn, et al.*, Case 1:19-cr-10080-NMG (detailing the Government's unredacted witness list months before trial in the highly publicized "Varsity Blues" college-admissions scandal, which implicated a wide range of high-profile individuals and entities); *see also Full Coverage: The College Admissions Scheme*, L.A. TIMES, https://www.latimes.com/california/story/la-me-college-admissions-storygallery (last visited Jan. 20, 2022).

16. Furthermore, if the Government is correct that pretrial publicity of this case will prejudice Defendant's right to a fair trial by tainting witnesses and the jury pool, then it is difficult to see how the Government's own out-of-court statements about this case—directed at the press and the public—have not done the same. *See* U.S. DEP'T OF JUSTICE (Aug. 7, 2020), https://www.justice.gov/usao-ndtx/pr/former-angels-employee-charged-pitcher-s-fatal-fentanyl-overdose ("In the course of their investigation, the Drug Enforcement Administration determined that Mr. Kay allegedly regularly dealt the blue M/30 pills – dubbed "blue boys" – to Mr. Skaggs and to others, dolling out the pills at the stadium where they worked."). But the Government's argument is incorrect, especially given that Defendant's trial is occurring in the

Dallas–Fort Worth metroplex:

> [T]he courts have long held that in a large metropolitan area, prejudicial publicity is less likely to endanger the defendant's right to a fair trial. The size and heterogeneity of such communities make it unlikely that even the most sensational cases will become "a cause celebre" where "the whole community . . . becomes interested in all the morbid details." Moreover, in a populous metropolitan area, the pool of potential jurors is so large that even in cases attracting extensive and inflammatory publicity, it is usually possible to find an adequate number of untainted jurors.
>
> Almost all the cases in which the Supreme Court has found that press coverage deprived the defendant of a fair trial have been tried in small rural communities.

*United States v. Carona*, 571 F. Supp. 2d 1157, 1161 (C.D. Cal. 2008) (quoting *Columbia Broad. Systems, Inc. v. U.S. Dist. Court for the Ctr. Dist. of Cal.*, 729 F.2d 1174, 1181 (9th Cir. 1984)); *United States v. Corbin*, 620 F. Supp. 2d 400, 405 (E.D.N.Y. 2009) ("[C]ourts have long held that in a large metropolitan area, prejudicial publicity is less likely to endanger a defendant's right to a fair trial." (quoting *United States v. Griffin*, No. 94CR63, 1996 WL 140073, at *1 (S.D.N.Y. Mar. 27, 1996))).

17. At bottom, the Government has afforded no assurance to the Court that "the extent of sealing" that it requests is "congruent" to any actual need in this case. If the Government's threadbare arguments prevail, it would drastically diminish the public and the press's First Amendment and common law rights to access judicial records in cases that have attracted media attention.

**PRAYER**

18. The Los Angeles Times again respectfully requests that the Court (i) grant its Motion to Intervene or for Leave to File, and (ii) deny the Government's Motion to Seal.

Respectfully submitted,

*/s/ James A. Hemphill*
James A. Hemphill
Texas State Bar No. 00787674
jhemphill@gdhm.com
Christopher C. Cyrus
Texas State Bar No. 24097110
ccyrus@gdhm.com

GRAVES, DOUGHERTY, HEARON & MOODY P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701-3790
Telephone:   (512) 480-5704
Fax:              (512) 480-5804

ATTORNEYS FOR LOS ANGELES TIMES COMMUNICATIONS LLC

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 1, 2022, a true and correct copy of the foregoing document was served on the following counsel of record via the Court's electronic service process.

Lindsey E Beran
Jonathan Glen Bradshaw
Joseph T. Lo Galbo
Errin Martin
UNITED STATES ATTORNEY'S OFFICE
1100 Commerce Street, Suite 300
Dallas, Texas 75242
lindsey.beran@usdoj.gov
Jonathan.bradshaw@usdoj.gov
joseph.lo.galbo@usdoj.gov
errin.martin@usdoj.gov

Michael D Anderson
John H. Cayce, Jr.
Ryan Roper
KELLY HART & HALLMAN
201 Main Street, Suite 2500
Fort Worth, Texas 76102-3194
michael.anderson@kellyhart.com
john.cayce@kellyhart.com
ryan.roper@kellyhart.com

Philip H Hilder
Stephanie K. McGuire
Quentin Tate Williams
HILDER & ASSOCIATES PC
819 Lovett Blvd
Houston, Texas 77006-3905
philip@hilderlaw.com
stephanie@hilderlaw.com
tate@hilderlaw.com

Michael Alessandro Molfetta
MOLFETTA LAW
3070 Bristol Street, Suite 580
Costa Mesa, California 92626
michael@michaelmolfettalaw.com

Ariel A Neuman
Oliver Rocos
Naomi S. Solomon
Nicole Rodriguez Van Dyk
BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
aneuman@birdmarella.com
orocos@birdmarella.com
nsolomon@birdmarella.com
nrv@birdmarella.com

William Reagan Wynn
REAGAN WYNN LAW, PLLC
5049 Edwards Ranch Rd., Floor 4
Fort Worth, Texas 76109
rw@reaganwynn.law

                                */s/ Christopher C. Cyrus*
                                Christopher C. Cyrus