IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA       NO. 4:20-cr-269-Y

v.

ERIC PRESCOTT KAY

## GOVERNMENT'S OMNIBUS RESPONSE IN OPPOSITION TO KAY'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND A NEW TRIAL

Respectfully submitted,

CHAD E. MEACHAM
United States Attorney

*s/ Lindsey Beran*
LINDSEY BERAN
Assistant United States Attorney
Texas State Bar No. 24051767
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Lindsey.Beran@usdoj.gov

*s/ Errin Martin*
ERRIN MARTIN
Assistant United States Attorney
Texas State Bar No. 24032572
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Errin.Martin@usdoj.gov

*s/ Jonathan Bradshaw*

Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
E-mail: jonathan.bradshaw@usdoj.gov

*s/ Joseph T. Lo Galbo*

Joseph T. Lo Galbo
Assistant United States Attorney
New Jersey State Bar No. 072452014
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
Facsimile: 214-659-8805
Email: Joseph.Lo.Galbo@usdoj.gov

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION ....................................................................................................... 1

1. This Court should deny Kay's boilerplate Rule 29 motion, which does nothing more than adopt his already-failed arguments. ............................... 2

 A. Ample evidence supported the jury's guilty verdict on Count One ... 4

 B. The evidence proved beyond a reasonable doubt that Kay distributed fentanyl here and supported his conviction on Count Two. ............. 9

 C. Expert testimony fully supported the jury's finding that Kay's fentanyl was a but-for cause of T.S.'s death. ................................... 10

2. Kay has failed to show any error in this Court's jury instructions, let alone a miscarriage of justice that would justify a new trial. ................................. 13

 A. Kay has not shown that this Court erred in its instructions to the jury vis-à-vis venue. ........................................................................ 13

 B. This Court should reject Kay's invitation that it sit as the thirteenth juror. ...................................................................................................... 16

CONCLUSION ........................................................................................................... 17

CERTIFICATE OF SERVICE .................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                    **Page(s)**

*Burrage v. United States*, 571 U.S. 204 (2014) ................................................................. 11

*Carlisle v. United States*, 517 U.S. 416 (1996) ................................................................ 4

*Grunewald v. United States*, 353 U.S. 391 (1957) ......................................................... 13

*Jackson v. Virginia*, 443 U.S. 307 (1979) ..................................................................... 4

*Puckett v. United States*, 556 U.S. 129 (2009) ......................................................... 13, 14

*United States v. Anderson*, 174 F.3d 515 (5th Cir. 1999) ................................................. 3

*United States v. Betancourt*, 586 F.3d 303 (5th Cir. 2009) ............................................. 13

*United States v. Broussard*, 80 F.3d 1025 (5th Cir. 1997) ................................................. 8

*United States v. Burns*, 597 F.2d 939 (5th Cir. 1979) ...................................................... 3

*United States v. Burton*, 126 F.3d 666 (5th Cir. 1997) ..................................................... 3

*United States v. Cessa*, 856 F.3d 370 (5th Cir. 2017) ..................................................... 15

*United States v. Curtis*, 635 F.3d 704 (5th Cir. 2011) ....................................................... 8

*United States v. Garcia Mendoza*, 587 F.3d 682 (5th Cir. 2009) ...................................... 7

*United States v. Gonzalez*, 866 F.2d 781 (5th Cir. 1989) .................................................. 6

*United States v. Gray*, 96 F.3d 769 (5th Cir. 1996) .......................................................... 3

*United States v. Gulley*, 526 F.3d 809 (5th Cir. 2008) ...................................................... 3

*United States v. Harris*, 230 F.3d 1054 (7th Cir. 2000) ..................................................... 5

*United States v. Hoffman*, 901 F.3d 523 (5th Cir. 2018) ............................................. 15, 16

*United States v. Lawhorne*, 29 F. Supp. 2d 292 (E.D. Va. 1998) ..................................... 14

*United States v. Lopez-Monzon*, 850 F.3d 202 (5th Cir. 2017) ..................................... 3, 4

*United States v. Lucio*, 428 F.3d 519 (5th Cir. 2005) .................................................... 3, 4

*United States v. McDermot*, 58 F.3d 636, 1995 WL 371036 (5th Cir. 1995) ................... 3

iv

**Federal Cases, continued**                                                          **Page(s)**

*United States v. Moses*, 513 F.3d 727 (7th Cir. 2008) ........................................... 4

*United States v. O'Keefe*, 128 F.3d 885 (5th Cir. 1997) ........................................ 13, 15, 16

*United States v. Olano*, 507 U.S. 725 (1993) ...................................................... 14

*United States v. Phea*, 755 F.3d 255 (5th Cir. 2014) ............................................. 14

*United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000) ......................................... 9

*United States v. Robertson*, 110 F.3d 1113 (5th Cir. 1997) ............................... 3, 16

*United States v. Ruiz-Hernandez*, 890 F.3d 202 (5th Cir. 2018) ......................... 12

*United States v. Sotelo*, 97 F.3d 782 (5th Cir. 1996) ............................................. 9

*United States v. Suarez*, 879 F.3d 626 (5th Cir. 2018) .......................................... 5

*United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005) ...................................... 16

*United States v. Thomas*, 690 F.3d 358 (5th Cir. 2012) .................................... 6, 7

*United States v. Thompson*, 945 F.3d 340 (5th Cir. 2019) ................................... 12

*United States v. Wall*, 389 F.3d 457 (5th Cir. 2004) ............................................ 13

*United States v. Washington*, 263 F. Supp. 2d 413 (D. Conn. 2003) ................. 14

*United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009) ...................................... 15

**Federal Statutes and Rules**

21 U.S.C. § 841(a)(1) ............................................................................................ 10

21 U.S.C. § 841(b)(1)(C) ....................................................................................... 11

Fed. R. Crim. P. 30(d) ........................................................................................... 13

**Other Authorities**

Fed. Prac. & Proc. Crim. § 581 (4th ed. 2011) .................................................... 14

## INTRODUCTION

The government indicted Eric Kay for his role in a years-long conspiracy to distribute opioids to members of the Los Angeles Angels, among others, and for hand delivering the fentanyl that killed T.S., a 27-year-old Major League Baseball ("MLB") star.  (Dkt. No. 78.)  At trial, the government proved those allegations through, among other evidence, (1) the testimony of numerous MLB players who identified Kay as their source for opioids, (2) evidence that Kay delivered the fatal fentanyl to T.S. in his hotel room at the Southlake Hilton, and (3) expert testimony proving that Kay's fentanyl was a but-for cause of T.S.'s untimely death.  After nearly two full weeks of trial testimony, it took the jury less than two hours to find Kay guilty as charged.

Kay has now filed a boilerplate motion for a judgment of acquittal, adopting without elaboration arguments that this Court has already rejected.  Kay provides no reasoned basis for this Court to reverse its earlier ruling, and none exists.  The government presented ample evidence establishing that Kay's guilt on both counts. Because that evidence was more than sufficient to support the jury's verdict, it should not be disturbed.

Kay also seeks a new trial under Rule 33, arguing that this Court's instructions to the jury vis-à-vis venue on Count One were inaccurate and incomplete.  They were not. This Court gave the pattern instruction, and well-settled Fifth Circuit precedent holds that Kay can identify no error under those circumstances.  Even if he could, he has made no attempt to show prejudice, let alone the kind of miscarriage of justice that would warrant a new trial.  Nor could he because the jury found that Kay *distributed* the fentanyl in the

Fort Worth Division of the Northern District of Texas.  That was certainly an overt act in furtherance of the conspiracy, meaning the jury would have found venue here even if it ignored Kay's attempts to cover up the ongoing conspiracy.  Because there was no error, and because Kay did not spend a single word of his response trying to show prejudice, his motion fails.

For almost two weeks, the jury heard how Kay dealt drugs to numerous members of the Angels's organization, how he delivered fentanyl to T.S. at a hotel in Southlake, and how that fentanyl killed that young man with his boots still on his feet.  All of that evidence supported the jury's guilty verdict, and it precludes the latest in a long series of maneuvers designed to escape responsibility for his crimes.  Because there is no basis to grant Kay a judgment of acquittal or to order a new trial, this Court should deny his motions.

**1.      This Court should deny Kay's boilerplate Rule 29 motion, which does nothing more than adopt his already-failed arguments.**

The jury found Kay guilty on both counts and determined that T.S. died as a result of the fentanyl that Kay delivered to him.  In challenging the jury's verdict, Kay simply "adopts and re-urges" the arguments that this Court already rejected.  (Dkt. No. 147 at 4.) Because this Court was correct to conclude that the evidence, viewed in the light most favorable to the government, supported the jury's verdict, it should deny Kay's motion for a second time.

**Standard of Review**

A post-trial motion for judgment of acquittal is a challenge to the sufficiency of

the evidence to convict.  *United States v. Lopez-Monzon*, 850 F.3d 202, 206 (5th Cir.

2017).  When assessing such a motion, the court must give "great deference" to the jury's

verdict by giving the government the benefit of all reasonable evidentiary inferences and

credibility determinations, without an eye toward negating every possible inference of

innocence.  *Id.*; *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005); *United States*

*v. Gray*, 96 F.3d 769, 772 (5th Cir. 1996).

While the Court is required to consider "if the evidence is insufficient to sustain a

conviction," *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979), its "review of the

sufficiency of the evidence is highly deferential to the verdict," *United States v. Gulley*,

526 F.3d 809, 816 (5th Cir. 2008).  "The court must view the evidence in a light most

favorable to the verdict."  *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir.

1997).  "In effect, the court assumes the truth of the evidence offered by the prosecution."

*Id*.

In applying this standard, the Court is forbidden from weighing competing

evidence.  *United States v. McDermot*, 58 F.3d 636, 1995 WL 371036, at *6 (5th Cir.

1995).  "'The evidence need not exclude every reasonable hypothesis of innocence or be

wholly inconsistent with every conclusion except that of guilt, and the jury is free to

choose among reasonable constructions of the evidence.'"  *United States v. Anderson*,

174 F.3d 515, 522 (5th Cir. 1999) (quoting *United States v. Burton*, 126 F.3d 666, 669-70

(5th Cir. 1997)).  The court determines only whether the jury made a rational decision,

not whether the jury correctly determined guilt or innocence. *Lopez-Monzon*, 850 F.3d at 206. Accordingly, if any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt, the verdict must be upheld. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio*, 428 F.3d at 522.

"[M]otions for a judgment of acquittal[] are routinely filed [but] almost never granted." *Carlisle v. United States*, 517 U.S. 416, 450 (1996) (Stevens, J. dissenting). A defendant's burden on a Rule 29 motion "is best described as 'nearly insurmountable.'" *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008). In short, where, as here, the record supports a finding that the jury made a rational decision, the verdict must stand. As explained below, Kay has failed to carry his exceedingly high burden to establish that he is entitled to a judgment of acquittal.

### A.    Ample evidence supported the jury's guilty verdict on Count One.

Count One charged Kay in a multi-year conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. (Dkt. No. 78.) The indictment alleged that the conspiracy ran from at least 2017 through July 2019, and the government's theory was that: (1) Kay sold opioids to numerous people, including MLB players within the Angels's organization, (*see* Dkt. No. 35 at 2); and (2) Kay took overt acts in furtherance of that conspiracy—including delivering the lethal fentanyl—within the Fort Worth Division of the Northern District of Texas. That is exactly what the government proved at trial.

"To prove a drug conspiracy, the Government must prove: (1) an agreement between two or more persons to violate narcotics laws; (2) knowledge of the agreement;

and (3) voluntarily participation in the agreement." *United States v. Suarez*, 879 F.3d 626, 631 (5th Cir. 2018).  There is no serious dispute[1] that the government's trial evidence proved a drug conspiracy.

Broadly, the government proved that Kay was a drug dealer, who distributed drugs to at least seven MLB players—namely, Mike Morin, C.J. Cron, Matt Harvey, Cam Bedrosian, Garrett Richards, Blake Parker, and T.S—over the course of at least two years and that Kay had been using numerous sources of supply—including individuals Kay identified on OfferUp, Shannon Diaz, Hector Vasquez, and "Ashley Smith"—to distribute opioids *for years*.

Moreover, the government's evidence established that: (1) T.S. requested controlled substances from Kay on June 30, 2019, (*see* Gov't Ex. 15); (2) Kay, in turn, contacted his source, "Ashley Smith," (*see* Gov't Ex. 142); (3) Kay met "Ashley Smith" and obtained pills, (*see* Gov't Ex 161); (4) Kay flew to Texas and delivered pills to T.S. in Room 469 of the Southlake Hilton, (*see* Gov't Ex. 15; *see also* testimony of Adam Chodzko (testifying to Kay's admission that he went to T.S.'s hotel room the night T.S. died)); and (5) T.S. ingested those pills, which contained fentanyl, and died soon after, (*see* Testimony of Dr. Stacey Hail (establishing fentanyl's toxicity and lethality and opining that it was a but-for cause of T.S.'s death)).  The government's evidence further proved that Kay lied to Southlake police during an investigation into T.S.'s death by

---

[1] Indeed, Kay's counsel acknowledged in opening statements that the evidence would show that Kay conspired with "Ashley Smith" to obtain opioids to be delivered, in turn, to T.S.  (*See* Tr. Vol. 1 at 37-38.)  While statements of counsel are not evidence, *United States v. Harris*, 230 F.3d 1054, 1057 (7th Cir. 2000), even Kay's counsel seemed to acknowledge that over the coming weeks, the government's evidence would prove Kay's participation in a drug conspiracy.

telling police that he had not seen T.S. since arriving at the hotel and that he did not know T.S. to use opioids.  (*See* Gov't Exs. 109, 110.)  And the government's evidence showed that, after statements were released telling the world of T.S.'s death, "Ashley Smith" dropped the phone she had been using to communicate with Kay, and she contacted him via a new number, which was also registered to her.  (Gov't Exs. 46, 47.)  All of this evidence amply supports Kay's unlawful drug conspiracy and firmly established his guilt on Count One.  *See United States v. Gonzalez*, 866 F.2d 781, 787-88 (5th Cir. 1989) (purchase of narcotics and subsequent resale "evince [the defendant's] voluntary participation in the conspiracy.").

Kay's only rejoinder is a one-sentence attack on the jury's finding that an "affirmative act in furtherance [of the conspiracy] was committed in the Northern District of Texas."  (Dkt. No. 147 at 5.)  He is wrong about venue.

"In cases involving conspiracy offenses, venue is proper in any district where the agreement was formed or where an overt act occurred."  *United States v. Thomas*, 690 F.3d 358, 369 (5th Cir. 2012) (internal quotation marks omitted).  The verdict must be affirmed where a rational juror could conclude that "the government established venue by a preponderance of the evidence."  *Id.* at 368.  "Venue can be based on evidence of any single act that initiated, perpetuated, or completed the crime, and circumstantial evidence suffices to establish venue."  *Id.* (internal quotation marks omitted).  Here, the evidence established that Kay took numerous overt acts in furtherance of the conspiracy in the Northern District of Texas.

*First*, the government's evidence proved—and the jury found—that Kay *delivered* fentanyl in the Northern District of Texas.  (*See* Dkt. No. 139 at 14 (instructing the jury that it "must find the defendant not guilty" unless the jury finds "that it is more likely than not that the distribution took place in the Fort Worth division of the Northern District of Texas").)  Of course, delivering fentanyl in this district is an overt act in furtherance of the charged conspiracy.  *See Thomas*, 690 F.3d at 369.

And the jury's finding that Kay distributed the fentanyl here was amply supported by the trial evidence.  To highlight, the government's evidence showed how: (1) just hours before the Angels flew to Texas on June 30, 2019, Kay coordinated with "Ashley Smith" to obtain the drugs that would come to kill T.S.; (2) after the Angels arrived at the Southlake Hilton, T.S. texted Kay his room number—469—and told Kay to "come by," to which Kay responded "K"; (3) Kay later admitted that he went to T.S.'s hotel room on the night that T.S. died; (4) Kay did not access his hotel room via a key card again until 8:25 on the morning of July 1, 2019; and (5) Kay lied to the Southlake police about those events.  Viewed in the light most favorable to the government, that evidence supports the jury's conclusion that Kay distributed the drugs to T.S. in the Northern District of Texas. *See United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009). ("[A] jury may infer venue from circumstantial evidence in the record as a whole.").  Even without the acts of concealment discussed below, the jury's finding that Kay distributed fentanyl here is sufficient to put to rest his allegations that there was no evidence of venue.  *See id.* at 686-87.

*Second*, the jury heard about at least three additional overt acts—all of which Kay concedes occurred in this District, (Dkt. No. 147 at 8)—that were taken to conceal the ongoing conspiracy.  Specifically, the jury heard evidence that Kay: (1) lied to the Southlake police about T.S.'s drug use and the last time he saw T.S.; (2) communicated with "Ashley Smith"; and (3) told Matt Harvey that they needed "stay together" after T.S. died.  Kay took these actions to keep from getting caught "to facilitate the conspiracy's continued operation by keeping it concealed."  *United States v. Curtis*, 635 F.3d 704, 717 (5th Cir. 2011).  "Given that concealment is often a necessary part of a conspiracy, statements made to aid the concealment are made in furtherance of the conspiracy." *United States v. Broussard*, 80 F.3d 1025, 1039 (5th Cir. 1997).

Kay's suggestion that the conspiracy "effectively ended" the moment T.S. died relies on a cramped misunderstanding of the charged conspiracy.  The government did not allege that Kay merely conspired with one source on one date to deliver fentanyl one time to T.S.  (*Cf.* Dkt. No. 78.)  Rather, the indictment alleged—and the evidence proved—a years-long conspiracy to obtain opioids from numerous sources for redistribution that ran at least through July 2019.  (*See* Dkt. No. 78 at 1.)  The untimely death of one of the Angels's players did not, as Kay suggests, "end" the conspiracy.[2]  In fact, some 10 days *after* T.S.'s death, Kay was still using OfferUp to try and source opioids.  (*See* Gov't Ex. 138 at 16; *see also* Dkt. No. 35 at 6 (explaining that Kay's attempts to source opioids on OfferUp were intrinsic to the charged conspiracy).)  And

---

[2] Nor did Kay offer a shred of evidence that he had somehow withdrawn from the conspiracy before he lied to the police, talked to "Ashley Smith," or told Matt Harvey they needed to "stick together."

the lies Kay told police just hours after T.S.'s death were designed to keep him from "be[ing] revealed and the conspiracy brought to an end." *United States v. Phillips*, 219 F.3d 404, 419 (5th Cir. 2000). Because the charged conspiracy was ongoing on July 1, 2019, as Kay was trying to conceal it, his actions were in furtherance thereof. *Id.*

In sum, both Kay's overt act—delivering the fatal fentanyl to T.S.—and his efforts to keep from getting caught—lying to the police, coordinating with "Ashley Smith," and telling Matt Harvey they needed to "stay together"—to keep the conspiracy afloat were overt acts more than sufficient to ground venue in this Court.

### B.   The evidence proved beyond a reasonable doubt that Kay distributed fentanyl here and supported his conviction on Count Two.

To the extent that Kay's boilerplate motion can be read as challenging the sufficiency of the evidence on Count Two, it fails. Count Two charged Kay with distributing a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1). (Dkt. No. 78 at 2.) "[T]o prove that a defendant distributed a controlled substance, the Government must prove that the defendant (1) knowingly (2) distributed (3) the controlled substance." *United States v. Sotelo*, 97 F.3d 782, 789 (5th Cir. 1996). From the evidence set out above, the jury could infer that Kay knowingly distributed a controlled substance to T.S. (*See supra* Part 1.A.)

Moreover, the evidence supported the jury's finding that Kay distributed lethal fentanyl here. Specifically, the evidence established that: (1) T.S. asked Kay for opioids on June 30, 2019; (2) after the team got to Southlake, T.S. texted Kay his room number (469) and told Kay to come by; (3) Kay then went to T.S.'s hotel room; (4) T.S. died

shortly thereafter; and (5) Kay lied to the police about his interactions with T.S. in the minutes before his death.  That evidence supports the jury's finding that Kay delivered the fatal fentanyl to T.S. in the Northern District of Texas.  Kay cannot meet his exceedingly high burden to set aside the jury's verdict on Count Two.

### C.   Expert testimony fully supported the jury's finding that Kay's fentanyl was a but-for cause of T.S.'s death.

Finally, Kay raises a conclusory attack on the jury's finding that but for Kay's fentanyl, T.S. would not have died.  (*See* Dkt. No. 147 at 5.)  Try as he might, Kay cannot simply ignore all of the expert testimony that proved otherwise.  In particular, the testimony of Drs. Fries and Hail amply supported the jury's verdict that Kay distributed the fentanyl that was a but-for cause of T.S.'s death.  Moreover, Dr. Johnson similarly testified that the amount of oxycodone found in T.S.'s blood was not a lethal amount, but that the amount of fentanyl would constitute a lethal amount.[3]

The indictment alleged—and the jury specifically found—that T.S.'s death resulted from the fentanyl that Kay delivered in the Northern District of Texas.  (*See* Dkt. No. 78 at 3; Dkt. No. 140 at 2.)  Section 841 of Title 21 of the United States Code makes it "unlawful for any person knowingly or intentionally to . . . distribute . . . a controlled substance."  21 U.S.C. § 841(a)(1).  Where the controlled substance is in Schedule I or II

---

[3] Dr. Krouse also testified that the fentanyl appeared to be the third substance ingested and as a result was of great significance, stating that "those [ethanol] concentration numbers are almost identical. Oxycodone, we're finding oxymorphone, which takes a little while to show up.  Fentanyl, we're not finding norfentanyl, which takes just minutes to show up, according to the consultations I've had with Dr. Johnson, and reading.  So, if you have one thing, and then you add something to it, you add a third thing and then the person dies, the inference is that that third thing is of great significance." (*See* Tr. Vol. 1 from Feb. 10, 2022, at 44-45.)

(i.e., the types of drugs defined as the most dangerous and addictive), as fentanyl is, the statute provides for a sentence of not more than 20 years for smaller distributions.  21 U.S.C. § 841(b)(1)(C); *Burrage v. United States*, 571 U.S. 204, 209 (2014).  However, "if death or serious bodily injury results from the use of such substance," the statute provides that the defendant "shall be sentenced to a term of not less than twenty years or more than life." 21 U.S.C. § 841(b)(1)(C).  The Supreme Court has explained that Section 841's "results from" language imposes "a requirement of actual causality."  *Burrage*, 571 U.S. at 211.  "In the usual course," the Court explained, "this requires proof that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* (internal quotation marks omitted).  For example, "where A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died."  *Id.*  "The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back."  *Id.*  "Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived."  *Id.*

The Fifth Circuit has explained that showing "but-for" cause "is not a difficult burden to meet."  *United States v. Gaspar-Felipe*, 4 F.4th 330, 343 (5th Cir. 2021) (internal quotation marks omitted).  Even where numerous factors converge to cause a result, one of those single factors "will still be considered a but-for cause so long as the

result would not have occurred in its absence." *United States v. Ruiz-Hernandez*, 890 F.3d 202, 212-13 (5th Cir. 2018).

Here, viewing the evidence in the light most favorable to the jury's verdict, a rational jury could have easily found beyond a reasonable doubt that Kay's fentanyl was a but-for cause of T.S.'s death.  That was precisely the expert opinion of Drs. Fries and Hail, both of whom testified that the fentanyl was a but-for cause of T.S.'s death.  Dr. Hail's opinion was informed by fentanyl's sheer lethality and the fact that T.S. ingested the fentanyl shortly before his medical distress and ultimate death.  That evidence amply supports the jury's finding that Kay's fentanyl was a but-for cause of T.S.'s death.  *See, e.g.*, *United States v. Thompson*, 945 F.3d 340, 345 (5th Cir. 2019) (the government established that heroin was but-for cause of victim's serious bodily injury by (1) expert testimony from the E.R. doctor who treated her, and (2) the timing, which showed that the victim collapsed shortly after she injected heroin and then regained consciousness shortly after being administrated Narcan).

Kay has not shown, and cannot show, that the government's evidence was insufficient as a matter of law.  Because he has failed to carry his exceedingly high burden to establish that he is entitled to a judgment of acquittal, his motion under Rule 29 should be denied.

**2.**     **Kay has failed to show any error in this Court's jury instructions, let alone a miscarriage of justice that would justify a new trial.**

**Standard of Review**

Motions for new trial are disfavored and "granted only with great caution." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997).  Consequently, "[t]he remedy of a new trial is rarely used; it is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." *Id.* (citation omitted).  To obtain a new trial, Kay must demonstrate "adverse effects" on his "substantial rights."  *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004).  He can do so only if he can establish that the alleged error "affected the outcome of the district court proceedings."  *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citation omitted).

**A.**     **Kay has not shown that this Court erred in its instructions to the jury vis-à-vis venue.**

Kay seeks a new trial on the ground that this Court did not instruct the jury that it had to find that the conspiracy was still ongoing to consider his acts of concealment to be "in furtherance" thereof for venue purposes.  (Dkt. No. 147 at 7-10 (citing *Grunewald v. United States*, 353 U.S. 391 (1957).)  Kay concedes that he failed to raise this purported error when this Court held its charge conference or when it gave him "the opportunity to do so on February 16, 2022."  (Dkt. No. 147 at 7.)  Kay's eleventh-hour argument is thus relegated to review only for plain error.  *See* Fed. R. Crim. P. 30(d); *see also United States v. Betancourt*, 586 F.3d 303, 306 (5th Cir. 2009).  To prevail on plain-error review, Kay must demonstrate (1) "an error" (2) that is "clear or obvious, rather than subject to

reasonable dispute," (3) that "affected [his] substantial rights," and (4) that "' seriously affect[s] the fairness integrity or public reputation of judicial proceedings.'" *Puckett*, 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Kay has made no attempt to establish plain error under Rule 52.  *See* 3 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Crim. § 581 (4th ed. 2011) ("New trial motions are subject to the harmless and plain error provisions of Rule 52[.]").[4]  Even if he had, he fails at the first step.  Because this Court's instructions on venue were a correct statement of the law that clearly instructed the jurors and found support in the facts of this case, there was no error, much less a clear or obvious one.

To resolve Kay's claim of error, "the relevant inquiry is whether the jury instruction was a correct statement of the law, whether it clearly instructed the jurors, and whether it was factually supportable."  *United States v. Phea*, 755 F.3d 255, 266 (5th Cir. 2014) (cleaned up).  Here, the Court's instructions on venue were proper.  Indeed, at Kay's request (*see* Dkt. No. 126 at 15), this Court included the Fifth Circuit's pattern jury instruction on venue in conspiracy cases, (Dkt. No. 139 at 12-13).  That instruction accurately and clearly instructed the jurors on that point, and Kay cannot show otherwise. "It is well-settled that a district court does not err by giving a charge that tracks this

---

[4] *United States v. Lawhorne*, 29 F. Supp. 2d 292, 313 (E.D. Va. 1998) ("Although Rule 52(b) is commonly invoked by counsel who, on appeal, discover an error to which they previously failed to object, the rule 'is not so limited.'" (quoting 3A Charles A. Wright, Federal Prac. & Proc. § 856, at 338 (2d ed. 1982)); *United States v. Washington*, 263 F. Supp. 2d 413, 426 n.7 (D. Conn. 2003) ("[I]n light of Fed. R. Crim. P. 1(a)(1), there is no reason to conclude that Rule 52(b) would not govern a Rule 33 motion.  Thus, in reviewing [a] defendant's claims of prosecutorial misconduct for the first time on his Rule 33 motion, this Court performs somewhat of an appellate role and thus the plain error analysis will be used here.").

Circuit's pattern jury instructions and that is a correct statement of the law." *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009).  Even assuming that Kay's proposed additional instruction—that an act of concealment cannot be considered in furtherance if the object of the conspiracy is completed—is also an accurate description of the law, Kay cannot point to a reversible instruction error.  *United States v. Cessa*, 856 F.3d 370, 376-77 (5th Cir. 2017) (finding no abuse of discretion where the district court gave the Fifth Circuit's pattern instruction and declined to give the defendant's additional instruction, which was also legally accurate); *see also United States v. Hoffman*, 901 F.3d 523, 554 (5th Cir. 2018) (same).

Even if Kay could show clear or obvious error, he cannot establish that any error had any impact on his substantial rights.  Indeed, his quibble with whether the jury could have found that one of his several acts of concealment was in furtherance of an ongoing conspiracy for purposes of venue is much ado about nothing.  That is because the jury found that Kay delivered the fentanyl that killed T.S. in the Fort Worth Division of the Northern District of Texas.  That act was, of course, an overt act in furtherance of the conspiracy, meaning that the jury found that venue was proper in the Northern District of Texas—and would have so found even if it discounted all of Kay's acts of concealment that also occurred here.  There is no basis for a new trial.  *See O'Keefe*, 128 F.3d at 898 (reversing the grant of new trial where the defendant failed to show a reasonable probability that the jury would have reached a different outcome absent challenged actions).

Given that (1) this Court's jury instructions were proper and accurate, and (2) the jury found that Kay distributed the fentanyl here, he cannot show the kind of miscarriage of justice required to warrant the extreme remedy sought. *See, e.g.*, *Hoffman*, 901 F.3d at 554. Kay's motion should be denied.

### B. This Court should reject Kay's invitation that it sit as the thirteenth juror.

Finally, Kay asks for a new trial on the ground that the evidence was too thin to sustain his convictions. That argument defies the reality of numerous witnesses who admitted that Kay was their drug dealer and the strong evidence that Kay delivered the fentanyl to T.S. that would ultimately spell the young pitcher's demise.

While a trial court considering a motion for new trial "may weigh the evidence and [ ] assess the credibility of the witnesses," *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997), it may not "usurp the jury's function . . . or simply set aside a jury's verdict because it runs counter to [the] result the district court believed was more appropriate." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005). The Fifth Circuit has explained that "it is *not* the role of the judge to sit as a thirteenth member of the jury." *O'Keefe*, 128 F.3d at 898 (emphasis added). Indeed, the grant of a new trial is considered such an "extreme measure" precisely because the jury, and not the Court, is charged with resolving disputed issues of fact. *Id.* In the end, the Fifth Circuit has cautioned that district courts should exercise their powers under Rule 33 infrequently and only in "exceptional circumstance[s]." *Tarango*, 396 F.3d at 672.

For nearly two full weeks, this Court sat and listened to the evidence of how Kay dealt drugs to T.S. and many others and how he supplied the fentanyl that ultimately killed T.S.  While the government has merely highlighted some of that evidence throughout this response, there is no doubt that the evidence was sufficient to sustain Kay's convictions on Counts One and Two and to support the jury's finding that T.S.'s death resulted from Kay's fentanyl.  Kay has failed to offer any reason why this Court should supplant the jury's verdict, and none exists.  His motion for a new trial should be denied.

## **CONCLUSION**

Kay's motions for a new trial and judgment of acquittal are meritless and should be denied.

Respectfully submitted,

CHAD E. MEACHAM
United States Attorney

*s/ Lindsey Beran*
LINDSEY BERAN
Assistant United States Attorney
Texas State Bar No. 24051767
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Lindsey.Beran@usdoj.gov

*s/  Errin Martin*
ERRIN MARTIN
Assistant United States Attorney
Texas State Bar No. 24032572
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Errin.Martin@usdoj.gov

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
E-mail: jonathan.bradshaw@usdoj.gov

*s/ Joseph T. Lo Galbo*
Joseph T. Lo Galbo
Assistant United States Attorney
New Jersey State Bar No. 072452014
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
Facsimile: 214-659-8805
Email: Joseph.Lo.Galbo@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 24, 2022, I filed this response with the clerk of court for the

U.S. District Court, Northern District of Texas, through the Court's electronic filing

system, which will generate service to counsel for Kay.

*s/ Jonathan Bradshaw*_____
Jonathan Bradshaw
Assistant United States Attorney
